IN THE COURT OF COMMON PLEAS FOR CHAMPAIGN COUNTY, OHIO

| | |
|---|---|
| HEARTLAND OF URBANA OH, LLC,<br>CT Corporation System<br>1300 East Ninth Street<br>Cleveland, Ohio 44114<br><br>Plaintiff,<br><br>v.<br><br>MCHUGH FULLER LAW GROUP, PLLC,<br>97 Elias Whiddon Road<br>Hattiesburg, Mississippi 39402,<br><br>Defendant. | Case No.<br><br>Judge<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**<br><br>ANSPACH MEEKS ELLENBERGER LLP<br>Robert M. Anspach (0017263)<br>J Randall Engwert (0070746)<br>Charles D. Rittenhouse (0088012)<br>300 Madison Ave., Suite 1600<br>Toledo, Ohio 43604-2633<br>Telephone: (419) 246-5757<br>Facsimile: (419) 321-6979<br>*Attorneys for Heartland of Urbana OH, LLC* |

Now comes Heartland of Urbana OH, LLC, d/b/a Heartland of Urbana, by its attorneys and the law firm Anspach Meeks Ellenberger LLP, and for its *Complaint for Injunctive and Other Relief* against McHugh Fuller Law Group, PLLC, to demonstrate that Heartland of Urbana is entitled to a temporary restraining order, preliminary and permanent injunctive and other relief.

## INTRODUCTION

1.      Through this lawsuit, Heartland of Urbana, a skilled nursing facility, seeks to enjoin the campaign of false and misleading advertising waged by McHugh Fuller Law Group, PLLC. In a clear effort to encourage tort litigation against Heartland of Urbana, and other similarly situated skilled nursing facilities throughout Ohio, and to profit greatly therefrom, Defendant distributes advertisements of sensational content (*see e.g.* Exhibits A and B), which contain deliberately misleading references to certain government surveys, performed upon Heartland of Urbana's

facility, in order to deceive Heartland of Urbana's clientele and the citizens of the surrounding community into believing that Heartland of Urbana is unsafe and has harmed their loved ones and community members. As explained below, the messages contained in these advertisements are false and misleading.

2.    By purposefully misrepresenting the nature of the government inspections, or surveys, and by omitting critical information specific thereto, Defendant is likely to deceive the public and, contemporaneously, cause significant reputational and monetary harm to Heartland of Urbana. Therefore, Defendant's false advertising campaign violates Ohio's Deceptive Trade Practices Act, R.C. Chapter 4165. Defendant must be temporarily, preliminarily and permanently enjoined from further engaging in such deception at the expense and detriment Heartland of Urbana and the public.

3.    In order to prevent further the immediate and irreparable injury that has already occurred and will surely continue from Defendant's meretricious solicitations, and pursuant to Civ.R. 65, Heartland of Urbana requests that this Court promptly enter a temporary restraining order to immediately prevent any further damage issuing from the print and online iterations of Defendant's advertisement and issue a preliminary and permanent injunction following a hearing on these allegations.

4.    Finally, given the bad faith and willful nature of Defendant's false and deceptive advertising, Heartland of Urbana prays this Court assess against Defendant all reasonable attorneys' fees and costs incurred by Heartland of Urbana in prosecuting these claims.

## PARTIES, JURISDICTION, AND VENUE

5.      Heartland of Urbana OH, LLC, (hereinafter "Heartland of Urbana") is an Ohio limited liability company with its principal place of business located at 741 E. Water Street, Urbana, Ohio, 43078.

6.      Defendant McHugh Fuller Law Group, PLLC, (hereinafter "McHugh Fuller") is a professional limited liability company organized under the laws of Mississippi and authorized to transact business in Mississippi and West Virginia, whose attorneys regularly solicit and contract for representation of clients in Champaign County and throughout Ohio.

7.      McHugh Fuller maintains its principal office at 97 Elias Whiddon Road, Hattiesburg, Mississippi 39402.

8.      McHugh Fuller is subject to personal jurisdiction before this Court pursuant to the Ohio Revised Code for contracting to supply services and transacting business in this state.  R.C. 2307.382(A)(1-2).

9.      Venue and jurisdiction are proper in this Court for Champaign County pursuant to the Ohio Civil Rules.  *Id.* at 3(B)(3 and 6).

## STATEMENT OF FACTS

### *Defendant's Advertising Campaign*

10.      Heartland of Urbana operates an 85 bed skilled nursing facility, located at 741 E. Water Street, Urbana, Champaign County, Ohio.

11.      Heartland of Urbana's facility is ranked by the federal government as a "Five Star" nursing facility, which is the highest ranking available to a nursing home.  Heartland of Urbana also received a "Five Star" rating for the government health inspection (or "survey") category.

12.    McHugh Fuller have no office or place of business in Ohio. However, attorneys with the law firm are licensed to practice law in Ohio and regularly solicit for clients in Ohio, and pursue legal action on behalf of their clients in Ohio.

13.    McHugh Fuller advertises its services across the country in an effort to bring claims against skilled nursing facilities, and have advertised directly to citizens of Champaign County and Urbana, Ohio, and those who are or are related to past and present residents of Heartland of Urbana.

14.    McHugh Fuller's systematic efforts to induce clients to bring suit against Heartland of Urbana and other skilled nursing facilities include a pattern of ongoing newspaper and online advertisements, which are false, fraudulent, deceptive, and misleading. McHugh Fuller is aware of the false and deceptive nature of these advertisements.

15.    Most recently, McHugh Fuller targeted Heartland of Urbana by taking out a full-page print advertisement in the Urbana local newspaper, the *Urbana Daily Citizen*, and an identical and correlating digital advertisement on the newspaper's website. True and accurate copies of the advertisement, including the print advertisement as it appeared in the printed newspaper and color print of the digital copy, are attached to this *Complaint* as Exhibits A and B, respectively.

16.    The printed newspaper advertisement ran on December 13, 2014. The online digital copy of the same advertisement first appeared on the *Urbana Daily Citizen* website on the same date, and has ongoing and uninterrupted presence from that date to the day of this filing. *See ATTENTION! The government...*, URBANA DAILY CITIZEN, Dec. 13, 2014, http://ads.urbanacitizen.com/urbana-oh/communication/newspaper/urbana-daily-citizen/2014-12-13-1442672-attention-the-government-has-cited-heartland-of-urbana-nursing-and-

rehabilitation-center-for-failing-to-provide-necessary-care-and-services-to-maintain-the-

highest-well-being-of-each-resident-if-you-suspect-that-a-loved-one-was-neglected.

17.     The advertisement contains a photograph of the front exterior of Heartland of Urbana's

facility, including the signage at the front of the property, reading "HCR ManorCare: Heartland

of Urbana; Nursing and Rehab. Center; Alzheimer's Care."

18.     The photograph on the advertisement is accompanied by the following solicitation:[1]

**ATTENTION!**
The government has <u>cited</u>[2]
**HEARTLAND OF URBANA NURSING
AND REHABILITATION CENTER**
for failing to provide necessary care and
services to maintain the highest well-being
of each resident.

If you suspect that a loved one was
**NEGLECTED** or **ABUSED**
at Heartland of Urbana,
call **McHugh Fuller** today!

Has your loved one suffered?
Bedsores
Broken Bones
Unexplained Injuries
**Death**
1-800-939-5580
[McHugh Fuller Law Group]

---

[1] The quoted portion of the advertisement takes into account only the language and the use of capital letters and boldface font. It does not account for the relative and varied size of the advertisement's fonts or the use of color, including the appearance of the words neglected, abused, and death in red. *See* Exhibits A and B.

[2] The advertisement's use of the word "cited" refers to routine surveys performed in accordance with 42 C.F.R. 483 *et seq.*, known as the "OBRA Regulations," which serve as the basis for determining whether a skilled nursing facility may participate in the Medicare reimbursement program. *See id.* at 483.1(b); *see also* R.C. 3721.02. The OBRA Regulations are administered by state surveyors with oversight and additional levels of surveys conducted by the federal Centers for Medicare and Medicaid Services ("CMS"). Particularly, CMS contracts with each state to carry out the annual and periodic survey functions to determine whether nursing facilities are in substantial compliance with the OBRA Regulations, so that they may qualify for reimbursement. *See* 42 U.S.C. 1395aa. Under the OBRA Regulations, over 91 percent of nursing homes surveyed are found to have "deficiencies" indicating that they are not in substantial compliance with the conditions of participation.

19. McHugh Fuller's advertisement states the government "has cited" Heartland of Urbana "for failing to provide necessary care and services to maintain the highest well-being of each resident." The "has cited" language leads the reader to believe that the alleged citation has been recent. This is itself and alone, apart from the rest of the advertisement, false and deceptive, because Heartland of Urbana has not had a citation remotely similar to the advertisement's language since June of 2010, more than four years ago.

20. Additionally, McHugh Fuller's advertisement fails to disclose that any alleged deficiency of the sort quoted in the advertisement in fact did not cause any harm to any nursing home patient, or that the facility corrected and removed the alleged deficiencies from June 2010.

### *Defendant's Awareness of the False and Deceptive Nature of Their Advertisements*

21. McHugh Fuller has been previously enjoined in Georgia for an effectively identical advertisement appearing, as here, in both print and online editions of the community newspaper local to the given skilled nursing facility. The plaintiff there was another skilled nursing facility, known as Heritage Healthcare of Toccoa. Based upon the correlative advertisement, the Superior Court of Stephens County, Georgia, found first that "Defendant's advertisement is false and misleading and therefore violates Section 10-1-372 of the Georgia Uniform Deceptive Trade Practices Act," and additionally that "(i) Plaintiff will be irreparably injured as a result of Defendant's advertisement; (ii) the balance of hardship tips decidedly in favor of Plaintiff because Defendant will not suffer significant or irreparable injury through entry of this Order; and (iii) the entry of this Order is in the public interest." *Pruitthealth—Toccoa, LLC v. McHugh Fuller Law Group, PLLC*, Civil Action No. 14-SU-CV-176CC (Stephens County, GA, June 2, 2014), attached hereto as Exhibit C.

22. Heartland of Urbana has not had a citation of any kind for over two years, and has not had a citation even approximating that suggested by the advertisement ("failing to provide necessary care and services to maintain the highest well-being of each resident") for over four years.

23. Heartland of Urbana has been deficiency free (that is, without government survey citation of any kind) since October 1, 2012, over two years prior to the publication of McHugh Fuller's advertisement.

24. The citation from October 1, 2012, was of a particular nature entirely distinct from the aspersions of McHugh Fuller's advertisement. The October 2012 citation was a level "D" citation, the least severe degree that can be cited by the government for finding a facility out of "substantial compliance." A level D citation means that no resident experienced any actual harm as a result of an isolated deficiency, but only the "potential" for harm. *See* CMS Scope and Severity Grid, attached as Exhibit D.[3]

25. The language of McHugh Fuller's advertisement suggests, though it does not accurately quote, the language of an "F309" citation, which reads, "Each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care." *State Operations Manual*, Appendix PP, page 157 *et seq.*, http://cms.hhs.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/som107ap_pp_guidelines_ltcf.pdf.

26. McHugh Fuller's advertisement intentionally misstates and mischaracterizes the language of the F309 tag, omitting material language, such as the term "practicable," in order to give a false

---

[3] Also available online within the context of the *CMS Nursing Home Data Compendium, 2013*, which is the most recent edition at the CMS website. http://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/CertificationandComplianc/downloads/nursinghomedatacompendium_508.pdf.

7

impression that the government requires Heartland of Urbana to obtain a higher degree of patient care than is actually required.

27.     Heartland of Urbana has not received an F309 citation since June 24, 2010, more than *four years* prior to McHugh Fuller's advertisement. The citation in 2010 was a level "E," which is the second least severe citation for a facility to be out of substantial compliance. A level E citation, like level D, means that no resident experienced any actual harm. *See* Exhibit D.

28.     In addition to misquoting the F309 citation language, McHugh Fuller's advertisement falsely and deceptively misstates the nature of the government censure against Heartland of Urbana in 2010. Specifically, while the advertisement states that the government "has cited" Heartland of Urbana "for failing to provide the necessary care and services to maintain the highest well-being of each resident," the actual language of the citation stated that the facility had "failed to ensure residents received timely bowel management, antibiotic therapy and emergency services." Department of Health and Human Services, Centers for Medicare & Medicaid Services, Form OMB NO. 0938-0391, June 24, 2010, at 15 of 23, attached as Exhibit E.

29.     Compounding the deceptive and misleading advertising practices detailed above, McHugh Fuller failed to include any reference to the survey purportedly forming the basis of the solicitation. Given that it appears the citation forming the basis of the advertisement is more than four years old, it is virtually impossible for the general public to ascertain the veracity of the solicitation and determine its misleading nature for themselves.

### Immediate and Irreparable Harm

30.     As a result of McHugh Fuller's advertisement, Heartland of Urbana has suffered numerous harms including, but not limited to, immediate and irreparable reputational and stigmatic harm in the Urbana community as well as reputational harm in the skilled nursing industry and to the

8

industry as a whole. Reputational and stigmatic injuries, by their very nature, are inevitably irreparable.

### *Ohio and Other States' Policies against Advertisements Referencing Survey Reports*

31.     Ohio and other states have articulated policies and legislation against using information from survey reports for legal advertisements or for any other purpose than "to determine the home's compliance with this chapter or another chapter of the Revised Code." R.C. 3721.02(F)(1); *see also e.g. Facilities, Providers & Managed Care Plans*, PENNSYLVANIA DEPARTMENT OF HEALTH (last accessed Dec. 23, 2014), http://www.portal.state.pa.us/portal/server.pt/community/ facilities,_providers_managed_care_plans/11603.

32.     While Ohio law specifies that "[e]xcept as otherwise provided in this section, the results of an inspection or investigation of a home that is conducted under this section . . . shall be used solely to determine the home's compliance," a recent Ohio Bill, signed into law by the Governor on December 19, 2014, taking effect 90 days from the date of signing, amends R.C. 3721.02 and 5165.67 to expressly prohibit advertisements from referencing and citing to results of any such survey, unless the advertisement includes a list of information specific to the cited survey, inspection, or investigation. *See* Am.Sub.H.B. No. 290, Sec. 3721.02, 130th General Assembly Regular Session, 2013-2014, pp. 15 - 19. Attached hereto as Exhibit F.

### COUNT ONE—DECEPTIVE TRADE PRACTICES ACT
### R.C. CHAPTER 4165

33.     Heartland of Urbana incorporates by reference as if fully rewritten herein the averments set forth in paragraphs 1-32.

34.     The Urbana advertisement of December 13, 2014, is inherently and facially false, confusing, and misleading, and therefore violates the Ohio Deceptive Trade Practices Act ("the

Act"), codified at R.C. 4165.02, inasmuch as Defendants have engaged in deceptive trade practice by doing *inter alia* the following:

a.   causing a likelihood of confusion or misunderstanding with respect to the government's certification of services in the form of regular surveys (*see id.* at 4165.02(A)(2) and (3)); *and*

b.   representing that Heartland of Urbana's services have certain characteristics they do not have (*see id.* at 4165.02(A)(7)); *and*

c.   representing that Heartland of Urbana's services are other than fully sufficient and currently in compliance with federal and state requirements and standards (*see id.* at 4165.02(A)(9)); *and*

d.   disparaging Heartland of Urbana's services and business by false representation of fact (*see id.* at 4165.02(A)(10)).

35.   The Act provides for injunctive relief where it is found that a defendant has committed an act constituting a deceptive trade practice as defined by statute. Under certain circumstances, it provides also for attorney's fees to the prevailing party (*see id.* at 4165.03(B)), viz.:

a.   Defendants have "willfully engaged" in the trade practices articulated in ¶38(a-d), *supra*, and are therefore subject to an assessment of Heartland of Urbana's reasonable attorney's fees.

36.   As a result of McHugh Fuller's advertisement through the *Urbana Daily Citizen,* Heartland of Urbana has suffered and is likely to further suffer stigmatic injury and loss of business opportunities, as well as immediate and irreparable harm to its goodwill, and contractual and business relationships if McHugh Fuller is not temporarily restrained, and preliminarily and permanently enjoined from maintaining their currently circulated advertisements, as described above, and from publishing future advertisements that are comparably false, fraudulent, deceptive, and misleading.

37.     Heartland of Urbana has no adequate remedy at law with regard to McHugh Fuller's false, fraudulent, deceptive, and misleading advertisements in newspapers or other media, including online iterations of same, in this jurisdiction or elsewhere in this State.

38.     A balancing of the equities between the parties weighs heavily in Heartland of Urbana's favor as to whether McHugh Fuller should be permitted to publish such false, fraudulent, deceptive, and misleading advertisements in newspapers and other media concerning Heartland of Urbana and Heartland of Urbana's business.

39.     As a result of McHugh Fuller's violations of R.C. 4165.02, and pursuant to R.C. 4165.03 and Civ.R. 65, Heartland of Urbana is entitled to temporary, preliminary and permanent injunctive relief and an award of attorney's fees and such other and further relief as the Court deems just and equitable.

## COUNT TWO—DEFAMATION: LIBEL AND LIBEL PER SE

40.     Heartland of Urbana incorporates by reference as if fully rewritten herein the averments set forth in paragraphs 1-39.

41.     McHugh Fuller's advertisement subjects them to liability pursuant to a cause of action for both libel and libel per se.

42.     McHugh Fuller's advertisement is directed at Heartland of Urbana with the specific intent (a) to injure Heartland of Urbana's reputation, (b) to expose it to public hatred, contempt, ridicule, shame, and disgrace, and (c) to injure its business and trade.

43.     The advertisement makes false aspersions against Heartland of Urbana by deliberate misstatements and misapplications of information from survey reports of the facility, which the advertisement advances as these statements were factual, and which are not privileged.

44.    The advertisement specifically and unequivocally regards Heartland of Urbana and its facility.

45.    McHugh Fuller's statements, made through the advertisement, are actionable in and of themselves, without regard to McHugh Fuller's intent in publishing them.  The words and their effect are of such an inherently damaging nature and subject Heartland of Urbana to public hatred, contempt, and scorn.

46.    Heartland of Urbana has suffered stigmatic and reputational harms as a further result of the advertisement, and in addition to any quantifiable damages experienced at the facility and in the community.

47.    As a result of McHugh Fuller's libel per se, and pursuant to Civ.R. 65, Heartland of Urbana is entitled to temporary, preliminary, and permanent injunctive relief and an award of attorneys' fees and such other and further relief as the Court deems just and equitable.

## COUNT THREE—DEFAMATION: FALSE LIGHT INVASION OF PRIVACY

48.    Heartland of Urbana incorporates by reference as if fully rewritten herein the averments set forth in paragraphs 1-47.

49.    McHugh Fuller's advertisement subjects them to liability pursuant to a cause of action for false light invasion of privacy, which occurs when one maliciously gives publicity to a matter concerning another that places the other before the public in a false light.

50.    The aspersions of McHugh Fuller's advertisement are highly offensive to the reasonable person and are in fact offensive to Heartland of Urbana.

51.    McHugh Fuller's statements, made through their advertisement, are not privileged.

52.    McHugh Fuller knew or should have known that the statements asserted in the advertisement were false and would be offensive to Heartland of Urbana.  McHugh Fuller

recklessly disregarded the truth of the existing and most recent survey reports, which were available for review by McHugh Fuller prior to the publication of their advertisement.

53.     As a result of McHugh Fuller's false and defamatory statements, and pursuant to Civ.R. 65, Heartland of Urbana is entitled to temporary, preliminary, and permanent injunctive relief and an award of attorneys' fees and such other and further relief as the Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Heartland of Urbana OH, LLC prays for judgment against McHugh Fuller Law Group, PLLC as follows:

A.     That McHugh Fuller Law Group, PLLC be temporarily restrained and preliminarily and permanently enjoined pursuant to Civ.R. 65, R.C. 4165.02, *et seq.*, and Ohio common law from publishing false, fraudulent, deceptive, and misleading advertisements concerning Heartland of Urbana, including the type of advertisements contained in Exhibits A and B hereto;

B.     Reasonable attorneys' fees and expenses of litigation incurred by Heartland of Urbana in connection with this litigation;

C.     All costs of this action; and

D.     Such other and further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

ANSPACH MEEKS ELLENBERGER LLP

By:  _____
Robert M. Anspach (0017263)
J Randall Engwert (0070746)
Charles D. Rittenhouse (0088012)
*Attorneys for Plaintiff,*
*Heartland of Urbana OH, LLC*

13



# ATTENTION!

The government has cited
**HEARTLAND OF URBANA NURSING
AND REHABILITATION CENTER**
for failing to provide necessary care and
services to maintain the highest well-being
of each resident.

If you suspect that a loved one was
**NEGLECTED** or **ABUSED**
at Heartland of Urbana,
call **McHugh Fuller** today!

Has your loved one suffered?

Bedsores

Broken Bones

Unexplained Injuries

**Death**

# 1-800-939-5580



108 1/2 Capitol Street, Suite 300 • Charleston, West Virginia 25304
97 Elias Whiddon Road • Hattiesburg, Mississippi 39402
Michael J. Fuller, Jr.

**ADVERTISING MATERIAL**

McHugh Fuller LAW GROUP'S ATTENTION! The government has cited HEARTLAND OF U... www.urbanadailycitizen

# Urbana DAILY CITIZEN

 

What are you looking for?

## Print Advertisements For McHugh Fuller Law Group In Hattiesburg, MI

📍 97 Elias Whiddon Road
Hattiesburg, MI 39402

👤 Phone Number
800-939-5580



# ATTENTION!
The government has cited
**HEARTLAND OF URBANA NURSING
AND REHABILITATION CENTER**
for failing to provide necessary care and
services to maintain the highest well-being
of each resident.

If you suspect that a loved one was
**NEGLECTED** or **ABUSED**
at Heartland of Urbana,
call **McHugh Fuller** today!

Has your loved one suffered?

Bedsores

Broken Bones

Unexplained Injuries

**Death**

# 1-800-939-5580



108 1/2 Capitol Street, Suite 300 • Charleston, West Virginia 25304
97 Elias Whiddon Road • Hattiesburg, Mississippi 39402
Michael J. Fuller, Jr.

ADVERTISING MATERIAL

ATTENTION! The government has cited HEARTLAND OF URBANA NURSING AND REHABILITATION CENTER for failing to provide necessary care and Services to maintain the highest well-being of each resident. If you suspect that a loved one was NEGLECTED or ABUSED at... (more)

*Advertisement run on December 13 2014*

McHugh Fuller Law Group

Dec 13, 2014 - ATTENTION! The government has cited HEARTLAND OF URBANA NURSING AND
REHABILITATION...

Previous [ ] Next

Admin

Contents of **Urbana Ohio Advertisements**. © 2014 **Urbana Daily Citizen**. All rights reserved.
**Business Directory**, **Newspaper Ad**, and **Daily Deal** software are powered by **Own Local**,
**Local Hero**, **AdForge**, and **Daily Deals** software © 2008-2014

Home | **Privacy Policy** | **Terms of Service**

STEPHENS COUNTY
CLERK OF COURT
TIMOTHY B. QUICK, CLERK
BOOK _____ PAGE _____

IN THE SUPERIOR COURT OF STEPHENS COUNTY
STATE OF GEORGIA

2014 JUN 2 AM 8 53

PRUITTHEALTH – TOCCOA, LLC;

    Plaintiff,

v.

                                      Civil Action No. 14-SU-CV-176CC

MCHUGH FULLER LAW GROUP, PLLC,

        Defendant.

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR INJUNCTIVE RELIEF

Plaintiff initiated this case on April 18, 2014, alleging violations of the Georgia Uniform Deceptive Trade Practices Act and the Georgia Rules of Professional Conduct stemming from Defendant having published an advertisement about Plaintiff's nursing home facility, which is known as Heritage Healthcare of Toccoa.

The Defendant is a law firm with offices in West Virginia and Mississippi. Although Defendant does not have an office in Georgia, it does have attorneys who are licensed in Georgia, including James McHugh, who testified at the hearing on this matter. Defendant's full page color advertisement first appeared in the April 17, 2014 edition of *The Toccoa Record*, the local newspaper covering Stephens County, Georgia and surrounding areas. The advertisement invites families to contact Defendant about Plaintiff's nursing home.

With its Complaint, Plaintiff filed a Motion for an *Ex Parte* Temporary Restraining Order and Preliminary and Permanent Injunctive Relief against Defendant, alleging that Plaintiff is threatened with irreparable harm as a result of Defendant's alleged publishing false, fraudulent, deceptive, and misleading advertisements concerning the Plaintiff in violation of the Georgia Uniform Deceptive Trade Practices Act and the Georgia Rules of Professional Conduct. On April 21, 2014, the Court issued a Temporary Restraining Order enjoining the Defendant from certain actions until a hearing could be convened.

On May 13, 2014, the parties appeared for an evidentiary hearing before this Court, at which both parties called witnesses, introduces exhibits, and made arguments regarding the appropriateness of injunctive relief. Among other things, Plaintiff introduced testimony regarding a sharp decline in admissions since the advertisement was published. After hearing all of the evidence and arguments, the Court finds that Defendant's advertisement is false and misleading and therefore violates Section 10-1-372 of the Georgia Uniform Deceptive Trade Practices Act.

The Court further finds that: (i) Plaintiff will be irreparably injured as a result of Defendant's advertisement; (ii) the balance of hardships tips decidedly in favor of Plaintiff because Defendant will not suffer significant or irreparable injury through entry of this Order; and (iii) the entry of this Order is in the public interest.

THEREFORE, IT IS HEREBY ORDERED that, pursuant to O.C.G.A. §§ 9-11-65, 10-1-373, and 10-1-423, the Court **GRANTS** Plaintiff's Motion for Injunctive relief.

IT IS FURTHER ORDERED that Defendant is enjoined from publishing or causing the offending advertisement to be published in the future. In addition, within twenty (20) days from the date of this Order, Defendant shall remove or cause to be removed at its expense all electronic postings of the advertisement by *The Toccoa Record*, including any electronic archived versions of the advertisement.

SO ORDERED this 23rd day of May, 2014, nunc pro tunc the 13 day of May, 2014.

The Honorable B. Chan Caudell
Superior Court of Stephens County

General Civil Case Final Disposition Form (Non-Domestic)

Court                    County  STEPHENS            Date Disposed  5-13-14
☒ Superior                                                          MM-DD-YYYY
☐ State           Docket #  14-54-CV-176CC

Reporting Party _____
                    Last    First    Middle I. Suffix Prefix   Maiden              Title

Name of Plaintiff/Petitioner(s)              Name of Defendant/Respondent(s)

Pruitthealth Toccoa LLC                      McHugh Fuller Law Group PLLC
Last   First   Middle I. Suffix Prefix Maiden   Last   First   Middle I. Suffix Prefix Maiden

Plaintiff/Petitioner's Attorney  ☐ Pro Se    Defendant/Respondent's Attorney  ☐ Pro Se


_____      _____
Last        First      Middle I.   Suffix    Last        First      Middle I.   Suffix

Bar # _____                  Bar # _____

---

**Type of Disposition** (Check all that apply)

1. ☐ Pre-Trial Dismissal (Specify which type)

   A. ☐ Involuntary

   B. ☐ Voluntary (without prejudice)

   C. ☐ Voluntary (with prejudice)

2. ☐ Pre-Trial Settlement

3. ☐ Default Judgment

4. ☐ Summary Judgment

5. ☐ Transferred/Consolidated

6. ☒ Bench Trial

7. ☐ Jury Trial (specify outcome further):

   A. ☐ Dismissal after jury selected
   B. ☐ Settlement during trial
   C. ☐ Judgment on Verdict
   D. ☐ Directed Verdict or JNOV

---

1. Judgment on Verdict: Was the verdict:

   A. ☐ For Plaintiff(s) [all]

   B. ☐ For Defendant(s) [all]

   C. ☐ Other: (Explain)

   _____
   _____

---

**AWARD**

1. If verdict for Plaintiff, how much was awarded?

   | $ |  | Compensatory |
   | $ |  | Punitive |

2. If verdict on cross or counter claims, how much was awarded?

   | $ |  | Compensatory |
   | $ |  | Punitive |

3. Did the court modify the award?
   ☐ Yes  ☐ No

4. Were attorneys fees awarded?
   ☐ Yes  ☐ No

---

**ADR**

1. Was ADR utilized?
   ☐ Yes  ☐ No

2. If yes, was it (check if applicable)
   ☐ court annexed?
   ☐ court mandated?

3. Did the matter settle after trial for other than judgment? (If known at the time of this submission)
   ☐ Yes  ☐ No

## Figure 2.1. Scope and Severity Grid for Rating Nursing Home Deficiencies



|  | Isolated | Pattern | Widespread |
|---|---|---|---|
| Immediate Jeopardy to Resident Health or Safety | J | K | L |
| Actual Harm that is Not Immediate Jeopardy | G | H | I |
| No Actual Harm with Potential for More than Minimal Harm that is Not Immediate Jeopardy | D | E | F |
| No Actual Harm with Potential for Minimal Harm | A | B | C |

*A level citations not reported by CMS
Source: CASPER

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| NAME OF PROVIDER OR SUPPLIER | HEARTLAND OF URBANA | STREET ADDRESS, CITY, STATE, ZIP CODE 741 E WATER STREET URBANA, OH 43078 | 06/24/2010 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 000 | INITIAL COMMENTS | N 000 | | |
| | Total Capacity: 100 Total Census: 47 County: Champaign Administrator: Katherine E. W. Will #3057 Survey Type: Annual | | | |
| N 165 | O.A.C. 3701-17-10 (F) Resident Assessments | N 165 | | |
| | O.A.C. 3701-17-10 (F)  Subsequent to the initial comprehensive assessment, the nursing home shall periodically reassess each resident, at minimum, every three months, unless a change in the resident's physical or mental health or cognitive abilities requires an assessment sooner.  The nursing home shall update and revise the assessment to reflect the resident's current status. This periodic assessment shall include documentation of at least the following: | | | |
| | (1) Changes in medical diagnoses; | | | |
| | (2) Updated nutritional requirements and needs for assistance and supervision of meals; | | | |
| | (3) Height and weight; | | | |
| | (4) prescription and over-the counter medications; | | | |
| | (5) A functional assessment as described in paragraph (E)(8) of this rule; | | | |
| | (6) Any changes in the resident's psycho-social status or preferences as described in paragraph (E)(4) of this rule; and | | | |
| | (7) Any changes in cognitive, communicative or hearing abilities or mood and behavior patterns. | | | |

io Department of Health

BORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE          TITLE                          (X6) DATE

ATE FORM                                    6899        5OBT11                    If continuation sheet 1 of 18

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER HEARTLAND OF URBANA | STREET ADDRESS, CITY, STATE, ZIP CODE 741 E WATER STREET URBANA, OH 43078 | 06/24/2010 |
|---|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 165 | Continued From page 1 | N 165 | | |

This Rule is not met as evidenced by:
Based on record review and staff interview, the facility failed to enusre assessess residents were assessed for change in condition and bowel function. This affected two (Residents #26 and #46) of 11 sampled residents.

Finding included;

1. Review of the June 2010 physician order sheet revealed Resident #26 had diagnoses which included diabetes, muscular dystrophy, osteomyelitis and chronic kidney disease. The minimumm data set (MDS) assessment dated 05/13/10 revealed the resident had no short or long term memory impairment, had difficulty with decisions in new situations, required extensive to total care for activities of daily living, had a suprapubic urinary drainage cathetere and pressure ulcers. Nursing notes dated 06/11/10 at 5:00 A.M. stated Resident #26 complained of abdominal pain. His abdomen was distended. Bowel sounds were present in all four quadrants. There was no documation that vital signs were assessed. Pain medication was given at that time. There was no documentation that the resident was reassessed until nursing notes dated 06/11/10 at 11:30 P.M., which identified the resident complained of abdominal pain. The resident's abdomen was distended, hard, firm, red, and warm to touch. His abdomen appeared three time larger than normal. The resident stated he could not eat due to pain and cramping. Pain medications were given but were not effective. The physician was notified at 11:30 P.M. and ordered the resident sent to the emergency room. The ambulance was called,

6890          5OBT11          If continuation sheet 2 of 18

06/28/2001 13:13:19 937-653-5817 HEARTLAND/URBANA PAGE 03/41

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 1325N | A. BUILDING _____ | |
| | | B. WING _____ | |
| NAME OF PROVIDER OR SUPPLIER | | STREET ADDRESS, CITY, STATE, ZIP CODE | 06/24/2010 |
| HEARTLAND OF URBANA | | 741 E WATER STREET URBANA, OH 43078 | |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 165 | Continued From page 2 | N 165 | | |
| | arrived at 12:05 A.M., and the resident admitted to the hospital. | | | |
| | During an interview on 6/22/10 at 1:00 PM, LPN #55 verified the resident was not reassessed in a timely manner. | | | |
| | 2. Review of the clinical record diagnosis report for Resident #46 revealed diagnoses of dementia, obstructive hydrocephalus, constipation, depression, anxiety, asthma, atrial fibrillation, blurred vision, and malnutrition. She was admitted on 02/16/08 and resided on the secured unit. She had recently been hospitalized 05/05/10 through 05/10/10 for surgery to place a colostomy and a gastric feeding tube. Review of the ADL (activity of daily living) worksheet, completed by the Nurse Aids, for the month of March and April revealed that she had an irregular bowel movement pattern. In March 2010 and April 2010 she had no bowel movement documented for four days from a medium size BM on 03/02/10 until a small size BM on 03/07/10. No bowel movement was documented again from 03/14/10 through 03/16/10, 03/20/10 through 03/22/10, 03/28/10 through 04/01/10, 04/03/10 through 04/06/10, 04/10/10 through 04/14/10, 04/16/10 through 04/10/10 04/22/10 through 04/25/10 and 04/27/10 through 04/30/10. Review of the physician orders revealed no bowel medications (laxatives) were ordered routinely. Review of the as needed medication orders revealed an order for milk of magnesia suspension 30 milliliters by mouth as needed. Review of the medication administration records revealed that she received no milk of magnesia during the months of March or April. | | | |
| | Review of the nurses notes for the months of March and April 2010 revealed no information | | | |

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| NAME OF PROVIDER OR SUPPLIER HEARTLAND OF URBANA | | STREET ADDRESS, CITY, STATE, ZIP CODE 741 E WATER STREET URBANA, OH 43078 | | 06/24/2010 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 165 | Continued From page 3 | N 165 | | |
| | related to constipation. The record was silent to any indication that Resident #46 had irregular bowel movements. There was no entry to indicate assessment of her abdomen or analysis of bowel movement pattern. | | | |
| | Interview of the attending physician of Resident #46 on 06/22/10 at 2:30 P.M. revealed that he had only been her attending physician for about one week. He stated that he was aware of her issues with constipation because he had reviewed the record as she had history of bowel impaction. He stated he expected nurses to monitor and assess bowel movements. | | | |
| | Interview of Registered Nurse Consultant #72 on 06/22/10 at 3:15 P.M. revealed that the facility had no written bowel protocol or policy. She stated bowel movements were recorded daily by nurse aids and tracked by the nurses. She stated that any abdominal or bowel assessment performed would be one documented in the nurses notes. | | | |
| | During further interview of Registered Nurse #72 on 06/23/10 at 10:30 A.M. she verified that no assessment of Resident #46's bowel function or pattern of constipation had been documented in the nurses notes in March or April 2010. | | | |
| N 184 | O.A.C. 3701-17-12 (A) Notification and reporting of Changes | N 184 | | |
| | O.A.C. 3701-17-12 (A) Notification and reporting of changes in health status, illness, injury and death of a resident. The nursing home administrator or the administrator's designee shall: (A) Immediately inform the resident, consult with the resident's physician or the medical director, if | | | |

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING ___ B. WING ___ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

**HEARTLAND OF URBANA**

STREET ADDRESS, CITY, STATE, ZIP CODE

**741 E WATER STREET**
**URBANA, OH 43078**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 184 | Continued From page 4 | N 184 | | |
| | the attending physician is not available, and notify the resident's sponsor or authorized representative, unless the resident objects, and other proper authority, in accordance with state and local laws and regulations when there is: | | | |
| | (1) An accident involving the resident which results in injury and has the potential for requiring physician intervention; | | | |
| | (2) A significant change in the resident's physical, mental, or psycho-social status such as a deterioration in health, mental, or psycho-social status in either life-threatening conditions or clinical complications; | | | |
| | (3) A need to alter treatment significantly such as a need to discontinue an existing form of treatment due to adverse consequences, or to commence a new form of treatment. The notification shall include a description of the circumstances and cause, if known, of the illness, injury or death. A notation of the change in health status and any intervention taken shall be documented in the medical record. If the resident is a patient of a hospice care program, the notifications required by this paragraph shall be the responsibility of the hospice care program unless otherwise indicated in the coordinated plan of care required under paragraph (G) of rule 3701-17-14 of the Administrative Code. | | | |
| | This Rule is not met as evidenced by: Based on review of the clinical record and physician interview, the facility failed to notify the physician when a resident had no bowel movement for three or more days on multiple occasions over a two month period. This affected one (Resident #46) of 11 sampled | | | |

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: **1325N** | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| NAME OF PROVIDER OR SUPPLIER **HEARTLAND OF URBANA** | | STREET ADDRESS, CITY, STATE, ZIP CODE **741 E WATER STREET URBANA, OH 43078** | **06/24/2010** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 184 | Continued From page 5

residents.

Findings include:

Review of the clinical record diagnosis report for Resident #46 revealed diagnoses of dementia, obstructive hydrocephalus, constipation, depression, anxiety, asthma, atrial fibrillation, blurred vision, and malnutrition. She was hospitalized 05/05/10 through 05/10/10 for surgery (colostomy and gastric feeding tube). Review of the ADL (activity of daily living) worksheet completed by Nurse Aids for the month of March and April 2010 revealed the resident had a medium bowel movement (BM) on 03/02/10 and no BM until a small BM on 03/07/10 (five days). No bowel movement was documented again from 03/28/10 through 04/01/10 (four days), 04/03/10 through 04/06/10 (three days), 04/10/10 through 04/14/10 (four days), 04/16/10 through 04/10/10 (four days), 04/22/10 through 04/26/10 (three days) and 04/27/10 through 04/30/10 (three days). Review of the physician orders revealed no routine medications for constipation and an order for milk of magnesia suspension 30 milliliters by mouth as needed for constipation. Review of the medication administration records revealed that the resident received no milk of magnesia during the months of March or April.

Review of nurses notes for the months of March and April 2010 revealed no information related to constipation. The record did not include physician notification regarding lack of bowel movements.

Interview of the attending physician of Resident #46 on 06/22/10 at 2:30 P.M. revealed he was her physician for for one week and was now | N 184 | | |

06/28/2011 16:18 937-653-8817 HEARTLAND/URBANA PAGE 07/41

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

**HEARTLAND OF URBANA**

STREET ADDRESS, CITY, STATE, ZIP CODE

**741 E WATER STREET**
**URBANA, OH 43078**

06/24/2010

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 184 | Continued From page 6 | N 184 | | |
| | aware of her constipation because of the history of bowel impaction. He stated he expected the nurses to monitor bowel movements and notify the physician if no bowel movements were noted for several days. | | | |
| N 209 | O.A.C. 3701-17-14 (E) Plan of Care; Treatment and Care; Discharge | N 209 | | |
| | O.A.C. 3701-17-14 (E) The nursing home shall assure that all residents receive adequate, kind, and considerate care and treatment at all times. | | | |
| | This Rule is not met as evidenced by: Based on review of the clinical record, staff interview and physician interview, the facility failed to ensure residents received timely bowel management, antibiotic therapy and emergency services. This affected three (Residents #46, #23 and #26) of 11 sampled residents. | | | |
| | Findings include: | | | |
| | 1. Review of the clinical record diagnosis report for Resident #46 revealed diagnoses of dementia, obstructive hydrocephalus, constipation, depression, anxiety, asthma, atrial fibrillation, blurred vision, and malnutrition. She was hospitalized 05/05/10 through 05/10/10 for surgery (colostomy and gastric feeding tube). Review of the ADL (activity of daily living) worksheet completed by Nurse Aids for the month of March and April 2010 revealed the resident had a medium bowel movement (BM) on 03/02/10 and no BM until a small BM on 03/07/10 (five days). No bowel movement was | | | |

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| NAME OF PROVIDER OR SUPPLIER HEARTLAND OF URBANA | | STREET ADDRESS, CITY, STATE, ZIP CODE 741 E WATER STREET URBANA, OH 43078 | 06/24/2010 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 209 | Continued From page 7 | N 209 | | |
| | documented again from 03/28/10 through 04/01/10 (four days), 04/03/10 through 04/06/10 (three days), 04/10/10 through 04/14/10 (four days), 04/16/10 through 04/10/10 (four days), 04/22/10 through 04/25/10 (three days) and 04/27/10 through 04/30/10 (three days). Review of the physician orders revealed no routine medications for constipation and an order for milk of magnesia suspension 30 milliliters by mouth as needed for constipation. Review of the medication administration records revealed that the resident received no milk of magnesia during the months of March or April. | | | |
| | Review of nurses notes for the months of March and April 2010 revealed no information related to constipation, including assessment and analysis of bowel movement patterns. The record did not include physician notification regarding lack of bowel movements. | | | |
| | Interview of the attending physician of Resident #46 on 06/22/10 at 2:30 P.M. revealed the resident had a history of bowel impaction. He stated he expected nurses to monitor bowel movements and notify physicians if no bowel movements were noted for several days. | | | |
| | Interview of Registered Nurse Consultant #72 on 06/22/10 at 3:15 P.M. revealed the facility had no written bowel protocol or policy. She stated that there was no standing orders for treatment of constipation. She stated that the medical directors preference was to notify the attending physicians individually if a resident had no bowel movement for three days and the physician could address each instance individually. She stated that the bowel movements were recorded daily by the nurse aids and tracked by the nurses. She stated that any abdominal or bowel assessment | | | |

hio Department of Health
TATE FORM

8899

5OBT11

If continuation sheet 8 of 18

06/28/2012 16:16    5374591601    HEARTLAND/URBANA    PAGE 09/41

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 209 | Continued From page 8 | N 209 | | |
| | performed would be documented in the nurses notes. Further interview of Registered Nurse #72 on 06/23/10 at 10:30 A.M. revealed no assessment off Resident #46's bowel function or pattern of constipation was documented in the nurses notes in March or April 2010, no laxative was administered during that time and the nurses notes were silent to notification of the physician of the lack of bowel movements. | | | |
| | 2. Review of the June 2010 physician order sheet revealed Resident #26 had diagnoses which included diabetes, muscular dystrophy, osteomyelitis and chronic kidney disease. The minimum data set (MDS) assessment dated 05/13/10 revealed the resident had no short or long term memory impairment, had difficulty with decisions in new situations, required extensive to total care for activities of daily living, had a suprapubic urinary drainage catheter and pressure ulcers. Nursing notes dated 06/11/10 at 5:00 A.M. stated Resident #26 complained of abdominal pain. His abdomen was distended. Bowel sounds were present in all four quadrants. There was no documentation that vital signs were assessed. Pain medication was given at that time. There was no documentation that the resident was reassessed until nursing notes dated 06/11/10 at 11:30 P.M., which identified the resident complained of abdominal pain. The resident's abdomen was distended, hard, firm, red, and warm to touch. His abdomen appeared three time larger than normal. The resident stated he could not eat due to pain and cramping. Pain medications were given but were not effective. The physician was notified at 11:30 P.M. and ordered the resident sent to the emergency room. The ambulance was called, arrived at 12:05 A.M., and the resident admitted to the hospital. | | | |

hio Department of Health
TATE FORM

6899          5OBT11          If continuation sheet 9 of 18

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 209 | Continued From page 9 | N 209 | | |
| | During an interview on 6/22/10 at 1:00 PM, LPN #55 verified the resident was not reassessed in a timely manner and emergency care was delayed. | | | |
| | 3.  Review of physician orders for May 2010 revealed Resident #23 had diagnoses including Alzheimer's dementia and chronic lymphocytic leukemia.  Review of nursing notes dated 05/02/10 at 7:45 PM revealed the physician ordered a culture of the resident's right eye due to increased drainage.  Laboratory results revealed the specimen was obtained on 05/08/10 at 10:30 A.M., results were returned to the facility on 05/11/10 and Resident #23 was not started on antibiotic eye medication until 05/20/10.  This was confirmed by LPN #55 on 06/22/10 at 1:00 PM. | | | |
| | During interview on 06/22/10 at 2:30 P.M., the Medical Director (MD) stated, unless specified otherwise, laboratory specimens should be obtained within one day of the physician order. The MD affirmed antibiotic therapy was delayed. | | | |
| | Based on clinical record review, staff interviews and review of facility policy, the facility failed to document adequate indication of use for an as needed narcotic anti-anxiety medication and failed to document non-pharmacological interventions prior to administering an as needed narcotic pain medication.  This affected two (Residents #1 and #10) of 11 sampled residents. | | | |
| | Findings include: | | | |
| | 1.  Review of the Admission Record for Resident #1 revealed an admission date of 01/18/06. Review of the Diagnosis Report revealed diagnosis which included chronic obstructive pulmonary disorder, anxiety, diabetes, dementia, | | | |

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A BUILDING ___ B. WING ___ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 209 | Continued From page 10 | N 209 | | |
| | schizophrenia, psychosis, elevated blood pressure, congestive heart failure, depression and obesity. Review of the Minimum Data Set (MDS) assessment dated 04/22/10 revealed Resident #1 had difficulty remembering short and long term memories and was moderately cognitively impaired. | | | |
| | Review of the Plan of Care regarding pain for Resident #1 dated 03/25/10 stated non-pharmacological interventions for pain included: redirect with television; reposition; offer comfort foods prior to administering the pain medication. Review of Plan of Care regarding anti-anxiety medication state to monitor mood, assure basic needs are met, offer to decrease environmental stimulus by offering to close blinds, and offer soft music are to be tried prior to administering the anti-anxiety medication. | | | |
| | Review of the Medication Administration Record (MAR) for June, 2010 revealed an order for .25 milligrams (mg) of Alprazolam (Xanax - anti-anxiety medication) as needed (prn) every eight hours. Further review of the MAR revealed the medication had been administered 18 times in June. Continued review of the MAR revealed no documentation as to why the medication had been administered on these dates. Review of the nurse's notes during this period revealed no documentation as to why the medication had been administered or what behaviors the resident was exhibiting. | | | |
| | Continued review of the MAR for June, 2010 revealed an order dated 01/18/10 for hydrocodone/APAP 5-500 (Vicodin – narcotic analgesic) every six hours prn for moderate to severe pain. Review of the MAR revealed the medication was administered 11 times June with | | | |

Ohio Department of Health

TATE FORM

6899

5OBT11

If continuation sheet 11 of 18

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING ____ B. WING ____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER HEARTLAND OF URBANA | STREET ADDRESS, CITY, STATE, ZIP CODE 741 E WATER STREET URBANA, OH 43078 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 209 | Continued From page 11 | N 209 | | |

no documentation as to what non-pharmacological interventions had been tried prior to administering the medication.

2. Review of the Admission Record for Resident #10 revealed an admission date of 01/03/09. Review of the Diagnosis Record revealed diagnosis which included dementia with delusions, hearing loss, brain cancer, epilepsy, and history of craniotomy. Review of the MDS dated 04/12/10 revealed Resident #10 had difficulty remembering short term memories and was moderately cognitively impaired.

Review of the Plan of Care regarding pain for Resident #10 dated 04/12/10 stated non-pharmacological interventions of activities, reposition, and comfort foods are to be tried prior to administering the pain medication. Review of the Plan of Care regarding anti-anxiety medications states monitor mood, assure basic needs are met, and encourage resident to go to activities prior to administering the anti-anxiety medication.

Review of the Medication Administration Record (MAR) dated June, 2010 revealed an order dated 01/05/10 for .5 milligrams (mg.) of Lorazepam (Ativan - anti-anxiety medication) prn every six hours. Further review of the MAR revealed the medication was administered nine times in June. Continued review of the MAR revealed no documentation as to why the medication had been administered on these dates. Review of the nurse's notes during this period revealed no documentation as to why the medication had been administered or what behaviors the resident was exhibiting. Review of the MAR revealed the Vicodin was administered 15 times in June with no documentation as to what

06/28/2011 15:18    937-653-6817    HEARTLAND/URBANA    PAGE 13/41

PRINTED: 07/07/2010
FORM APPROVED

Ohio Dept Health

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER HEARTLAND OF URBANA | STREET ADDRESS, CITY, STATE, ZIP CODE 741 E WATER STREET URBANA, OH 43078 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 209 | Continued From page 12 | N 209 | | |
| | non-pharmacological interventions had been tried prior to administering the medication. | | | |
| | In an interview on 06/22/10 at 1:40 P.M., Registered Nurse (R.N.) #65 stated the nurses were to document every time why any prn medications were administered, including what behaviors the resident demonstrated and what non-pharmacological interventions were tried prior to administering the medication. RN #65 further verified there was no documentation of any behaviors or non-pharmacological interventions tried prior to administering the above medications for both of these residents. Review of the facility policy regarding medication administration dated 03/2010 revealed Suggested Documentation included unusual observations or complaints and subsequent interventions. | | | |
| N 404 | R.C. 3721.12(A)(1) DUTIES OF ADMINISTRATOR | N 404 | | |
| | R.C. 3721.12(A)(1) The administrator of a home shall: (1) With the advice of residents, their sponsors, or both, establish and review at least annually, written policies regarding the applicability and implementation of residents' rights under sections 3721.10 to 3721.17 of the Revised Code, the responsibilities of residents regarding the rights, and the home's grievance procedure established under division (A)(2) of this section. The administrator is responsible for the development of, and adherence to, procedures implementing the policies. | | | |

PRINTED: 07/07/2010
FORM APPROVED

Ohio Dept Health

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A BUILDING B. WING | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

(X3) DATE SURVEY COMPLETED: 06/24/2010

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 404 | Continued From page 13 | N 404 | | |
| | This Rule is not met as evidenced by: Based on review of the facility policy and procedures for Abuse, Neglect and Misappropriation of Patient Property Prevention, and interview, the facility failed to ensure that the facility policy for Abuse, Neglect and Misappropriation of Patient Property Prevention was implemented to ensure that incidents were thoroughly investigated and that allegations were reported to the State agency immediately, within 24 hours. This affected two (#13, #15) of five residents with self reported incidents (SRI) involving allegations of verbal abuse. | | | |
| | Findings include: | | | |
| | Review of the facility policy and procedure for Abuse, Neglect and Misappropriation of Patient Property Prevention, dated 04/21/06, revealed on page six, that each patient has the right to be free from and must not be subjected to abuse by anyone, including but not limited to facility staff, other patients, staff of other agencies serving the patient, family members, friends, or other individuals. Verbal abuse was defined as oral, written or gestured language that willfully included disparaging and derogatory terms to patients or the families, or within hearing distance, regardless of their age, ability to comprehend, or disability. Page 10 indicated the facility must have evidence that all allegations are thoroughly investigated and must prevent any further potential abuse while the investigation proceeds. The allegation must be immediately reported to the supervisor and abuse prevention coordinator and to other officials (including state survey and certification agency) in accordance with stated law, not to exceed 24 hours after discovery of the incident. | | | |

PRINTED: 07/07/2010
FORM APPROVED

Ohio Dept Health

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 1325N | A. BUILDING _____ B. WING _____ | 06/24/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 404 | Continued From page 14 | N 404 | | |

N 404 Continued From page 14

1. Review of the facility reported incident of 09/21/10 revealed that a staff member (unidentified) had reported overhearing State tested nurse aid (STNA) #75 cursing at Resident #13. The final report dated 09/25/09 indicated that the employee was suspended and an investigation revealed that the resident was unaware of any situation. The investigation was not located or provided for review.

Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the investigation could not be located. She verified that the staff witness was not identified for interview and without the investigation could not be identified. She verified the facility conclusion stated that the resident was unaware of any situation. She verified the definition of verbal abuse according to the policy and procedure did not require the resident to be aware of comprehend and that the final report indicated incident had been witnessed and reported by another staff member. She verified that the personnel file of STNA #75 did not indicate additional abuse education or disciplinary action related to the 09/21/09 allegation of verbal abuse of a resident.

2. Review of the facility reported incident of 11/06/09 which was reported to the state agency on 11/09/09 revealed that STNA #75 was overheard yelling at Resident #15. The incident was witnessed by the charge nurse and an STNA. The employee was suspended, the investigation was completed and the employee was terminated.

Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the facility investigation concluded the incident had occurred

PRINTED: 07/07/2010
FORM APPROVED

Ohio Dept Health

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  1325N | (X2) MULTIPLE CONSTRUCTION  A. BUILDING  B. WING | (X3) DATE SURVEY COMPLETED  06/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER  HEARTLAND OF URBANA | STREET ADDRESS, CITY, STATE, ZIP CODE  741 E WATER STREET  URBANA, OH 43078 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 404 | Continued From page 15 | N 404 | | |
| | on 11/06/09 and was reported to the State Agency on 11/09/09. The final report sent to the state agency on 11/13/09 indicated that STNA#75 had been terminated on 11/20/09. She verified that STNA #75 had been named in an alleged incident of verbal abuse of a resident on 09/21/09 according to incidents reported to the State Agency by the facility. She verified that the report indicated that another STNA (unidentified) had witnessed and reported the previous incident. She verified that the personnel file of STNA #75 did not reflect that the incident had occurred and that the investigation could not be located for review. | | | |
| N 411 | R.C. 3721.13(A)(2) RIGHTS OF RESIDENTS | N 411 | | |
| | R.C. 3721.13(A)(2)  The right to be free from physical, verbal, mental, and emotional abuse and to be treated at all times with courtesy, respect, and full recognition of dignity and individuality; | | | |
| | This Rule is not met as evidenced by: Based on review of the facility policy and procedures for Abuse, Neglect and Misappropriation of Patient Property Prevention, personnel file review and interview, the facility failed to ensure residents were free from verbal abuse. This affected two (Residents #13, #15) of five residents with self reported incidents (SRI) with allegations of verbal abuse.  Findings include: | | | |

hio Department of Health

TATE FORM                                    6899                    5OBT11                    If continuation sheet 16 of 18

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

**HEARTLAND OF URBANA**

STREET ADDRESS, CITY, STATE, ZIP CODE

**741 E WATER STREET**
**URBANA, OH 43078**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 411 | Continued From page 16 | N 411 | | |
| | 1. Review of the SRI dated 09/21/10 revealed a staff member (unidentified) reported overhearing State Tested Nurse Aid (STNA) #75 cursing at Resident #13. The final report dated 09/25/09 indicated STNA #75 was suspended and an investigation revealed the resident was unaware of any situation. The investigation was not available for review. | | | |
| | Review of the personnel file for STNA #75 revealed a hire date of 08/04/09. The 90 day evaluation for the period of 08/04/09 through 11/04/09 documented she received a needs improvement evaluation for organization and completing tasks according to the job description. The evaluation indicated that she received coaching forms on 09/23/09 for failing to follow directions by a nurse to put a resident to bed before leaving the facility and 09/24/09 for failing to be sure that resident needs were met and last round care provided before rounds with the oncoming shift. | | | |
| | Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the investigation could not be located. She verified that the staff witness was not identified for interview and without the investigation could not be identified. She verified the facility conclusion stated that the resident was unaware of any situation. She verified the definition of verbal abuse according to the policy and procedure did not require the resident to be aware and that the final report indicated the incident was witnessed and reported by another staff member. She verified the personnel file of STNA #75 did not indicate additional abuse education or disciplinary action related to the 09/21/09 allegation of verbal abuse of a resident. | | | |

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **1325N** | A. BUILDING _____ B. WING _____ | | **06/24/2010** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **HEARTLAND OF URBANA** | **741 E WATER STREET** **URBANA, OH 43078** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 411 | Continued From page 17 | N 411 | | |
| | 2. Review of the SRI dated 11/06/09 revealed STNA #75 was overheard yelling at Resident #15. The incident was witnessed by the charge nurse and an STNA. The employee was suspended, the investigation was completed and the employee was terminated. | | | |
| | Interview with Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed the facility investigation concluded the incident had occurred. She verified that STNA #75 had been involved in an alleged incident of verbal abuse of a resident on 09/21/09 according to incidents reported to the State Agency by the facility. She verified that the report indicated that another STNA (unidentified) had witnessed and reported the previous incident. She verified that the personnel file of STNA #75 did not reflect that the incident had occurred and that the investigation could not be located for review. | | | |
| | Review of the facility policy and procedure for Abuse, Neglect and Misappropriation of Patient Property Prevention dated 04/21/06 revealed: each patient has the right to be free from and must not be subjected to abuse by anyone, including but not limited to facility staff, other patients, staff of other agencies serving the patient, family members, friends, or other individuals. Verbal abuse was defined as oral, written or gestured language that willfully included disparaging and derogatory terms to patients or the families, or within hearing distance, regardless of their age, ability to comprehend, or disability. | | | |

8899

5OBT11

If continuation sheet 18 of 18

06/28/2011  16:18      937-653-6817              HEARTLAND/URBANA                           PAGE  19/41

EPARTMENT OF HEALTH AND HUMAN SERVICES                                        PRINTED: 07/07/2010
ENTERS FOR MEDICARE & MEDICAID SERVICES                                            FORM APPROVED
                                                                                OMB NO. 0938-0391

| TEMENT OF DEFICIENCIES PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | | A. BUILDING | | |
| | 365365 | B. WING _____ | | 06/24/2010 |

ME OF PROVIDER OR SUPPLIER                          STREET ADDRESS, CITY, STATE, ZIP CODE
                                                   741 E WATER STREET
EARTLAND OF URBANA                                 URBANA, OH  43078

| X4) ID REFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 000 | INITIAL COMMENTS<br><br>ANNUAL SURVEY<br><br>ADMINISTRATOR: KATHERINE E. W. WILL #3057<br>CERTIFIED BED CAPACITY: 85<br><br>CENSUS: 47<br>MEDICARE: 05<br>MEDICAID: 30<br>OTHER: 12<br><br>The following deficiencies are based on the annual survey completed 06/24/10. | F 000 | Heartland of Urbana has and will continue to be in substantial compliance with 42 CFR Part 483 Subpart B. Heartland of Urbana has or will have substantially corrected the alleged deficiencies and achieved substantial compliance by the date specified herein.<br><br>This Plan of Correction constitutes Heartland of Urbana allegation of substantial compliance such that the alleged deficiencies cited have been or will be corrected by August 3, 2010. | |
| 157<br>S=D | 483.10(b)(11) NOTIFY OF CHANGES (INJURY/DECLINE/ROOM, ETC)<br><br>A facility must immediately inform the resident; consult with the resident's physician; and if known, notify the resident's legal representative or an interested family member when there is an accident involving the resident which results in injury and has the potential for requiring physician intervention; a significant change in the resident's physical, mental, or psychosocial status (i.e., a deterioration in health, mental, or psychosocial status in either life threatening conditions or clinical complications); a need to alter treatment significantly (i.e., a need to discontinue an existing form of treatment due to adverse consequences, or to commence a new form of treatment); or a decision to transfer or discharge the resident from the facility as specified in §483.12(a).<br><br>The facility must also promptly notify the resident and, if known, the resident's legal representative or interested family member when there is a change in room or roommate assignment as | F 157 | The statements made in this plan are not an admission to and do not constitute an agreement with the alleged deficiencies herein. To continue to remain in substantial compliance with State and Federal regulations, Heartland of Urbana has taken the actions set forth in this Plan of Correction.<br><br>F157 Notify of Changes<br>The facility will continue to notify the Physician when a resident has no bowel movement for three days. | 8/3/10 |

ORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE                TITLE                              (X6) DATE

_[signature]_                                                     ADMINISTRATOR            7/16/10

iency statement ending with an asterisk (*) denotes a deficiency which the institution may be excused from correcting providing it is determined that
guards provide sufficient protection to the patients. (See instructions.) Except for nursing homes, the findings stated above are disclosable 90 days
wing the date survey whether or not a plan of correction is provided. For nursing homes, the above findings and plans of correction are disclosable 14
wing the date these documents are made available to the facility. If deficiencies are cited, an approved plan of correction is requisite to continued
articipation.

| EPARTMENT OF HEALTH AND HUMAN SERVICES ENTERS FOR MEDICARE & MEDICAID SERVICES | | | | PRINTED: 07/07/2010 FORM APPROVED OMB NO. 0938-0391 |
|---|---|---|---|---|
| .TEMENT OF DEFICIENCIES ) PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | | (X3) DATE SURVEY COMPLETED 06/24/2010 |

ME OF PROVIDER OR SUPPLIER

EARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (4) ID REFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| : 157 | Continued From page 1<br><br>specified in §483.15(e)(2); or a change in resident rights under Federal or State law or regulations as specified in paragraph (b)(1) of this section.<br><br>The facility must record and periodically update the address and phone number of the resident's legal representative or interested family member.<br><br>This REQUIREMENT is not met as evidenced by:<br>Based on review of the clinical record and physician interview, the facility failed to notify the physician when a resident had no bowel movement for three or more days on multiple occasions over a two month period. This affected one (Resident #46) of 11 sampled residents.<br><br>Findings include:<br><br>Review of the clinical record diagnosis report for Resident #46 revealed diagnoses of dementia, obstructive hydrocephalus, constipation, depression, anxiety, asthma, atrial fibrillation, blurred vision, and malnutrition. She was hospitalized 05/05/10 through 05/10/10 for surgery (colostomy and gastric feeding tube). Review of the ADL (activity of daily living) worksheet completed by Nurse Aids for the month of March and April 2010 revealed the resident had a medium bowel movement (BM) on 03/02/10 and no BM until a small BM on 03/07/10 (five days). No bowel movement was documented again from 03/28/10 through 04/01/10 (four days), 04/03/10 through 04/06/10 (three days), 04/10/10 through 04/14/10 (four days), 04/16/10 through 04/10/10 (four days), 04/22/10 through 04/25/10 (three days) and | F 157 | Resident #46 received a thorough abdominal assessment and clinical record has been updated to reflect the same. Resident #46 suffered no ill effects from a lack of bowel movements every three days. This said resident continues to receive medications to manage bowel function.<br><br>Like Residents received a thorough abdominal assessment and their clinical record has been updated to reflect the same by the ADNS/Deisignee. Physician was notified for bowel management measures if indicated by the ADNS/Designee..<br><br>Nursing Staff will be inserviced on abdominal assessment, proper documentation for recording of bowel movements, providing PRN laxatives, and proper notification to the Physician for a lack of bowel movements exceeding three days by the ADNS and or designee on or before 8/3/2010.<br><br>BM audit tool will be completed threes times a week for 4 weeks by the ADNS/Designee. | |

S-2567(02-99) Previous Versions Obsolete          Event ID:5OBT11          Facility ID: OH00448          If continuation sheet Page 2 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | | A. BUILDING _____ | |
| | | B. WING _____ | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 157 | Continued From page 2<br><br>04/27/10 through 04/30/10 (three days). Review of the physician orders revealed no routine medications for constipation and an order for milk of magnesia suspension 30 milliliters by mouth as needed for constipation. Review of the medication administration records revealed that the resident received no milk of magnesia during the months of March or April.<br><br>Review of nurses notes for the months of March and April 2010 revealed no information related to constipation. The record did not include physician notification regarding lack of bowel movements.<br><br>Interview of the attending physician of Resident #46 on 06/22/10 at 2:30 P.M. revealed he was her physician for for one week and was now aware of her constipation because of the history of bowel impaction. He stated he expected the nurses to monitor bowel movements and notify the physician if no bowel movements were noted for several days. | F 157 | The quality assessment and assurance (QAA) committee will validate the actions taken to effectively resolving the cited issues and verify the dates of completion. | |
| 223 S=D | 483.13(b), 483.13(b)(1)(i) FREE FROM ABUSE/INVOLUNTARY SECLUSION<br><br>The resident has the right to be free from verbal, sexual, physical, and mental abuse, corporal punishment, and involuntary seclusion.<br><br>The facility must not use verbal, mental, sexual, or physical abuse, corporal punishment, or involuntary seclusion.<br><br>This REQUIREMENT is not met as evidenced by:<br>Based on review of the facility policy and procedures for Abuse, Neglect and | F 223 | F 223 Free From Abuse/Involuntary Seclusion<br>The facility will continue to ensure that Residents are free from verbal abuse.<br><br>Resident #13 received a thorough investigation to ensure the safety of said resident. Conclusions of the investigation do not support indications of verbal abuse. | 8/3/10 |

| DEPARTMENT OF HEALTH AND HUMAN SERVICES | | | | PRINTED: 07/07/2010 FORM APPROVED OMB NO. 0938-0391 | |
|---|---|---|---|---|---|
| CENTERS FOR MEDICARE & MEDICAID SERVICES | | | | | |
| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | | (X3) DATE SURVEY COMPLETED 06/24/2010 | |
| NAME OF PROVIDER OR SUPPLIER HEARTLAND OF URBANA | | STREET ADDRESS, CITY, STATE, ZIP CODE 741 E WATER STREET URBANA, OH 43078 | | | |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 223 | Continued From page 3

Misappropriation of Patient Property Prevention, personnel file review and interview, the facility failed to ensure residents were free from verbal abuse. This affected two (Residents #13, #15) of five residents with self reported incidents (SRI) with allegations of verbal abuse.

Findings include:

1. Review of the SRI dated 09/21/10 revealed a staff member (unidentified) reported overhearing State Tested Nurse Aid (STNA) #75 cursing at Resident #13. The final report dated 09/25/09 indicated STNA #75 was suspended and an investigation revealed the resident was unaware of any situation. The investigation was not available for review.

Review of the personnel file for STNA #75 revealed a hire date of 08/04/09. The 90 day evaluation for the period of 08/04/09 through 11/04/09 documented she received a needs improvement evaluation for organization and completing tasks according to the job description. The evaluation indicated that she received coaching forms on 09/23/09 for failing to follow directions by a nurse to put a resident to bed before leaving the facility and 09/24/09 for failing to be sure that resident needs were met and last round care provided before rounds with the oncoming shift.

Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the investigation could not be located. She verified that the staff witness was not identified for interview and without the investigation could not be identified. She verified the facility conclusion stated that the resident was unaware of any | F 223 | Residents with allegations of abuse will have a thorough investigation completed with timely reporting to the appropriate agencies when indicated immediately by the Administrator/designee.

Administrator and ADNS educated on F 223 and completion of a thorough investigation by Clinical Consultant and or designee on or before 8/3/2010.

Staff will be inserviced on Residents Rights and Abuse, Neglect, and Misappropriation of Fund, and Nurses will be inserviced on proper documentation guidelines by the ADNS and or designee on or before 8/3/2010.

Abuse Audit Tool will be conducted 3 X week for four weeks by the Administrator/designee..

The quality assessment and assurance (QAA) committee will validate the actions taken are effectively resolving the cited issues and verify the dates of completion. | |

LS-2567(02-99) Previous Versions Obsolete          Event ID: 5OBT11          Facility ID: OH00448          If continuation sheet Page 4 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 223 | Continued From page 4 | F 223 | | |

situation. She verified the definition of verbal abuse according to the policy and procedure did not require the resident to be aware and that the final report indicated the incident was witnessed and reported by another staff member. She verified the personnel file of STNA #75 did not indicate additional abuse education or disciplinary action related to the 09/21/09 allegation of verbal abuse of a resident.

2. Review of the SRI dated 11/06/09 revealed STNA #75 was overheard yelling at Resident #15. The incident was witnessed by the charge nurse and an STNA. The employee was suspended, the investigation was completed and the employee was terminated.

Interview with Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed the facility investigation concluded the incident had occurred. She verified that STNA #75 had been involved in an alleged incident of verbal abuse of a resident on 09/21/09 according to incidents reported to the State Agency by the facility. She verified that the report indicated that another STNA (unidentified) had witnessed and reported the previous incident. She verified that the personnel file of STNA #75 did not reflect that the incident had occurred and that the investigation could not be located for review.

Review of the facility policy and procedure for Abuse, Neglect and Misappropriation of Patient Property Prevention dated 04/21/06 revealed: each patient has the right to be free from and must not be subjected to abuse by anyone, including but not limited to facility staff, other patients, staff of other agencies serving the patient, family members, friends, or other

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING _____ B. WING _____ | | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 223 | Continued From page 5 | F 223 | | |
| | individuals.  Verbal abuse was defined as oral, written or gestured language that willfully included disparaging and derogatory terms to patients or the families, or within hearing distance, regardless of their age, ability to comprehend, or disability. | | | |
| F 225 SS=D | 483.13(c)(1)(ii)-(iii), (c)(2) - (4) INVESTIGATE/REPORT ALLEGATIONS/INDIVIDUALS<br><br>The facility must not employ individuals who have been found guilty of abusing, neglecting, or mistreating residents by a court of law; or have had a finding entered into the State nurse aide registry concerning abuse, neglect, mistreatment of residents or misappropriation of their property; and report any knowledge it has of actions by a court of law against an employee, which would indicate unfitness for service as a nurse aide or other facility staff to the State nurse aide registry or licensing authorities.<br><br>The facility must ensure that all alleged violations involving mistreatment, neglect, or abuse, including injuries of unknown source and misappropriation of resident property are reported immediately to the administrator of the facility and to other officials in accordance with State law through established procedures (including to the State survey and certification agency).<br><br>The facility must have evidence that all alleged violations are thoroughly investigated, and must prevent further potential abuse while the investigation is in progress.<br><br>The results of all investigations must be reported to the administrator or his designated representative and to other officials in accordance | F 225 | F 225 Investigate/Report Allegations/Individuals<br>The facility will continue to ensure that allegations of verbal abuse are thoroughly investigated and reported to state survey and certification agencies within 5 days when indicated.<br><br>Resident #13 received a thorough investigation to ensure the safety of said resident. Conclusions of the investigation do not support indications of verbal abuse.<br><br>Residents with  allegations of abuse will receive a thorough investigation and reported timely to the appropriate agencies immediately by the Administrator/designee.<br><br>Administrator and ADNS in serviced on F 225 by Clinical Consultant and or designee on or before 8/3/2010. | 8/3/10 |

CMS-2567(02-99) Previous Versions Obsolete          Event ID: 5OBT11          Facility ID: OH00448          If continuation sheet Page 6 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING B. WING | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 6 with State law (including to the State survey and certification agency) within 5 working days of the incident, and if the alleged violation is verified appropriate corrective action must be taken. This REQUIREMENT is not met as evidenced by: Based on review of the facility policy and procedures for Abuse, Neglect and Misappropriation of Patient Property Prevention, and interview, the facility failed to ensure that an allegation of verbal abuse was thoroughly investigated. This affected one (Resident #13) of five residents with Self Reported Incidents (SRI) involving allegations of verbal abuse. Findings include: Review of the SRI dated 09/21/10 revealed a staff member (unidentified) reported overhearing State Tested Nurse Aid (STNA) #75 cursing at Resident #13. The final report dated 09/25/09 indicated STNA #75 was suspended and an investigation revealed the resident was unaware of any situation. The investigation was not available for review. Review of the personnel file for STNA #75 revealed a hire date of 08/04/09. The 90 day evaluation for the period of 08/04/09 through 11/04/09 documented she received a needs improvement evaluation for organization and completing tasks according to the job description. The evaluation indicated that she received coaching forms on 09/23/09 for failing to follow directions by a nurse to put a resident to bed before leaving the facility and 09/24/09 for failing | F 225 | Staff will be inserviced on Residents Rights and Abuse, Neglect, and Misappropriation of Fund, and Nurses will be inserviced on proper documentation guidelines and timely reporting by the ADNS and or designee on or before 8/3/2010. Abuse Audit tool will be completed weekly x 4 weeks by the Administrator/Designee. The quality assessment and assurance (QAA) committee will validate the actions taken are effectively resolving the cited issues and verify the dates of completion. | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING _____ B. WING _____ | | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 7 | F 225 | | |
| | to be sure that resident needs were met and last round care provided before rounds with the oncoming shift. | | | |
| | Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the investigation could not be located. She verified that the staff witness was not identified for interview and without the investigation could not be identified. She verified the facility conclusion stated that the resident was unaware of any situation. She verified the definition of verbal abuse according to the policy and procedure did not require the resident to be aware and that the final report indicated the incident was witnessed and reported by another staff member. She verified the personnel file of STNA #75 did not indicate additional abuse education or disciplinary action related to the 09/21/09 allegation of verbal abuse of a resident. | | | |
| | Review of the facility policy and procedure for Abuse, Neglect and Misappropriation of Patient Property Prevention, dated 04/21/06, revealed on page six, that each patient has the right to be free from and must not be subjected to abuse by anyone, including but not limited to facility staff, other patients, staff of other agencies serving the patient, family members, friends, or other individuals. Verbal abuse was defined as oral, written or gestured language that willfully included disparaging and derogatory terms to patients or the families, or within hearing distance, regardless of their age, ability to comprehend, or disability. Page 10 indicated the facility must have evidence that all allegations are thoroughly investigated and must prevent any further potential abuse while the investigation proceeds. The allegation must be immediately reported to | | | |

06/28/2011 16:18 937-653-6817 HEARTLAND/URBANA PAGE 27/41

| DEPARTMENT OF HEALTH AND HUMAN SERVICES CENTERS FOR MEDICARE & MEDICAID SERVICES | | | | PRINTED: 07/07/2010 FORM APPROVED OMB NO. 0938-0391 |
|---|---|---|---|---|
| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | | (X3) DATE SURVEY COMPLETED 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 8<br><br>the supervisor and abuse prevention coordinator and to other officials (including state survey and certification agency) in accordance with stated law, not to exceed 24 hours after discovery of the incident. | F 225 | | |
| F 226 SS=D | 483.13(c) DEVELOP/IMPLMENT ABUSE/NEGLECT, ETC POLICIES<br><br>The facility must develop and implement written policies and procedures that prohibit mistreatment, neglect, and abuse of residents and misappropriation of resident property.<br><br>This REQUIREMENT is not met as evidenced by:<br>Based on review of the facility policy and procedures for Abuse, Neglect and Misappropriation of Patient Property Prevention, and interview, the facility failed to ensure that the facility policy for Abuse, Neglect and Misappropriation of Patient Property Prevention was implemented to ensure that incidents were thoroughly investigated and that allegations were reported to the State agency immediately, within 24 hours. This affected two (#13, #15) of five residents with self reported incidents (SRI) involving allegations of verbal abuse.<br><br>Findings include:<br><br>Review of the facility policy and procedure for Abuse, Neglect and Misappropriation of Patient Property Prevention, dated 04/21/06, revealed on page six, that each patient has the right to be free from and must not be subjected to abuse by anyone, including but not limited to facility staff, other patients, staff of other agencies serving the patient, family members, friends, or other | F 226 | F 226<br>Develop/Implement/abuse/Neglect, ETC Policies<br>The facility will continue to ensure that the facility policy for Residents Rights and Abuse, Neglect, and Misappropriation of patient funds are implement to ensure that incidents are thoroughly investigated and that allegations are reported to state agencies immediately, within 24 hours.<br><br>Resident #13 received a thorough investigation to ensure the safety of said resident. Conclusions of the investigation do not support indications of verbal abuse.<br><br>Resident #15 received a thorough investigation to ensure the safety of said resident.<br><br>Residents with allegations of abuse will receive a thorough investigation and reported timely to the appropriate agencies immediately by the Administrator/Designee.. | 8/3/10 |

DEPARTMENT OF HEALTH AND HUMAN SERVICES                          PRINTED: 07/07/2010
CENTERS FOR MEDICARE & MEDICAID SERVICES                         FORM APPROVED
                                                                 OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING _____ B. WING _____ | | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH  43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 226 | Continued From page 9 | F 226 | | |

individuals.  Verbal abuse was defined as oral, written or gestured language that willfully included disparaging and derogatory terms to patients or the families, or within hearing distance, regardless of their age, ability to comprehend, or disability.  Page 10 indicated the facility must have evidence that all allegations are thoroughly investigated and must prevent any further potential abuse while the investigation proceeds. The allegation must be immediately reported to the supervisor and abuse prevention coordinator and to other officials (including state survey and certification agency) in accordance with stated law, not to exceed 24 hours after discovery of the incident.

1. Review of the facility reported incident of 09/21/10 revealed that a staff member (unidentified) had reported overhearing State tested nurse aid (STNA) #75 cursing at Resident #13. The final report dated 09/25/09 indicated that the employee was suspended and an investigation revealed that the resident was unaware of any situation.  The investigation was not located or provided for review.

Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the investigation could not be located.  She verified that the staff witness was not identified for interview and without the investigation could not be identified.  She verified the facility conclusion stated that the resident was unaware of any situation.  She verified the definition of verbal abuse according to the policy and procedure did not require the resident to be aware of comprehend and that the final report indicated incident had been witnessed and reported by another staff member.  She verified that the

Administrator and ADNS will be educated on F Tag 226 by Clinical Consultant and or designee on or before 8/3/2010.

Staff will be inserviced on Residents Rights and Abuse, Neglect, and Misappropriation of Fund, and Nurses will be inserviced on proper documentation guidelines and timely reporting by the ADNS and or designee on or before 8/3/2010.

Abuse Audit tool will be completed weekly x 4 weeks by the Administrator/designee The quality assessment and assurance (QAA) committee will validate the actions taken are effectively resolving the cited issues and verify the dates of completion.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING<br>B. WING | | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH  43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 226 | Continued From page 10<br><br>personnel file of STNA #75 did not indicate additional abuse education or disciplinary action related to the 09/21/09 allegation of verbal abuse of a resident.<br><br>2. Review of the facility reported incident of 11/06/09 which was reported to the state agency on 11/09/09 revealed that STNA #75 was overheard yelling at Resident #15. The incident was witnessed by the charge nurse and an STNA. The employee was suspended, the investigation was completed and the employee was terminated.<br><br>Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the facility investigation concluded the incident had occurred on 11/06/09 and was reported to the State Agency on 11/09/09. The final report sent to the state agency on 11/13/09 indicated that STNA#75 had been terminated on 11/20/09. She verified that STNA #75 had been named in an alleged incident of verbal abuse of a resident on 09/21/09 according to incidents reported to the State Agency by the facility. She verified that the report indicated that another STNA (unidentified) had witnessed and reported the previous incident. She verified that the personnel file of STNA #75 did not reflect that the incident had occurred and that the investigation could not be located for review. | F 226 | | |
| F 272 | 483.20, 483.20(b) COMPREHENSIVE ASSESSMENTS<br><br>The facility must conduct initially and periodically a comprehensive, accurate, standardized reproducible assessment of each resident's functional capacity. | F 272 | F 272 Comprehensive Assessments<br>The facility will continue to ensure comprehensive assessment for change in condition and bowel function.<br><br>Residents # 46 and # 26 received a thorough abdominal assessment and | 8/3/10 |

LS-2567(02-99) Previous Versions Obsolete          Event ID: 5OBT11          Facility ID: OH00448          If continuation sheet Page  11 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | | (X3) DATE SURVEY COMPLETED<br>06/24/2010 |
|---|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET<br>URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 272 | Continued From page 11<br><br>A facility must make a comprehensive assessment of a resident's needs, using the RAI specified by the State. The assessment must include at least the following:<br>Identification and demographic information;<br>Customary routine;<br>Cognitive patterns;<br>Communication;<br>Vision;<br>Mood and behavior patterns;<br>Psychosocial well-being;<br>Physical functioning and structural problems;<br>Continence;<br>Disease diagnosis and health conditions;<br>Dental and nutritional status;<br>Skin conditions;<br>Activity pursuit;<br>Medications;<br>Special treatments and procedures;<br>Discharge potential;<br>Documentation of summary information regarding the additional assessment performed through the resident assessment protocols; and<br>Documentation of participation in assessment.<br><br>This REQUIREMENT is not met as evidenced by:<br>Based on record review and staff interview, the facility failed to ensure assessees residents were assessed for change in condition and bowel function. This affected two (Residents #26 and #46) of 11 sampled residents.<br><br>Finding included;<br><br>1. Review of the June 2010 physician order sheet revealed Resident #26 had diagnoses which included diabetes, muscular dystrophy, | F 272 | clinical record has been updated to reflect the same. Resident # 46 and # 26 suffered no ill effects from a lack of bowel movements every three days. These said residents continue to receive medications to manage bowel function.<br><br>Like Residents received a though abdominal assessment and their clinical record has been updated to reflect the same by the ADNS/Designee. Physician was notified for bowel management measures if indicated by the ADNS/Designee.<br><br>Nursing Staff will be inserviced on proper abdominal assessing, documentation guidelines for recording of bowel movements, and proper notification to the Physician for condition change by the ADNS and or designee on or before 8/3/2010.<br><br>BM Audit Tool will be completed three times a week for 4 weeks by the ADNS/Designee. | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: 5OBT11          Facility ID: OH00448          If continuation sheet Page 12 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 272 | Continued From page 12 | F 272 | The quality assessment and assurance (QAA) committee will validate the actions taken are effectively resolving the cited issues and verify the dates of completion. | |

F 272 body text:

osteomyelitis and chronic kidney disease. The minimum data set (MDS) assessment dated 05/13/10 revealed the resident had no short or long term memory impairment, had difficulty with decisions in new situations, required extensive to total care for activities of daily living, had a suprapubic urinary drainage cathetere and pressure ulcers. Nursing notes dated 06/11/10 at 5:00 A.M. stated Resident #26 complained of abdominal pain. His abdomen was distended. Bowel sounds were present in all four quadrants. There was no documation that vital signs were assessed. Pain medication was given at that time. There was no documentation that the resident was reassessed until nursing notes dated 06/11/10 at 11:30 P.M., which identified the resident complained of abdominal pain. The resident's abdomen was distended, hard, firm, red, and warm to touch. His abdomen appeared three time larger than normal. The resident stated he could not eat due to pain and cramping. Pain medications were given but were not effective. The physician was notified at 11:30 P.M. and ordered the resident sent to the emergency room. The ambulance was called, arrived at 12:05 A.M., and the resident admitted to the hospital.

During an interview on 6/22/10 at 1:00 PM, LPN #55 verified the resident was not reassessed in a timely manner.

2. Review of the clinical record diagnosis report for Resident #46 revealed diagnoses of dementia, obstructive hydrocephalus, constipation, depression, anxiety, asthma, atrial fibrillation, blurred vision, and malnutrition. She was admitted on 02/16/08 and resided on the secured

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING _____ B. WING _____ | | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 272 | Continued From page 13 | F 272 | | |

unit. She had recently been hospitalized 05/05/10 through 05/10/10 for surgery to place a colostomy and a gastric feeding tube. Review of the ADL (activity of daily living) worksheet, completed by the Nurse Aids, for the month of March and April revealed that she had an irregular bowel movement pattern. In March 2010 and April 2010 she had no bowel movement documented for four days from a medium size BM on 03/02/10 until a small size BM on 03/07/10. No bowel movement was documented again from 03/14/10 through 03/16/10, 03/20/10 through 03/22/10, 03/28/10 through 04/01/10, 04/03/10 through 04/06/10, 04/10/10 through 04/14/10, 04/16/10 through 04/10/10 04/22/10 through 04/25/10 and 04/27/10 through 04/30/10. Review of the physician orders revealed no bowel medications (laxatives) were ordered routinely. Review of the as needed medication orders revealed an order for milk of magnesia suspension 30 milliliters by mouth as needed. Review of the medication administration records revealed that she received no milk of magnesia during the months of March or April.

Review of the nurses notes for the months of March and April 2010 revealed no information related to constipation. The record was silent to any indication that Resident #46 had irregular bowel movements. There was no entry to indicate assessment of her abdomen or analysis of bowel movement pattern.

Interview of the attending physician of Resident #46 on 06/22/10 at 2:30 P.M. revealed that he had only been her attending physician for about one week. He stated that he was aware of her issues with constipation because he had reviewed the record as she had history of bowel impaction. He stated he expected nurses to

CMS-2567(02-99) Previous Versions Obsolete   Event ID: 5QBT11   Facility ID: OH00448   If continuation sheet Page 14 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 272 | Continued From page 14<br><br>monitor and assess bowel movements.<br><br>Interview of Registered Nurse Consultant #72 on 06/22/10 at 3:15 P.M. revealed that the facility had no written bowel protocol or policy. She stated bowel movements were recorded daily by nurse aids and tracked by the nurses. She stated that any abdominal or bowel assessment performed would be one documented in the nurses notes.<br><br>During further interview of Registered Nurse #72 on 06/23/10 at 10:30 A.M. she verified that no assessment of Resident #46's bowel function or pattern of constipation had been documented in the nurses notes in March or April 2010. | F 272 | | |
| F 309 SS=E | 483.25 PROVIDE CARE/SERVICES FOR HIGHEST WELL BEING<br><br>Each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care.<br><br>This REQUIREMENT is not met as evidenced by:<br>Based on review of the clinical record, staff interview and physician interview, the facility failed to ensure residents received timely bowel management, antibiotic therapy and emergency services. This affected three (Residents #46, #23 and #26) of 11 sampled residents.<br><br>Findings include: | F 309 | F309 Provide Care/Services for Highest Well Being<br>The facility will continue to ensure residents receive timely bowel movements, antibiotic therapy and emergency treatment.<br><br>Residents # 46 and # 26 received a though abdominal assessment and clinical record has been updated to reflect the same. Resident # 46 and # 26 suffered no ill effects from a lack of bowel movements every three days. These said residents continue to receive medications to manage bowel function. | 8/3/10 |

06/28/2011  16:18  937-653-6817          HEARTLAND/URBANA                    PAGE  34/41

DEPARTMENT OF HEALTH AND HUMAN SERVICES                                    PRINTED: 07/07/2010
CENTERS FOR MEDICARE & MEDICAID SERVICES                                    FORM APPROVED
                                                                           OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 365365 | A. BUILDING _____ <br> B. WING _____ | 06/24/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET <br> URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 309 | Continued From page 15 <br><br> 1. Review of the clinical record diagnosis report for Resident #46 revealed diagnoses of dementia, obstructive hydrocephalus, constipation, depression, anxiety, asthma, atrial fibrillation, blurred vision, and malnutrition. She was hospitalized 05/05/10 through 05/10/10 for surgery (colostomy and gastric feeding tube). Review of the ADL (activity of daily living) worksheet completed by Nurse Aids for the month of March and April 2010 revealed the resident had a medium bowel movement (BM) on 03/02/10 and no BM until a small BM on 03/07/10 (five days). No bowel movement was documented again from 03/28/10 through 04/01/10 (four days), 04/03/10 through 04/06/10 (three days), 04/10/10 through 04/14/10 (four days), 04/16/10 through 04/10/10 (four days), 04/22/10 through 04/25/10 (three days) and 04/27/10 through 04/30/10 (three days). Review of the physician orders revealed no routine medications for constipation and an order for milk of magnesia suspension 30 milliliters by mouth as needed for constipation. Review of the medication administration records revealed that the resident received no milk of magnesia during the months of March or April. <br><br> Review of nurses notes for the months of March and April 2010 revealed no information related to constipation, including assessment and analysis of bowel movement patterns. The record did not include physician notification regarding lack of bowel movements. <br><br> Interview of the attending physician of Resident #46 on 06/22/10 at 2:30 P.M. revealed the resident had a history of bowel impaction. He stated he expected nurses to monitor bowel movements and notify physicians if no bowel | F 309 | Resident # 23 suffered no ill effects from receiving ordered medications on dates received. <br><br> Facility audit of orders for laboratory services will be completed on or before 8/3/2010 by the ADNS/Designee. <br><br> Like Resident received a though abdominal assessment and their clinical record has been updated to reflect the same. Physician was notified for bowel management measures if indicated by the ADNS/Designee. <br><br> Nursing Staff will be inserviced on proper abdominal assessing, documentation guidelines for recording of bowel movements, proper notification to the Physician for condition change, and timely obtaining/treating of laboratory orders by the ADNS and or designee on or before 8/3/2010. <br><br> Abdominal Assessment/Notification Audit will be completed three times a week for 4 weeks by the ADNS/Designee. | |

CMS-2567(02-99) Previous Versions Obsolete        Event ID: 5OBT11        Facility ID: OH00448        If continuation sheet Page 16 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING ___ B. WING ___ | | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 309 | Continued From page 16<br><br>movements were noted for several days.<br><br>Interview of Registered Nurse Consultant #72 on 06/22/10 at 3:15 P.M. revealed the facility had no written bowel protocol or policy. She stated that there was no standing orders for treatment of constipation. She stated that the medical directors preference was to notify the attending physicians individually if a resident had no bowel movement for three days and the physician could address each instance individually. She stated that the bowel movements were recorded daily by the nurse aids and tracked by the nurses. She stated that any abdominal or bowel assessment performed would be documented in the nurses notes. Further interview of Registered Nurse #72 on 06/23/10 at 10:30 A.M. revealed no assessment off Resident #46's bowel function or pattern of constipation was documented in the nurses notes in March or April 2010, no laxative was administered during that time and the nurses notes were silent to notification of the physician of the lack of bowel movements.<br><br>2. Review of the June 2010 physician order sheet revealed Resident #26 had diagnoses which included diabetes, muscular dystrophy, osteomyelitis and chronic kidney disease. The minimum data set (MDS) assessment dated 05/13/10 revealed the resident had no short or long term memory impairment, had difficulty with decisions in new situations, required extensive to total care for activities of daily living, had a suprapubic urinary drainage catheter and pressure ulcers. Nursing notes dated 06/11/10 at 5:00 A.M. stated Resident #26 complained of abdominal pain. His abdomen was distended. Bowel sounds were present in all four quadrants. There was no documentation that vital signs were | F 309 | The quality assessment and assurance (QAA) committee will validate the actions taken are effectively resolving the cited issues and verify the dates of completion. | |

MS-2567(02-99) Previous Versions Obsolete        Event ID: 5DBT11        Facility ID: OH00448        If continuation sheet Page 17 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING _____ | B. WING _____ | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH  43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 309 | Continued From page 17 | F 309 | | |
| | assessed. Pain medication was given at that time. There was no documentation that the resident was reassessed until nursing notes dated 06/11/10 at 11:30 P.M., which identified the resident complained of abdominal pain. The resident's abdomen was distended, hard, firm, red, and warm to touch. His abdomen appeared three time larger than normal. The resident stated he could not eat due to pain and cramping. Pain medications were given but were not effective. The physician was notified at 11:30 P.M. and ordered the resident sent to the emergency room. The ambulance was called, arrived at 12:05 A.M., and the resident admitted to the hospital. | | | |
| | During an interview on 6/22/10 at 1:00 PM, LPN #55 verified the resident was not reassessed in a timely manner and emergency care was delayed. | | | |
| | 3.  Review of physician orders for May 2010 revealed Resident #23 had diagnoses including Alzheimer's dementia and chronic lymphocytic leukemia. Review of nursing notes dated 05/02/10 at 7:45 PM revealed the physician ordered a culture of the resident's right eye due to increased drainage. Laboratory results revealed the specimen was obtained on 05/08/10 at 10:30 A.M., results were returned to the facility on 05/11/10 and Resident #23 was not started on antibiotic eye medication until 05/20/10. This was confirmed by LPN #55 on 06/22/10 at 1:00 PM. | | | |
| | During interview on 06/22/10 at 2:30 P.M., the Medical Director (MD) stated, unless specified otherwise, laboratory specimens should be obtained within one day of the physician order. The MD affirmed antibiotic therapy was delayed. | | | |
| 329 | 483.25(l) DRUG REGIMEN IS FREE FROM | F 329 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

EARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 329 SS=D | Continued From page 18 UNNECESSARY DRUGS | F 329 | F 329 Drug Regimen is free from Unnecessary Drugs | 8/3/10 |

F 329
SS=D

Continued From page 18
UNNECESSARY DRUGS

Each resident's drug regimen must be free from unnecessary drugs. An unnecessary drug is any drug when used in excessive dose (including duplicate therapy); or for excessive duration; or without adequate monitoring; or without adequate indications for its use; or in the presence of adverse consequences which indicate the dose should be reduced or discontinued; or any combinations of the reasons above.

Based on a comprehensive assessment of a resident, the facility must ensure that residents who have not used antipsychotic drugs are not given these drugs unless antipsychotic drug therapy is necessary to treat a specific condition as diagnosed and documented in the clinical record; and residents who use antipsychotic drugs receive gradual dose reductions, and behavioral interventions, unless clinically contraindicated, in an effort to discontinue these drugs.

This REQUIREMENT is not met as evidenced by:
Based on clinical record review, staff interviews and review of facility policy, the facility failed to document adequate indication of use for an as needed narcotic anti-anxiety medication and failed to document non-pharmacological interventions prior to administering an as needed narcotic pain medication. This affected two (Residents #1 and #10) of 11 sampled residents.

F 329

F 329 Drug Regimen is free from Unnecessary Drugs
The facility will continue to document adequate indication for use of PRN ant anxiety medications and non-pharmacological interventions prior to the administration of PRN pain medication

Resident #1 and # 10 suffered no ill-effects from receiving physician ordered medications.
Residents receiving PRN medications have been reviewed for appropriate documentation of indication for use of PRN medications as well as non-pharmacological interventions to be provided prior to administration of PRN medications by the ADNS/designee.

Nurses will be inserviced on proper documentation of indications of use and non-pharmacological interventions prior to the administration of PRN medications by the ADNS or designee on or before 8/3/2010

CMS-2567(02-99) Previous Versions Obsolete          Event ID: 5OBT11          Facility ID: OH00448          If continuation sheet Page 19 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH  43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 329 | Continued From page 19<br><br>Findings include:<br><br>1. Review of the Admission Record for Resident #1 revealed an admission date of 01/18/06. Review of the Diagnosis Report revealed diagnosis which included chronic obstructive pulmonary disorder, anxiety, diabetes, dementia, schizophrenia, psychosis, elevated blood pressure, congestive heart failure, depression and obesity.  Review of the Minimum Data Set (MDS) assessment dated 04/22/10 revealed Resident #1 had difficulty remembering short and long term memories and was moderately cognitively impaired.<br><br>Review of the Plan of Care regarding pain for Resident #1 dated 03/25/10 stated non-pharmacological interventions for pain included:  redirect with television; reposition; offer comfort foods prior to administering the pain medication.  Review of Plan of Care regarding anti-anxiety medication state to monitor mood, assure basic needs are met, offer to decrease environmental stimulus by offering to close blinds, and offer soft music are to be tried prior to administering the anti-anxiety medication.<br><br>Review of the Medication Administration Record (MAR) for June, 2010 revealed an order for .25 milligrams (mg) of Alprazolam (Xanax - anti-anxiety medication) as needed (prn) every eight hours.  Further review of the MAR revealed the medication had been administered 18 times in June.  Continued review of the MAR revealed no documentation as to why the medication had been administered on these dates.  Review of the nurse's notes during this period revealed no documentation as to why the medication had been administered or what behaviors the resident | F 329 | Psychotropic Medication Audit will be completed 3 time's per week for 4 weeks by the ADNS/designee.,<br><br>The quality assessment and assurance (QAA) committee will validate the actions taken are effectively resolving the cited issues and verify the dates of completion | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING ___ B. WING ___ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 329 | Continued From page 20 was exhibiting.<br><br>Continued review of the MAR for June, 2010 revealed an order dated 01/18/10 for hydrocodone/APAP 5-500 (Vicodin - narcotic analgesic) every six hours prn for moderate to severe pain. Review of the MAR revealed the medication was administered 11 times June with no documentation as to what non-pharmacological interventions had been tried prior to administering the medication.<br><br>2. Review of the Admission Record for Resident #10 revealed an admission date of 01/03/09. Review of the Diagnosis Record revealed diagnosis which included dementia with delusions, hearing loss, brain cancer, epilepsy, and history of craniotomy. Review of the MDS dated 04/12/10 revealed Resident #10 had difficulty remembering short term memories and was moderately cognitively impaired.<br><br>Review of the Plan of Care regarding pain for Resident #10 dated 04/12/10 stated non-pharmacological interventions of activities, reposition, and comfort foods are to be tried prior to administering the pain medication. Review of the Plan of Care regarding anti-anxiety medications states monitor mood, assure basic needs are med, and encourage resident to go to activities prior to administering the anti-anxiety medication.<br><br>Review of the Medication Administration Record (MAR) dated June, 2010 revealed an order dated 01/05/10 for .5 milligrams (mg.) of Lorazepam (Ativan - anti-anxiety medication) prn every six hours. Further review of the MAR revealed the medication was administered nine times in June. | F 329 | | |

MS-2567(02-99) Previous Versions Obsolete        Event ID: 5OBT11        Facility ID: OH00448        If continuation sheet Page 21 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 329 | Continued From page 21 | F 329 | | |
| | Continued review of the MAR revealed no documentation as to why the medication had been administered on these dates. Review of the nurse's notes during this period revealed no documentation as to why the medication had been administered or what behaviors the resident was exhibiting. Review of the MAR revealed the Vicodin was administered 15 times in June with no documentation as to what non-pharmacological interventions had been tried prior to administering the medication. | | | |
| | In an interview on 06/22/10 at 1:40 P.M., Registered Nurse (R.N.) #85 stated the nurses were to document every time why any prn medications were administered, including what behaviors the resident demonstrated and what non-pharmacological interventions were tried prior to administering the medication. RN #65 further verified there was no documentation of any behaviors or non-pharmacological interventions tried prior to administering the above medications for both of these residents. Review of the facility policy regarding medication administration dated 03/2010 revealed Suggested Documentation included unusual observations or complaints and subsequent interventions. | | | |
| F 502 S=D | 483.75(j)(1) PROVIDE/OBTAIN LABORATORY SVC-QUALITY/TIMELY | F 502 | F 502 Provide/Obtain Laboratory Services-Quality/Timely The facility will continue to obtain laboratory orders in a timely manner as per facility guidelines. | 8/3/10 |
| | The facility must provide or obtain laboratory services to meet the needs of its residents. The facility is responsible for the quality and timeliness of the services. | | | |
| | This REQUIREMENT is not met as evidenced by: Based on record review, staff interview and | | Resident # 23 laboratory culture was obtained and this said resident received Physician ordered treatment | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 502 | Continued From page 22<br><br>physician interview, the facility failed to timely obtain laboratory services for Resident #23.<br><br>Findings included;<br><br>Review of physician orders for May 2010 revealed Resident #23 had diagnoses including Alzheimer's dementia and chronic lymphocytic leukemia. Review of nursing notes dated 05/02/10 at 7:45 PM revealed the physician ordered a culture of the resident's right eye due to increased drainage. Laboratory results revealed the specimen was obtained on 05/08/10 at 10:30 A.M., results were returned to the facility on 05/11/10 and Resident #23 was not started on antibiotic eye medication until 05/20/10. This was confirmed by LPN #55 on 06/22/10 at 1:00 PM.<br><br>During interview on 06/22/10 at 2:30 P.M., the Medical Director stated, unless specified otherwise, laboratory specimens should be obtained within one day of the physician order. | F 502 | The facility will conduct an audit of orders for laboratory services to ensure quality / timely laboratory services and treatment on or before 8/3/2010 by the ADNS/Designee<br><br>Nursing Staff will be inserviced on obtaining timely laboratory services, notification to the Physician and timely treatment by the ADNS and or designee on or before 8/3/2010.<br><br>Lab Audit Tool will be completed three times a week x 1 month by the ADNS/Designee.<br><br>The quality assessment and assurance (QAA) will validate the actions taken are effectively resolving the cited issues and verify the dates of completion. | |

CMS-2567(02-99) Previous Versions Obsolete          Event ID:5OBT11          Facility ID: OH00448          If continuation sheet Page 23 of 23

(130th General Assembly)
(Substitute House Bill Number 290)

# AN ACT

To amend sections 2305.113, 2901.12, 3313.75, 3313.76,
3313.77, 3313.78, 3721.02, and 5165.67 and to enact
sections 1901.028, 1907.04, 2301.04, 2501.20, and
3313.791 of the Revised Code regarding the use of school
district premises by members of the public and immunity
from civil liability for a school district and schools when
permitting members of the public to use school premises,
regarding the use of results of an inspection of a nursing
home or the results of a Medicare or Medicaid survey of a
nursing facility in an advertisement, regarding the
continued orderly operation of the courts in case of a
disaster, civil disorder, or other extraordinary
circumstance, and regarding the limitation of claims
arising out of skilled nursing care or personal care
services provided in a home.

*Be it enacted by the General Assembly of the State of Ohio:*

SECTION 1. That sections 2305.113, 2901.12, 3313.75, 3313.76,
3313.77, 3313.78, 3721.02, and 5165.67 be amended and sections 1901.028,
1907.04, 2301.04, 2501.20, and 3313.791 of the Revised Code be enacted to
read as follows:

Sec. 1901.028. (A) In the event of a natural or man-made disaster, civil
disorder, or any extraordinary circumstance that interrupts or threatens to
interrupt the orderly operation of a municipal court within the territorial
jurisdiction of the court, the administrative judge of the court may issue an
order authorizing the court to operate at a temporary location inside or
outside the territorial jurisdiction of the court. The order shall identify the
temporary location at which the court shall operate and the date on which
operations shall commence at the temporary location. The court shall
operate at the temporary location until the administrative judge withdraws,

Sub. H. B. No. 290

2

130th G.A.

cancels, or rescinds the order.

(B) The authority of an administrative judge of a municipal court to issue an order authorizing the court to operate at a temporary location pursuant to division (A) of this section is independent of and shall not be conditioned upon a declaration of a judicial emergency issued by the chief justice of the supreme court pursuant to Rule 14 of the Rules of Superintendence for the Courts of Ohio.

(C) For the period during which a municipal court operates in a temporary location pursuant to division (A) of this section, the court shall continue to have the territorial jurisdiction set forth in section 1901.02 of the Revised Code and the court shall have jurisdiction to hear actions and conduct proceedings the same as if the court were operating within that territorial jurisdiction.

(D) As soon as practicable following issuance of an order pursuant to division (A) of this section, both of the following shall occur:

(1) The administrative judge of the municipal court shall provide notice and a copy of the order by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the court operates and maintains a web site, the web site shall provide notification of the operation of the court at the temporary location, including the site of the temporary location and the date on which operations shall commence at the temporary location.

(E) As soon as practicable following the withdrawal, cancellation, or rescission of an order issued pursuant to division (A) of this section, each of the following shall occur:

(1) The administrative judge of the municipal court shall provide notice by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the court operates and maintains a web site, the web site shall provide notification of the operation of the court at the permanent location

of the court, including the site of the permanent location and the date on which operations shall commence at the permanent location.

Sec. 1907.04. (A) In the event of a natural or man-made disaster, civil disorder, or any extraordinary circumstance that interrupts or threatens to interrupt the orderly operation of a county court within the territorial jurisdiction of the court, the administrative judge of the court may issue an order authorizing the court to operate at a temporary location inside or outside the territorial jurisdiction of the court. The order shall identify the temporary location at which the court shall operate and the date on which operations shall commence at the temporary location. The court shall operate at the temporary location until the administrative judge withdraws, cancels, or rescinds the order.

(B) The authority of an administrative judge of a county court to issue an order authorizing the court to operate at a temporary location pursuant to division (A) of this section is independent of and shall not be conditioned upon a declaration of a judicial emergency issued by the chief justice of the supreme court pursuant to Rule 14 of the Rules of Superintendence for the Courts of Ohio.

(C) For the period during which a county court operates in a temporary location pursuant to division (A) of this section, the court shall continue to have the territorial jurisdiction set forth in section 1907.01 of the Revised Code and the court shall have jurisdiction to hear actions and conduct proceedings the same as if the court were operating within that territorial jurisdiction.

(D) As soon as practicable following issuance of an order pursuant to division (A) of this section, both of the following shall occur:

(1) The administrative judge of the county court shall provide notice and a copy of the order by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the court operates and maintains a web site, the web site shall provide notification of the operation of the court at the temporary location, including the site of the temporary location and the date on which operations shall commence at the temporary location.

(E) As soon as practicable following the withdrawal, cancellation, or rescission of an order issued pursuant to division (A) of this section, each of

Sub. H. B. No. 290

4

130th G.A.

the following shall occur:

(1) The administrative judge of the county court shall provide notice by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the court operates and maintains a web site, the web site shall provide notification of the operation of the court at the permanent location of the court, including the site of the permanent location and the date on which operations shall commence at the permanent location.

Sec. 2301.04. (A) In the event of a natural or man-made disaster, civil disorder, or any extraordinary circumstance that interrupts or threatens to interrupt the orderly operation of a division of a court of common pleas within the territorial jurisdiction of the division, the administrative judge of the division may issue an order authorizing the division to operate at a temporary location inside or outside the territorial jurisdiction of the division. The order shall identify the temporary location at which the division shall operate and the date on which operations shall commence at the temporary location. The division shall operate at the temporary location until the administrative judge withdraws, cancels, or rescinds the order.

(B) The authority of an administrative judge of a division of a court of common pleas to issue an order authorizing the division to operate at a temporary location pursuant to division (A) of this section is independent of and shall not be conditioned upon a declaration of a judicial emergency issued by the chief justice of the supreme court pursuant to Rule 14 of the Rules of Superintendence for the Courts of Ohio.

(C) For the period during which a division of a court of common pleas operates in a temporary location pursuant to division (A) of this section, the division shall continue to have the territorial jurisdiction set forth in section 2301.01 of the Revised Code and the court shall have jurisdiction to hear actions and conduct proceedings the same as if the division were operating within that territorial jurisdiction.

(D) As soon as practicable following issuance of an order pursuant to division (A) of this section, both of the following shall occur:

(1) The administrative judge of the division of the court of common pleas shall provide notice and a copy of the order by regular or electronic mail to all of the following:

Sub. H. B. No. 290

5

130th G.A.

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the division operates and maintains a web site, the web site shall provide notification of the operation of the division at the temporary location, including the site of the temporary location and the date on which operations shall commence at the temporary location.

(E) As soon as practicable following the withdrawal, cancellation, or rescission of an order issued pursuant to division (A) of this section, each of the following shall occur:

(1) The administrative judge of the division of the court of common pleas shall provide notice by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the division operates and maintains a web site, the web site shall provide notification of the operation of the division at the permanent location of the division, including the site of the permanent location and the date on which operations shall commence at the permanent location.

Sec. 2305.113. (A) Except as otherwise provided in this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued.

(B)(1) If prior to the expiration of the one-year period specified in division (A) of this section, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.

(2) An insurance company shall not consider the existence or nonexistence of a written notice described in division (B)(1) of this section in setting the liability insurance premium rates that the company may charge the company's insured person who is notified by that written notice.

Sub. H. B. No. 290

6

130th G.A.

(C) Except as to persons within the age of minority or of unsound mind as provided by section 2305.16 of the Revised Code, and except as provided in division (D) of this section, both of the following apply:

(1) No action upon a medical, dental, optometric, or chiropractic claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim.

(2) If an action upon a medical, dental, optometric, or chiropractic claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim, then, any action upon that claim is barred.

(D)(1) If a person making a medical claim, dental claim, optometric claim, or chiropractic claim, in the exercise of reasonable care and diligence, could not have discovered the injury resulting from the act or omission constituting the alleged basis of the claim within three years after the occurrence of the act or omission, but, in the exercise of reasonable care and diligence, discovers the injury resulting from that act or omission before the expiration of the four-year period specified in division (C)(1) of this section, the person may commence an action upon the claim not later than one year after the person discovers the injury resulting from that act or omission.

(2) If the alleged basis of a medical claim, dental claim, optometric claim, or chiropractic claim is the occurrence of an act or omission that involves a foreign object that is left in the body of the person making the claim, the person may commence an action upon the claim not later than one year after the person discovered the foreign object or not later than one year after the person, with reasonable care and diligence, should have discovered the foreign object.

(3) A person who commences an action upon a medical claim, dental claim, optometric claim, or chiropractic claim under the circumstances described in division (D)(1) or (2) of this section has the affirmative burden of proving, by clear and convincing evidence, that the person, with reasonable care and diligence, could not have discovered the injury resulting from the act or omission constituting the alleged basis of the claim within the three-year period described in division (D)(1) of this section or within the one-year period described in division (D)(2) of this section, whichever is applicable.

(E) As used in this section:

(1) "Hospital" includes any person, corporation, association, board, or authority that is responsible for the operation of any hospital licensed or registered in the state, including, but not limited to, those that are owned or

operated by the state, political subdivisions, any person, any corporation, or any combination of the state, political subdivisions, persons, and corporations. "Hospital" also includes any person, corporation, association, board, entity, or authority that is responsible for the operation of any clinic that employs a full-time staff of physicians practicing in more than one recognized medical specialty and rendering advice, diagnosis, care, and treatment to individuals. "Hospital" does not include any hospital operated by the government of the United States or any of its branches.

(2) "Physician" means a person who is licensed to practice medicine and surgery or osteopathic medicine and surgery by the state medical board or a person who otherwise is authorized to practice medicine and surgery or osteopathic medicine and surgery in this state.

(3) "Medical claim" means any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:

(a) Derivative claims for relief that arise from the plan of care, medical diagnosis, care, or treatment of a person;

(b) Claims that arise out of the plan of care, medical diagnosis, care, or treatment of any person and to which either of the following applies:

(i) The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

(c) Claims that arise out of the plan of care, medical diagnosis, care, or treatment of any person and that are brought under section 3721.17 of the Revised Code;

(d) Claims that arise out of skilled nursing care or personal care services provided in a home pursuant to the plan of care, medical diagnosis, or treatment.

(4) "Podiatrist" means any person who is licensed to practice podiatric medicine and surgery by the state medical board.

(5) "Dentist" means any person who is licensed to practice dentistry by the state dental board.

(6) "Dental claim" means any claim that is asserted in any civil action against a dentist, or against any employee or agent of a dentist, and that

arises out of a dental operation or the dental diagnosis, care, or treatment of any person. "Dental claim" includes derivative claims for relief that arise from a dental operation or the dental diagnosis, care, or treatment of a person.

(7) "Derivative claims for relief" include, but are not limited to, claims of a parent, guardian, custodian, or spouse of an individual who was the subject of any medical diagnosis, care, or treatment, dental diagnosis, care, or treatment, dental operation, optometric diagnosis, care, or treatment, or chiropractic diagnosis, care, or treatment, that arise from that diagnosis, care, treatment, or operation, and that seek the recovery of damages for any of the following:

(a) Loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, or any other intangible loss that was sustained by the parent, guardian, custodian, or spouse;

(b) Expenditures of the parent, guardian, custodian, or spouse for medical, dental, optometric, or chiropractic care or treatment, for rehabilitation services, or for other care, treatment, services, products, or accommodations provided to the individual who was the subject of the medical diagnosis, care, or treatment, the dental diagnosis, care, or treatment, the dental operation, the optometric diagnosis, care, or treatment, or the chiropractic diagnosis, care, or treatment.

(8) "Registered nurse" means any person who is licensed to practice nursing as a registered nurse by the board of nursing.

(9) "Chiropractic claim" means any claim that is asserted in any civil action against a chiropractor, or against any employee or agent of a chiropractor, and that arises out of the chiropractic diagnosis, care, or treatment of any person. "Chiropractic claim" includes derivative claims for relief that arise from the chiropractic diagnosis, care, or treatment of a person.

(10) "Chiropractor" means any person who is licensed to practice chiropractic by the state chiropractic board.

(11) "Optometric claim" means any claim that is asserted in any civil action against an optometrist, or against any employee or agent of an optometrist, and that arises out of the optometric diagnosis, care, or treatment of any person. "Optometric claim" includes derivative claims for relief that arise from the optometric diagnosis, care, or treatment of a person.

(12) "Optometrist" means any person licensed to practice optometry by the state board of optometry.

(13) "Physical therapist" means any person who is licensed to practice

physical therapy under Chapter 4755. of the Revised Code.

(14) "Home" has the same meaning as in section 3721.10 of the Revised Code.

(15) "Residential facility" means a facility licensed under section 5123.19 of the Revised Code.

(16) "Advanced practice registered nurse" means any certified nurse practitioner, clinical nurse specialist, certified registered nurse anesthetist, or certified nurse-midwife who holds a certificate of authority issued by the board of nursing under Chapter 4723. of the Revised Code.

(17) "Licensed practical nurse" means any person who is licensed to practice nursing as a licensed practical nurse by the board of nursing pursuant to Chapter 4723. of the Revised Code.

(18) "Physician assistant" means any person who holds a valid certificate to practice issued pursuant to Chapter 4730. of the Revised Code.

(19) "Emergency medical technician-basic," "emergency medical technician-intermediate," and "emergency medical technician-paramedic" means any person who is certified under Chapter 4765. of the Revised Code as an emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, whichever is applicable.

(20) "Skilled nursing care" and "personal care services" have the same meanings as in section 3721.01 of the Revised Code.

Sec. 2501.20. (A) In the event of a natural or man-made disaster, civil disorder, or any extraordinary circumstance that interrupts or threatens to interrupt the orderly operation of a court of appeals within the territorial jurisdiction of the court, the administrative judge of the court may issue an order authorizing the court to operate at a temporary location inside or outside the territorial jurisdiction of the court. The order shall identify the temporary location at which the court shall operate and the date on which operations shall commence at the temporary location. The court shall operate at the temporary location until the administrative judge withdraws, cancels, or rescinds the order.

(B) The authority of an administrative judge of a court of appeals to issue an order authorizing the court to operate at a temporary location pursuant to division (A) of this section is independent of and shall not be conditioned upon a declaration of a judicial emergency issued by the chief justice of the supreme court pursuant to Rule 14 of the Rules of Superintendence for the Courts of Ohio.

(C) For the period during which a court of appeals operates in a temporary location pursuant to division (A) of this section, the court shall

Sub. H. B. No. 290

10

130th G.A.

continue to have the territorial jurisdiction set forth in section 2501.01 of the Revised Code and the court shall have jurisdiction to hear actions and conduct proceedings the same as if the court were operating within that territorial jurisdiction.

(D) As soon as practicable following issuance of an order pursuant to division (A) of this section, both of the following shall occur:

(1) The administrative judge of the court of appeals shall provide notice and a copy of the order by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the court operates and maintains a web site, the web site shall provide notification of the operation of the court at the temporary location, including the site of the temporary location and the date on which operations shall commence at the temporary location.

(E) As soon as practicable following the withdrawal, cancellation, or rescission of an order issued pursuant to division (A) of this section, each of the following shall occur:

(1) The administrative judge of the court of appeals shall provide notice by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the court operates and maintains a web site, the web site shall provide notification of the operation of the court at the permanent location of the court, including the site of the permanent location and the date on which operations shall commence at the permanent location.

Sec. 2901.12. (A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and, except in cases of emergency under section 1901.028, 1907.04, 2301.04, or 2501.20 of the Revised Code, in the territory of which the offense or any element of the offense was committed.

(B) When the offense or any element of the offense was committed in an aircraft, motor vehicle, train, watercraft, or other vehicle, in transit, and it

Sub. H. B. No. 290                                          130th G.A.

11

cannot reasonably be determined in which jurisdiction the offense was committed, the offender may be tried in any jurisdiction through which the aircraft, motor vehicle, train, watercraft, or other vehicle passed.

(C) When the offense involved the unlawful taking or receiving of property or the unlawful taking or enticing of another, the offender may be tried in any jurisdiction from which or into which the property or victim was taken, received, or enticed.

(D) When the offense is conspiracy, attempt, or complicity cognizable under division (A)(2) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the conspiracy, attempt, complicity, or any of its elements occurred. If an offense resulted outside this state from the conspiracy, attempt, or complicity, that resulting offense also may be tried in any jurisdiction in which the conspiracy, attempt, complicity, or any of the elements of the conspiracy, attempt, or complicity occurred.

(E) When the offense is conspiracy or attempt cognizable under division (A)(3) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the offense that was the object of the conspiracy or attempt, or any element of that offense, was intended to or could have taken place. When the offense is complicity cognizable under division (A)(3) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the principal offender may be tried.

(F) When an offense is considered to have been committed in this state while the offender was out of this state, and the jurisdiction in this state in which the offense or any material element of the offense was committed is not reasonably ascertainable, the offender may be tried in any jurisdiction in which the offense or element reasonably could have been committed.

(G) When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions.

(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

(1) The offenses involved the same victim, or victims of the same type or from the same group.

Sub. H. B. No. 290                                             130th G.A.

12

(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

(4) The offenses were committed in furtherance of the same conspiracy.

(5) The offenses involved the same or a similar modus operandi.

(6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

(I)(1) When the offense involves a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, the offender may be tried in any jurisdiction containing any location of the computer, computer system, or computer network of the victim of the offense, in any jurisdiction from which or into which, as part of the offense, any writing, data, or image is disseminated or transmitted by means of a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, or in any jurisdiction in which the alleged offender commits any activity that is an essential part of the offense.

(2) As used in this section, "computer," "computer system," "computer network," "information service," "telecommunication," "telecommunications device," "telecommunications service," "data," and "writing" have the same meanings as in section 2913.01 of the Revised Code.

(J) When the offense involves the death of a person, and it cannot reasonably be determined in which jurisdiction the offense was committed, the offender may be tried in the jurisdiction in which the dead person's body or any part of the dead person's body was found.

(K) Notwithstanding any other requirement for the place of trial, venue may be changed, upon motion of the prosecution, the defense, or the court, to any court having jurisdiction of the subject matter outside the county in which trial otherwise would be held, when it appears that a fair and impartial trial cannot be held in the jurisdiction in which trial otherwise would be held, or when it appears that trial should be held in another jurisdiction for the convenience of the parties and in the interests of justice.

Sec. 3313.75. (A) For purposes of this section, "school premises" has the same meaning as in section 3313.77 of the Revised Code.

(B) The board of education of a city, exempted village, or local school district may authorize the opening of ~~schoolhouses~~ school premises for any lawful purposes.

(B)(C) In accordance with this section and section 3313.77 of the

Sub. H. B. No. 290                                                     130th G.A.

13

Revised Code, a district board may rent or lease ~~facilities~~ <u>school premises</u> under its control to any public or nonpublic institution of higher education for the institution's use in providing evening and summer classes.

~~(C)~~<u>(D)</u> This section does not authorize a board to rent or lease ~~a schoolhouse~~ <u>school premises</u> when such rental or lease interferes with the public schools in such district, or for any purpose other than is authorized by law.

Sec. 3313.76. Upon application of any responsible organization, or of a group of at least seven citizens, ~~all~~ school ~~grounds and schoolhouses~~ <u>premises, as that term is defined in section 3313.77 of the Revised Code</u>, as well as all other buildings under the supervision and control of the state, or buildings maintained by taxation under the laws of this state, shall be available for use as social centers for the entertainment and education of the people, including the adult and youthful population, and for the discussion of all topics tending to the development of personal character and of civil welfare, and for religious exercises. Such occupation should not seriously infringe upon the original and necessary uses of such properties. The public officials in charge of such buildings shall prescribe such rules and regulations for their occupancy and use as will secure a fair, reasonable, and impartial use of the same.

Sec. 3313.77. <u>(A) For purposes of this section:</u>

<u>(1) "General public" means members of the community, including both of the following:</u>

<u>(a) Students during nonschool hours;</u>

<u>(b) Employees of a school or school district when not working in the scope of their employment.</u>

<u>(2) "Nonschool hours" means both of the following:</u>

<u>(a) Any time prior to and after regular classroom instruction on a day that school is in session;</u>

<u>(b) Any day that school is not in session, including weekends, holidays, and vacation breaks.</u>

<u>(3) "Recreational meetings and entertainments" means all indoor or outdoor games or physical activities, either organized or unorganized, that are undertaken for exercise, relaxation, diversion, sport, or pleasure.</u>

<u>(4) "School premises" means all indoor and outdoor structures, facilities, and land owned, rented, or leased by a school or school district.</u>

<u>(B)</u> The board of education of any city, exempted village, or local school district shall, upon request and the payment of a reasonable fee, subject to such regulation as is adopted by such board, permit the use of ~~any~~ school ~~house and rooms therein and the grounds and other property under its~~

Sub. H. B. No. 290　　　　　　　　　　　　　　　　130th G.A.

14

~~control~~ premises, when not in actual use for school purposes, for any of the following purposes:

~~(A)~~(1) Giving instructions in any branch of education, learning, or the arts;

~~(B)~~(2) Holding educational, religious, civic, social, or recreational meetings and entertainments, and for such other purposes as promote the welfare of the community; provided such meetings and entertainments shall be nonexclusive and open to the general public;

~~(C)~~(3) Public library purposes, as a station for a public library, or as reading rooms;

~~(D)~~(4) Polling places, for holding elections and for the registration of voters, or for holding grange or similar meetings.

~~Within sixty days after the effective date of this section, the~~ The board of education of each school district shall adopt a policy for the use of school ~~facilities~~ premises by the general public, including a list of all fees to be paid for the use of such ~~facilities~~ premises and the costs used to determine such fees. Once adopted, the policy shall remain in effect until formally amended by the board. A copy of the policy shall be made available to any resident of the district upon request.

Sec. 3313.78. Upon application of a committee representing any candidate for public office or any regularly organized or recognized political party, the board of education having control of any school ~~grounds~~ premises mentioned in section 3313.76 of the Revised Code, shall permit the same to be used as a place wherein to hold meetings of electors for the discussion of public questions and issues. No such meeting shall be held during regular school hours. No charge shall be made for such use, but the candidate or committee so holding a meeting shall be responsible for any damage done or expense incurred by reason thereof.

Sec. 3313.791. (A) For purposes of this section:

(1) "School" means a school in a city, local, or exempted village school district.

(2) "School district" means a city, local, or exempted village school district.

(3) "School premises" has the same meaning as in section 3313.77 of the Revised Code.

(B) Except as otherwise provided in division (C) of this section, a school or school district, a member of a school district board of education, or a school district or school employee is not liable in damages in a civil action for injury, death, or loss to person or property allegedly arising from the use of school premises under section 3313.75, 3313.76, 3313.77, or

Sub. H. B. No. 290

15

130th G.A.

3313.78 of the Revised Code, unless the injury, death, or loss to person or property results from willful or wanton misconduct by the school or school district, a member of the school district board of education, or an employee of the school district or of any school in the district.

This section does not eliminate, limit, or reduce any other immunity or defense that a school or school district, member of a school district board of education, or school district or school employee may be entitled to under Chapter 2744. or any other provision of the Revised Code or under the common law of this state.

(C) A school or school district, a member of a school district board of education, or a school district or school employee is not immune from liability in damages in a civil action as provided under division (B) of this section if the board of education of the city, exempted village, or local school district charges a fee for the use of school premises that significantly exceeds the costs incurred for the operation of the school premises.

Sec. 3721.02. (A) As used in this section, "residential facility" means a residential facility licensed under section 5119.34 of the Revised Code that provides accommodations, supervision, and personal care services for three to sixteen unrelated adults.

(B)(1) The director of health shall license homes and establish procedures to be followed in inspecting and licensing homes. The director may inspect a home at any time. Each home shall be inspected by the director at least once prior to the issuance of a license and at least once every fifteen months thereafter. The state fire marshal or a township, municipal, or other legally constituted fire department approved by the marshal shall also inspect a home prior to issuance of a license, at least once every fifteen months thereafter, and at any other time requested by the director. A home does not have to be inspected prior to issuance of a license by the director, state fire marshal, or a fire department if ownership of the home is assigned or transferred to a different person and the home was licensed under this chapter immediately prior to the assignment or transfer. The director may enter at any time, for the purposes of investigation, any institution, residence, facility, or other structure that has been reported to the director or that the director has reasonable cause to believe is operating as a nursing home, residential care facility, or home for the aging without a valid license required by section 3721.05 of the Revised Code or, in the case of a county home or district home, is operating despite the revocation of its residential care facility license. The director may delegate the director's authority and duties under this chapter to any division, bureau, agency, or official of the department of health.

(2)(a) If, prior to issuance of a license, a home submits a request for an expedited licensing inspection and the request is submitted in a manner and form approved by the director, the director shall commence an inspection of the home not later than ten business days after receiving the request.

(b) On request, submitted in a manner and form approved by the director, the director may review plans for a building that is to be used as a home for compliance with applicable state and local building and safety codes.

(c) The director may charge a fee for an expedited licensing inspection or a plan review that is adequate to cover the expense of expediting the inspection or reviewing the plans. The fee shall be deposited in the state treasury to the credit of the general operations fund created in section 3701.83 of the Revised Code and used solely for expediting inspections and reviewing plans.

(C) A single facility may be licensed both as a nursing home pursuant to this chapter and as a residential facility pursuant to section 5119.34 of the Revised Code if the director determines that the part or unit to be licensed as a nursing home can be maintained separate and discrete from the part or unit to be licensed as a residential facility.

(D) In determining the number of residents in a home for the purpose of licensing, the director shall consider all the individuals for whom the home provides accommodations as one group unless one of the following is the case:

(1) The home is a home for the aging, in which case all the individuals in the part or unit licensed as a nursing home shall be considered as one group, and all the individuals in the part or unit licensed as a rest home shall be considered as another group.

(2) The home is both a nursing home and a residential facility. In that case, all the individuals in the part or unit licensed as a nursing home shall be considered as one group, and all the individuals in the part or unit licensed as an adult care facility shall be considered as another group.

(3) The home maintains, in addition to a nursing home or residential care facility, a separate and discrete part or unit that provides accommodations to individuals who do not require or receive skilled nursing care and do not receive personal care services from the home, in which case the individuals in the separate and discrete part or unit shall not be considered in determining the number of residents in the home if the separate and discrete part or unit is in compliance with the Ohio basic building code established by the board of building standards under Chapters 3781. and 3791. of the Revised Code and the home permits the director, on

17

request, to inspect the separate and discrete part or unit and speak with the individuals residing there, if they consent, to determine whether the separate and discrete part or unit meets the requirements of this division.

(E)(1) The director of health shall charge the following application fee and annual renewal licensing and inspection fee for each fifty persons or part thereof of a home's licensed capacity:

(a) For state fiscal year 2010, two hundred twenty dollars;

(b) For state fiscal year 2011, two hundred seventy dollars;

(c) For each state fiscal year thereafter, three hundred twenty dollars.

(2) All fees collected by the director for the issuance or renewal of licenses shall be deposited into the state treasury to the credit of the general operations fund created in section 3701.83 of the Revised Code for use only in administering and enforcing this chapter and rules adopted under it.

(F)(1) Except as otherwise provided in this section, the results of an inspection or investigation of a home that is conducted under this section, including any statement of deficiencies and all findings and deficiencies cited in the statement on the basis of the inspection or investigation, shall be used solely to determine the home's compliance with this chapter or another chapter of the Revised Code in any action or proceeding other than an action commenced under division (I) of section 3721.17 of the Revised Code. Those results of an inspection or investigation, that statement of deficiencies, and the findings and deficiencies cited in that statement shall not be used in ~~any~~ either of the following:

(a) Any court or in any action or proceeding that is pending in any court and are not admissible in evidence in any action or proceeding unless that action or proceeding is an appeal of an action by the department of health under this chapter or is an action by any department or agency of the state to enforce this chapter or another chapter of the Revised Code;

(b) An advertisement, unless the advertisement includes all of the following:

(i) The date the inspection or investigation was conducted;

(ii) A statement that the director of health inspects all homes at least once every fifteen months;

(iii) If a finding or deficiency cited in the statement of deficiencies has been substantially corrected, a statement that the finding or deficiency has been substantially corrected and the date that the finding or deficiency was substantially corrected;

(iv) The number of findings and deficiencies cited in the statement of deficiencies on the basis of the inspection or investigation;

(v) The average number of findings and deficiencies cited in a statement

of deficiencies on the basis of an inspection or investigation conducted under this section during the same calendar year as the inspection or investigation used in the advertisement;

(vi) A statement that the advertisement is neither authorized nor endorsed by the department of health or any other government agency.

(2) Nothing in division (F)(1) of this section prohibits the results of an inspection or investigation conducted under this section from being used in a criminal investigation or prosecution.

Sec. 5165.67. The results of a survey of a nursing facility that is conducted under section 5165.64 of the Revised Code, including any statement of deficiencies and all findings and deficiencies cited in the statement on the basis of the survey, shall be used solely to determine the nursing facility's compliance with certification requirements or with this chapter or another chapter of the Revised Code. Those results of a survey, that statement of deficiencies, and the findings and deficiencies cited in that statement shall not be used in ~~any~~ either of the following:

(A) Any court or in any action or proceeding that is pending in any court and are not admissible in evidence in any action or proceeding unless that action or proceeding is an appeal of an administrative action by the department of medicaid or contracting agency under this chapter or is an action by any department or agency of the state to enforce this chapter or another chapter of the Revised Code;

(B) An advertisement, unless the advertisement includes all of the following:

(1) The date the survey was conducted;

(2) A statement that the department of health conducts a survey of all nursing facilities at least once every fifteen months;

(3) If a finding or deficiency cited in the statement of deficiencies has been substantially corrected, a statement that the finding or deficiency has been substantially corrected and the date that the finding or deficiency was substantially corrected;

(4) The number of findings and deficiencies cited in the statement of deficiencies on the basis of the survey;

(5) The average number of findings and deficiencies cited in a statement of deficiencies on the basis of a survey conducted under section 5165.64 of the Revised Code during the same calendar year as the survey used in the advertisement;

(6) A statement that the advertisement is neither authorized nor endorsed by the department or any other government agency.

Nothing in this section prohibits the results of a survey, a statement of

Sub. H. B. No. 290                                                    130th G.A.

19

deficiencies, or the findings and deficiencies cited in that statement on the basis of the survey under this section from being used in a criminal investigation or prosecution.

SECTION 2. That existing sections 2305.113, 2901.12, 3313.75, 3313.76, 3313.77, 3313.78, 3721.02, and 5165.67 of the Revised Code are hereby repealed.

Sub. H. B. No. 290                                                    130th G.A.

_____

*Speaker* _____ *of the House of Representatives.*

_____

*President* _____ *of the Senate.*

Passed _____, 20____

Approved _____, 20____

_____

*Governor.*

Sub. H. B. No. 290                                    130th G.A.

The section numbering of law of a general and permanent nature is complete and in conformity with the Revised Code.

_____

*Director, Legislative Service Commission.*

Filed in the office of the Secretary of State at Columbus, Ohio, on the ____ day of _____, A. D. 20____.

_____

*Secretary of State.*

File No. _____     Effective Date _____

IN THE COURT OF COMMON PLEAS FOR CHAMPAIGN COUNTY, OHIO

| | |
|---|---|
| HEARTLAND OF URBANA OH, LLC,<br>CT Corporation System<br>1300 East Ninth Street<br>Cleveland, Ohio 44114<br><br>      Plaintiff,<br><br>v.<br><br>MCHUGH FULLER LAW GROUP, PLLC,<br>97 Elias Whiddon Road<br>Hattiesburg, Mississippi 39402,<br><br>      Defendant. | Case No.<br><br>Judge<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**<br><br>ANSPACH MEEKS ELLENBERGER LLP<br>Robert M. Anspach (0017263)<br>J Randall Engwert (0070746)<br>Charles D. Rittenhouse (0088012)<br>300 Madison Ave., Suite 1600<br>Toledo, Ohio 43604-2633<br>Telephone: (419) 246-5757<br>Facsimile: (419) 321-6979<br>*Attorneys for Heartland of Urbana OH, LLC* |

Now comes Heartland of Urbana OH, LLC, d/b/a Heartland of Urbana, by its attorneys and the law firm Anspach Meeks Ellenberger LLP, and for its *Complaint for Injunctive and Other Relief* against McHugh Fuller Law Group, PLLC, to demonstrate that Heartland of Urbana is entitled to a temporary restraining order, preliminary and permanent injunctive and other relief.

## INTRODUCTION

1.    Through this lawsuit, Heartland of Urbana, a skilled nursing facility, seeks to enjoin the campaign of false and misleading advertising waged by McHugh Fuller Law Group, PLLC. In a clear effort to encourage tort litigation against Heartland of Urbana, and other similarly situated skilled nursing facilities throughout Ohio, and to profit greatly therefrom, Defendant distributes advertisements of sensational content (*see e.g.* Exhibits A and B), which contain deliberately misleading references to certain government surveys, performed upon Heartland of Urbana's

4193216979          Anspach Meeks Ellenberger, LL                    08:33:41 a.m.      12-24-2014          4 /102

facility, in order to deceive Heartland of Urbana's clientele and the citizens of the surrounding community into believing that Heartland of Urbana is unsafe and has harmed their loved ones and community members. As explained below, the messages contained in these advertisements are false and misleading.

2.      By purposefully misrepresenting the nature of the government inspections, or surveys, and by omitting critical information specific thereto, Defendant is likely to deceive the public and, contemporaneously, cause significant reputational and monetary harm to Heartland of Urbana. Therefore, Defendant's false advertising campaign violates Ohio's Deceptive Trade Practices Act, R.C. Chapter 4165. Defendant must be temporarily, preliminarily and permanently enjoined from further engaging in such deception at the expense and detriment Heartland of Urbana and the public.

3.      In order to prevent further the immediate and irreparable injury that has already occurred and will surely continue from Defendant's meretricious solicitations, and pursuant to Civ.R. 65, Heartland of Urbana requests that this Court promptly enter a temporary restraining order to immediately prevent any further damage issuing from the print and online iterations of Defendant's advertisement and issue a preliminary and permanent injunction following a hearing on these allegations.

4.      Finally, given the bad faith and willful nature of Defendant's false and deceptive advertising, Heartland of Urbana prays this Court assess against Defendant all reasonable attorneys' fees and costs incurred by Heartland of Urbana in prosecuting these claims.

## PARTIES, JURISDICTION, AND VENUE

5.     Heartland of Urbana OH, LLC, (hereinafter "Heartland of Urbana") is an Ohio limited liability company with its principal place of business located at 741 E. Water Street, Urbana, Ohio, 43078.

6.     Defendant McHugh Fuller Law Group, PLLC, (hereinafter "McHugh Fuller") is a professional limited liability company organized under the laws of Mississippi and authorized to transact business in Mississippi and West Virginia, whose attorneys regularly solicit and contract for representation of clients in Champaign County and throughout Ohio.

7.     McHugh Fuller maintains its principal office at 97 Elias Whiddon Road, Hattiesburg, Mississippi 39402.

8.     McHugh Fuller is subject to personal jurisdiction before this Court pursuant to the Ohio Revised Code for contracting to supply services and transacting business in this state.  R.C. 2307.382(A)(1-2).

9.     Venue and jurisdiction are proper in this Court for Champaign County pursuant to the Ohio Civil Rules. *Id.* at 3(B)(3 and 6).

## STATEMENT OF FACTS

### *Defendant's Advertising Campaign*

10.    Heartland of Urbana operates an 85 bed skilled nursing facility, located at 741 E. Water Street, Urbana, Champaign County, Ohio.

11.    Heartland of Urbana's facility is ranked by the federal government as a "Five Star" nursing facility, which is the highest ranking available to a nursing home.  Heartland of Urbana also received a "Five Star" rating for the government health inspection (or "survey") category.

3

12.    McHugh Fuller have no office or place of business in Ohio. However, attorneys with the law firm are licensed to practice law in Ohio and regularly solicit for clients in Ohio, and pursue legal action on behalf of their clients in Ohio.

13.    McHugh Fuller advertises its services across the country in an effort to bring claims against skilled nursing facilities, and have advertised directly to citizens of Champaign County and Urbana, Ohio, and those who are or are related to past and present residents of Heartland of Urbana.

14.    McHugh Fuller's systematic efforts to induce clients to bring suit against Heartland of Urbana and other skilled nursing facilities include a pattern of ongoing newspaper and online advertisements, which are false, fraudulent, deceptive, and misleading. McHugh Fuller is aware of the false and deceptive nature of these advertisements.

15.    Most recently, McHugh Fuller targeted Heartland of Urbana by taking out a full-page print advertisement in the Urbana local newspaper, the *Urbana Daily Citizen*, and an identical and correlating digital advertisement on the newspaper's website. True and accurate copies of the advertisement, including the print advertisement as it appeared in the printed newspaper and color print of the digital copy, are attached to this *Complaint* as Exhibits A and B, respectively.

16.    The printed newspaper advertisement ran on December 13, 2014. The online digital copy of the same advertisement first appeared on the *Urbana Daily Citizen* website on the same date, and has ongoing and uninterrupted presence from that date to the day of this filing. *See ATTENTION! The government...*, URBANA DAILY CITIZEN, Dec. 13, 2014, http://ads.urbanacitizen.com/urbana-oh/communication/newspaper/urbana-daily-citizen/2014-12-13-1442672-attention-the-government-has-cited-heartland-of-urbana-nursing-and-

4

rehabilitation-center-for-failing-to-provide-necessary-care-and-services-to-maintain-the-

highest-well-being-of-each-resident-if-you-suspect-that-a-loved-one-was-neglected.

17.     The advertisement contains a photograph of the front exterior of Heartland of Urbana's

facility, including the signage at the front of the property, reading "HCR ManorCare: Heartland

of Urbana; Nursing and Rehab. Center; Alzheimer's Care."

18.     The photograph on the advertisement is accompanied by the following solicitation:[1]

**ATTENTION!**
The government has <u>cited</u>[2]
**HEARTLAND OF URBANA NURSING
AND REHABILITATION CENTER**
for failing to provide necessary care and
services to maintain the highest well-being
of each resident.

If you suspect that a loved one was
**NEGLECTED** or **ABUSED**
at Heartland of Urbana,
call **McHugh Fuller** today!

Has your loved one suffered?
Bedsores
Broken Bones
Unexplained Injuries
**Death**
1-800-939-5580
[McHugh Fuller Law Group]

---

[1] The quoted portion of the advertisement takes into account only the language and the use of capital letters and boldface font. It does not account for the relative and varied size of the advertisement's fonts or the use of color, including the appearance of the words neglected, abused, and death in red. *See* Exhibits A and B.
[2] The advertisement's use of the word "cited" refers to routine surveys performed in accordance with 42 C.F.R. 483 *et seq.*, known as the "OBRA Regulations," which serve as the basis for determining whether a skilled nursing facility may participate in the Medicare reimbursement program. *See id.* at 483.1(b); *see also* R.C. 3721.02. The OBRA Regulations are administered by state surveyors with oversight and additional levels of surveys conducted by the federal Centers for Medicare and Medicaid Services ("CMS"). Particularly, CMS contracts with each state to carry out the annual and periodic survey functions to determine whether nursing facilities are in substantial compliance with the OBRA Regulations, so that they may qualify for reimbursement. *See* 42 U.S.C. 1395aa. Under the OBRA Regulations, over 91 percent of nursing homes surveyed are found to have "deficiencies" indicating that they are not in substantial compliance with the conditions of participation.

5

19.     McHugh Fuller's advertisement states the government "has cited" Heartland of Urbana "for failing to provide necessary care and services to maintain the highest well-being of each resident." The "has cited" language leads the reader to believe that the alleged citation has been recent. This is itself and alone, apart from the rest of the advertisement, false and deceptive, because Heartland of Urbana has not had a citation remotely similar to the advertisement's language since June of 2010, more than four years ago.

20.     Additionally, McHugh Fuller's advertisement fails to disclose that any alleged deficiency of the sort quoted in the advertisement in fact did not cause any harm to any nursing home patient, or that the facility corrected and removed the alleged deficiencies from June 2010.

*Defendant's Awareness of the False and Deceptive Nature of Their Advertisements*

21.     McHugh Fuller has been previously enjoined in Georgia for an effectively identical advertisement appearing, as here, in both print and online editions of the community newspaper local to the given skilled nursing facility. The plaintiff there was another skilled nursing facility, known as Heritage Healthcare of Toccoa. Based upon the correlative advertisement, the Superior Court of Stephens County, Georgia, found first that "Defendant's advertisement is false and misleading and therefore violates Section 10-1-372 of the Georgia Uniform Deceptive Trade Practices Act," and additionally that "(i) Plaintiff will be irreparably injured as a result of Defendant's advertisement; (ii) the balance of hardship tips decidedly in favor of Plaintiff because Defendant will not suffer significant or irreparable injury through entry of this Order; and (iii) the entry of this Order is in the public interest." *Pruitthealth—Toccoa, LLC v. McHugh Fuller Law Group, PLLC*, Civil Action No. 14-SU-CV-176CC (Stephens County, GA, June 2, 2014), attached hereto as Exhibit C.

6

22.    Heartland of Urbana has not had a citation of any kind for over two years, and has not had a citation even approximating that suggested by the advertisement ("failing to provide necessary care and services to maintain the highest well-being of each resident") for over four years.

23.    Heartland of Urbana has been deficiency free (that is, without government survey citation of any kind) since October 1, 2012, over two years prior to the publication of McHugh Fuller's advertisement.

24.    The citation from October 1, 2012, was of a particular nature entirely distinct from the aspersions of McHugh Fuller's advertisement. The October 2012 citation was a level "D" citation, the least severe degree that can be cited by the government for finding a facility out of "substantial compliance." A level D citation means that no resident experienced any actual harm as a result of an isolated deficiency, but only the "potential" for harm. *See* CMS Scope and Severity Grid, attached as Exhibit D.[3]

25.    The language of McHugh Fuller's advertisement suggests, though it does not accurately quote, the language of an "F309" citation, which reads, "Each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care." *State Operations Manual*, Appendix PP, page 157 *et seq.*, http://cms.hhs.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/som107ap_pp_ guidelines_ltcf.pdf.

26.    McHugh Fuller's advertisement intentionally misstates and mischaracterizes the language of the F309 tag, omitting material language, such as the term "practicable," in order to give a false

---

[3] Also available online within the context of the *CMS Nursing Home Data Compendium, 2013*, which is the most recent edition at the CMS website. http://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/CertificationandCompliance/downloads/nursinghomedatacompendium_508.pdf.

7

impression that the government requires Heartland of Urbana to obtain a higher degree of patient care than is actually required.

27.     Heartland of Urbana has not received an F309 citation since June 24, 2010, more than *four years* prior to McHugh Fuller's advertisement. The citation in 2010 was a level "E," which is the second least severe citation for a facility to be out of substantial compliance. A level E citation, like level D, means that no resident experienced any actual harm. *See* Exhibit D.

28.     In addition to misquoting the F309 citation language, McHugh Fuller's advertisement falsely and deceptively misstates the nature of the government censure against Heartland of Urbana in 2010. Specifically, while the advertisement states that the government "has cited" Heartland of Urbana "for failing to provide the necessary care and services to maintain the highest well-being of each resident," the actual language of the citation stated that the facility had "failed to ensure residents received timely bowel management, antibiotic therapy and emergency services." Department of Health and Human Services, Centers for Medicare & Medicaid Services, Form OMB NO. 0938-0391, June 24, 2010, at 15 of 23, attached as Exhibit E.

29.     Compounding the deceptive and misleading advertising practices detailed above, McHugh Fuller failed to include any reference to the survey purportedly forming the basis of the solicitation. Given that it appears the citation forming the basis of the advertisement is more than four years old, it is virtually impossible for the general public to ascertain the veracity of the solicitation and determine its misleading nature for themselves.

### *Immediate and Irreparable Harm*

30.     As a result of McHugh Fuller's advertisement, Heartland of Urbana has suffered numerous harms including, but not limited to, immediate and irreparable reputational and stigmatic harm in the Urbana community as well as reputational harm in the skilled nursing industry and to the

8

industry as a whole. Reputational and stigmatic injuries, by their very nature, are inevitably irreparable.

*Ohio and Other States' Policies against Advertisements Referencing Survey Reports*

31.    Ohio and other states have articulated policies and legislation against using information from survey reports for legal advertisements or for any other purpose than "to determine the home's compliance with this chapter or another chapter of the Revised Code." R.C. 3721.02(F)(1); *see also e.g. Facilities, Providers & Managed Care Plans*, PENNSYLVANIA DEPARTMENT OF HEALTH (last accessed Dec. 23, 2014), http://www.portal.state.pa.us/portal/server.pt/community/facilities,_providers_managed_care_plans/11603.

32.    While Ohio law specifies that "[e]xcept as otherwise provided in this section, the results of an inspection or investigation of a home that is conducted under this section . . . shall be used solely to determine the home's compliance," a recent Ohio Bill, signed into law by the Governor on December 19, 2014, taking effect 90 days from the date of signing, amends R.C. 3721.02 and 5165.67 to expressly prohibit advertisements from referencing and citing to results of any such survey, unless the advertisement includes a list of information specific to the cited survey, inspection, or investigation. *See* Am.Sub.H.B. No. 290, Sec. 3721.02, 130th General Assembly Regular Session, 2013-2014, pp. 15 - 19. Attached hereto as Exhibit F.

## COUNT ONE—DECEPTIVE TRADE PRACTICES ACT
### R.C. CHAPTER 4165

33.    Heartland of Urbana incorporates by reference as if fully rewritten herein the averments set forth in paragraphs 1-32.

34.    The Urbana advertisement of December 13, 2014, is inherently and facially false, confusing, and misleading, and therefore violates the Ohio Deceptive Trade Practices Act ("the

9

Act"), codified at R.C. 4165.02, inasmuch as Defendants have engaged in deceptive trade practice by doing *inter alia* the following:

  a.    causing a likelihood of confusion or misunderstanding with respect to the government's certification of services in the form of regular surveys (*see id.* at 4165.02(A)(2) and (3)); *and*

  b.    representing that Heartland of Urbana's services have certain characteristics they do not have (*see id.* at 4165.02(A)(7)); *and*

  c.    representing that Heartland of Urbana's services are other than fully sufficient and currently in compliance with federal and state requirements and standards (*see id.* at 4165.02(A)(9)); *and*

  d.    disparaging Heartland of Urbana's services and business by false representation of fact (*see id.* at 4165.02(A)(10)).

35.   The Act provides for injunctive relief where it is found that a defendant has committed an act constituting a deceptive trade practice as defined by statute. Under certain circumstances, it provides also for attorney's fees to the prevailing party (*see id.* at 4165.03(B)), viz.:

  a.    Defendants have "willfully engaged" in the trade practices articulated in ¶38(a-d), *supra*, and are therefore subject to an assessment of Heartland of Urbana's reasonable attorney's fees.

36.   As a result of McHugh Fuller's advertisement through the *Urbana Daily Citizen*, Heartland of Urbana has suffered and is likely to further suffer stigmatic injury and loss of business opportunities, as well as immediate and irreparable harm to its goodwill, and contractual and business relationships if McHugh Fuller is not temporarily restrained, and preliminarily and permanently enjoined from maintaining their currently circulated advertisements, as described above, and from publishing future advertisements that are comparably false, fraudulent, deceptive, and misleading.

37.    Heartland of Urbana has no adequate remedy at law with regard to McHugh Fuller's false, fraudulent, deceptive, and misleading advertisements in newspapers or other media, including online iterations of same, in this jurisdiction or elsewhere in this State.

38.    A balancing of the equities between the parties weighs heavily in Heartland of Urbana's favor as to whether McHugh Fuller should be permitted to publish such false, fraudulent, deceptive, and misleading advertisements in newspapers and other media concerning Heartland of Urbana and Heartland of Urbana's business.

39.    As a result of McHugh Fuller's violations of R.C. 4165.02, and pursuant to R.C. 4165.03 and Civ.R. 65, Heartland of Urbana is entitled to temporary, preliminary and permanent injunctive relief and an award of attorney's fees and such other and further relief as the Court deems just and equitable.

## COUNT TWO—DEFAMATION: LIBEL AND LIBEL PER SE

40.    Heartland of Urbana incorporates by reference as if fully rewritten herein the averments set forth in paragraphs 1-39.

41.    McHugh Fuller's advertisement subjects them to liability pursuant to a cause of action for both libel and libel per se.

42.    McHugh Fuller's advertisement is directed at Heartland of Urbana with the specific intent (a) to injure Heartland of Urbana's reputation, (b) to expose it to public hatred, contempt, ridicule, shame, and disgrace, and (c) to injure its business and trade.

43.    The advertisement makes false aspersions against Heartland of Urbana by deliberate misstatements and misapplications of information from survey reports of the facility, which the advertisement advances as these statements were factual, and which are not privileged.

11

44.     The advertisement specifically and unequivocally regards Heartland of Urbana and its facility.

45.     McHugh Fuller's statements, made through the advertisement, are actionable in and of themselves, without regard to McHugh Fuller's intent in publishing them. The words and their effect are of such an inherently damaging nature and subject Heartland of Urbana to public hatred, contempt, and scorn.

46.     Heartland of Urbana has suffered stigmatic and reputational harms as a further result of the advertisement, and in addition to any quantifiable damages experienced at the facility and in the community.

47.     As a result of McHugh Fuller's libel per se, and pursuant to Civ.R. 65, Heartland of Urbana is entitled to temporary, preliminary, and permanent injunctive relief and an award of attorneys' fees and such other and further relief as the Court deems just and equitable.

## COUNT THREE—DEFAMATION: FALSE LIGHT INVASION OF PRIVACY

48.     Heartland of Urbana incorporates by reference as if fully rewritten herein the averments set forth in paragraphs 1-47.

49.     McHugh Fuller's advertisement subjects them to liability pursuant to a cause of action for false light invasion of privacy, which occurs when one maliciously gives publicity to a matter concerning another that places the other before the public in a false light.

50.     The aspersions of McHugh Fuller's advertisement are highly offensive to the reasonable person and are in fact offensive to Heartland of Urbana.

51.     McHugh Fuller's statements, made through their advertisement, are not privileged.

52.     McHugh Fuller knew or should have known that the statements asserted in the advertisement were false and would be offensive to Heartland of Urbana. McHugh Fuller

12

recklessly disregarded the truth of the existing and most recent survey reports, which were available for review by McHugh Fuller prior to the publication of their advertisement.

53.    As a result of McHugh Fuller's false and defamatory statements, and pursuant to Civ.R. 65, Heartland of Urbana is entitled to temporary, preliminary, and permanent injunctive relief and an award of attorneys' fees and such other and further relief as the Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Heartland of Urbana OH, LLC prays for judgment against McHugh Fuller Law Group, PLLC as follows:

A.    That McHugh Fuller Law Group, PLLC be temporarily restrained and preliminarily and permanently enjoined pursuant to Civ.R. 65, R.C. 4165.02, *et seq.*, and Ohio common law from publishing false, fraudulent, deceptive, and misleading advertisements concerning Heartland of Urbana, including the type of advertisements contained in Exhibits A and B hereto;

B.    Reasonable attorneys' fees and expenses of litigation incurred by Heartland of Urbana in connection with this litigation;

C.    All costs of this action; and

D.    Such other and further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

ANSPACH MEEKS ELLENBERGER LLP



By: _____

Robert M. Anspach (0017269)
J Randall Engwert (0070746)
Charles D. Rittenhouse (0088012)
*Attorneys for Plaintiff,*
*Heartland of Urbana OH, LLC*

13

4193216979          Anspach Meeks Ellenberger, LL                    08:36:10 a.m.    12-24-2014    17/102



# ATTENTION!

The government has cited
**HEARTLAND OF URBANA NURSING
AND REHABILITATION CENTER**
for failing to provide necessary care and
services to maintain the highest well-being
of each resident.

If you suspect that a loved one was
**NEGLECTED** or **ABUSED**
at Heartland of Urbana,
call **McHugh Fuller** today!

Has your loved one suffered?

Bedsores

Broken Bones

Unexplained Injuries

**Death**

# 1-800-939-5580



108 1/2 Capitol Street, Suite 300 • Charleston, West Virginia 25304
97 Elias Whlddon Road • Hattiesburg, Mississippi 39402
Michael J. Fuller, Jr.

ADVERTISING MATERIAL

4193216979          Anspach Meeks Ellenberger, LL                              08:36:30 a.m.     12−24−2014          18 /102

4193216979   Anspach Meeks Ellenberger, LL                 08:36:35 a.m.   12-24-2014   19 /102

Urbana
# DAILY CITIZEN

| What are you looking for? | |

**Print Advertisements For McHugh Fuller Law Group In Hattiesburg, MI**

📍 97 Elias Whiddon Road
Hattiesburg, MI 39402

👤 Phone Number
800-939-5580



# ATTENTION!
The government has <u>cited</u>
**HEARTLAND OF URBANA NURSING AND REHABILITATION CENTER**
for failing to provide necessary care and
services to maintain the highest well-being
of each resident.

If you suspect that a loved one was
**NEGLECTED** or **ABUSED**
at Heartland of Urbana,
call **McHugh Fuller** today!

Has your loved one suffered?

Bedsores

Broken Bones

Unexplained Injuries

**Death**

## 1-800-939-5580



108 1/2 Capitol Street, Suite 300 • Charleston, West Virginia 25304
97 Elias Whiddon Road • Hattiesburg, Mississippi 39402
Michael J. Fuller, Jr.

ADVERTISING MATERIAL

ATTENTION! The government has cited HEARTLAND OF URBANA NURSING AND REHABILITATION CENTER for failing to provide
necessary care and Services to maintain the highest well-being of each resident. If you suspect that a loved one was NEGLECTED or
ABUSED at. . (more)

*Advertisement run on December 13 2014*

**McHugh Fuller Law Group**

Dec 13, 2014 - ATTENTION! The government has cited HEARTLAND OF URBANA NURSING AND REHABILITATION...

Urbana

Map data ©2014 Google

Previous     Next

Admin

Contents of Urbana Ohio Advertisements © 2014 Urbana Daily Citizen. All rights reserved.
Business Directory, Newspaper Ad, and Daily Deal software are powered by Own Local.
Local Hero, AdForge, and Daily Deals software © 2006-2014.
Home | Privacy Policy | Terms of Service

4193216979          Anspach Meeks Ellenberger, LL                    08:36:55 a.m.     12-24-2014      217/02

4193216979      Anspach Meeks Ellenberger, LL                    08:37:00 a.m.    12-24-2014      22 7/102

STEPHENS COUNTY
CLERK OF COURT
TIMOTHY B. QUICK, CLERK

IN THE SUPERIOR COURT OF STEPHENS COUNTY     PAGE _____
STATE OF GEORGIA

2014 JUN 2 AM 8 53

PRUITTHEALTH – TOCCOA, LLC;

        Plaintiff,

v.

MCHUGH FULLER LAW GROUP, PLLC,     Civil Action No. 14-SU-CV-176CC

        Defendant.

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR INJUNCTIVE RELIEF

        Plaintiff initiated this case on April 18, 2014, alleging violations of the Georgia Uniform Deceptive Trade Practices Act and the Georgia Rules of Professional Conduct stemming from Defendant having published an advertisement about Plaintiff's nursing home facility, which is known as Heritage Healthcare of Toccoa.

        The Defendant is a law firm with offices in West Virginia and Mississippi. Although Defendant does not have an office in Georgia, it does have attorneys who are licensed in Georgia, including James McHugh, who testified at the hearing on this matter. Defendant's full page color advertisement first appeared in the April 17, 2014 edition of *The Toccoa Record*, the local newspaper covering Stephens County, Georgia and surrounding areas. The advertisement invites families to contact Defendant about Plaintiff's nursing home.

        With its Complaint, Plaintiff filed a Motion for an *Ex Parte* Temporary Restraining Order and Preliminary and Permanent Injunctive Relief against Defendant, alleging that Plaintiff is threatened with irreparable harm as a result of Defendant's alleged publishing false, fraudulent, deceptive, and misleading advertisements concerning the Plaintiff in violation of the Georgia Uniform Deceptive Trade Practices Act and the Georgia Rules of Professional Conduct. On April 21, 2014, the Court issued a Temporary Restraining Order enjoining the Defendant from certain actions until a hearing could be convened.

S

4193216979        Anspach Meeks Ellenberger, LL        08:37:11 a.m.    12-24-2014        23 /102

On May 13, 2014, the parties appeared for an evidentiary hearing before this Court, at which both parties called witnesses, introduces exhibits, and made arguments regarding the appropriateness of injunctive relief. Among other things, Plaintiff introduced testimony regarding a sharp decline in admissions since the advertisement was published. After hearing all of the evidence and arguments, the Court finds that Defendant's advertisement is false and misleading and therefore violates Section 10-1-372 of the Georgia Uniform Deceptive Trade Practices Act.

The Court further finds that: (i) Plaintiff will be irreparably injured as a result of Defendant's advertisement; (ii) the balance of hardships tips decidedly in favor of Plaintiff because Defendant will not suffer significant or irreparable injury through entry of this Order; and (iii) the entry of this Order is in the public interest.

THEREFORE, IT IS HEREBY ORDERED that, pursuant to O.C.G.A. §§ 9-11-65, 10-1-373, and 10-1-423, the Court **GRANTS** Plaintiff's Motion for Injunctive relief.

IT IS FURTHER ORDERED that Defendant is enjoined from publishing or causing the offending advertisement to be published in the future. In addition, within twenty (20) days from the date of this Order, Defendant shall remove or cause to be removed at its expense all electronic postings of the advertisement by *The Toccoa Record*, including any electronic archived versions of the advertisement.

SO ORDERED this 23rd day of May, 2014, nunc pro tunc the 13 day of May, 2014.

The Honorable B. Chan Caudell
Superior Court of Stephens County

-2-

4193216979          Anspach Meeks Ellenberger, LL          08:37:25 a.m.    12-24-2014          24 / 102

## General Civil Case Final Disposition Form (Non-Domestic)

Court
☑ Superior
☐ State

County STEPHENS

Docket # 14-54-CV-176CC

Date Disposed 5-13-14
MM-DD-YYYY

Reporting Party _____
Last  First  Middle I. Suffix Prefix  Maiden                    Title

**Name of Plaintiff/Petitioner(s)**

PruittHealth Toccoa LLC
Last  First  Middle I. Suffix Prefix  Maiden

**Name of Defendant/Respondent(s)**

McHugh Fuller Law Group PLLC
Last  First  Middle I. Suffix Prefix  Maiden

Plaintiff/Petitioner's Attorney  ☐ Pro Se

Defendant/Respondent's Attorney  ☐ Pro Se

Last      First      Middle I.   Suffix

Last      First      Middle I.   Suffix

Bar # _____

Bar # _____

### Type of Disposition (Check all that apply)

1. ☐ Pre-Trial Dismissal (Specify which type)

   A. ☐ Involuntary

   B. ☐ Voluntary (without prejudice)

   C. ☐ Voluntary (with prejudice)

2. ☐ Pre-Trial Settlement

3. ☐ Default Judgment

4. ☐ Summary Judgment

5. ☐ Transferred/Consolidated

6. ☑ Bench Trial

7. ☐ Jury Trial (specify outcome further)

   A. ☐ Dismissal after jury selected
   B. ☐ Settlement during trial
   C. ☐ Judgment on Verdict
   D. ☐ Directed Verdict or JNOV

1. Judgment on Verdict: Was the verdict:

   A. ☐ For Plaintiff(s) [all]

   B. ☐ For Defendant(s) [all]

   C. ☐ Other: (Explain)

   _____

### AWARD

1. If verdict for Plaintiff, how much was awarded?

| $ | Compensatory |
|---|---|
| $ | Punitive |

2. If verdict on cross or counter claims, how much was awarded?

| $ | Compensatory |
|---|---|
| $ | Punitive |

3. Did the court modify the award?
   ☐ Yes  ☐ No

4. Were attorneys fees awarded?
   ☐ Yes  ☐ No

### ADR

1. Was ADR utilized?
   ☐ Yes  ☐ No

2. If yes, was it (check if applicable)
   ☐ court annexed?
   ☐ court mandated?

3. Did the matter settle after trial for other than judgment? (If known at the time of this submission)
   ☐ Yes  ☐ No

## Figure 2.1. Scope and Severity Grid for Rating Nursing Home Deficiencies

|  | Isolated | Pattern | Widespread |
|---|---|---|---|
| Immediate Jeopardy to Resident Health or Safety | J | K | L |
| Actual Harm that is Not Immediate Jeopardy | G | H | I |
| No Actual Harm with Potential for More than Minimal Harm that is Not Immediate Jeopardy | D | E | F |
| No Actual Harm with Potential for Minimal Harm | A | B | C |

*A level citations not reported by CMS
Source: CASPER

4193216979          Anspach Meeks Ellenberger, LL          08:38:01 a.m.          12-24-2014          28 / 102

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 1325N | A. BUILDING _____ B. WING _____ | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER
HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 000 | INITIAL COMMENTS | N 000 | | |
| | Total Capacity: 100 Total Census: 47 County: Champaign Administrator: Katherine E. W. Will #3057 Survey Type: Annual | | | |
| N 165 | O.A.C. 3701-17-10 (F) Resident Assessments | N 165 | | |
| | O.A.C. 3701-17-10 (F) Subsequent to the initial comprehensive assessment, the nursing home shall periodically reassess each resident, at minimum, every three months, unless a change in the resident's physical or mental health or cognitive abilities requires an assessment sooner. The nursing home shall update and revise the assessment to reflect the resident's current status. This periodic assessment shall include documentation of at least the following: | | | |
| | (1) Changes in medical diagnoses; | | | |
| | (2) Updated nutritional requirements and needs for assistance and supervision of meals; | | | |
| | (3) Height and weight; | | | |
| | (4) prescription and over-the counter medications; | | | |
| | (5) A functional assessment as described in paragraph (E)(8) of this rule; | | | |
| | (6) Any changes in the resident's psycho-social status or preferences as described in paragraph (E)(4) of this rule; and | | | |
| | (7) Any changes in cognitive, communicative or hearing abilities or mood and behavior patterns. | | | |

Ilo Department of Health

BORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE          TITLE          (X6) DATE
ATE FORM

5OBT11          If continuation sheet 1 of 18

Ohio Dept Health

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | PRINTED: 07/07/2010 FORM APPROVED |
|---|---|---|---|
| | 1325N | | (X3) DATE SURVEY COMPLETED |
| NAME OF PROVIDER OR SUPPLIER HEARTLAND OF URBANA | | STREET ADDRESS, CITY, STATE, ZIP CODE 741 E WATER STREET URBANA, OH 43078 | 06/24/2010 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 165 | Continued From page 1 | N 165 | | |
| | This Rule is not met as evidenced by: Based on record review and staff interview, the facility failed to ensure assessess residents were assessed for change in condition and bowel function. This affected two (Residents #26 and #46) of 11 sampled residents. | | | |
| | Finding included; | | | |
| | 1. Review of the June 2010 physician order sheet revealed Resident #26 had diagnoses which included diabetes, muscular dystrophy, osteomyelitis and chronic kidney disease. The minimumm data set (MDS) assessment dated 05/13/10 revealed the resident had no short or long term memory impairment, had difficulty with decisions in new situations, required extensive to total care for activities of daily living, had a suprapubic urinary drainage catheter and pressure ulcers. Nursing notes dated 06/11/10 at 5:00 A.M. stated Resident #26 complained of abdominal pain. His abdomen was distended. Bowel sounds were present in all four quadrants. There was no documation that vital signs were assessed. Pain medication was given at that time. There was no documentation that the resident was reassessed until nursing notes dated 06/11/10 at 11:30 P.M., which identified the resident complained of abdominal pain. The resident's abdomen was distended, hard, firm, red, and warm to touch. His abdomen appeared three time larger than normal. The resident stated he could not eat due to pain and cramping. Pain medications were given but were not effective. The physician was notified at 11:30 P.M. and ordered the resident sent to the emergency room. The ambulance was called, | | | |

4193216979        Anspach Meeks Ellenberger, LL                    08:38:28 a.m.    12-24-2014    30 /102
                                              HEARTLAND/URBANA                                      PAGE  03/41

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 1325N | A. BUILDING _____ B. WING _____ | |
| NAME OF PROVIDER OR SUPPLIER | | STREET ADDRESS, CITY, STATE, ZIP CODE | 06/24/2010 |
| HEARTLAND OF URBANA | | 741 E WATER STREET URBANA, OH 43078 | |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 165 | Continued From page 2 | N 165 | | |
| | arrived at 12:05 A.M., and the resident admitted to the hospital. | | | |
| | During an interview on 6/22/10 at 1:00 PM, LPN #55 verified the resident was not reassessed in a timely manner. | | | |
| | 2. Review of the clinical record diagnosis report for Resident #46 revealed diagnoses of dementia, obstructive hydrocephalus, constipation, depression, anxiety, asthma, atrial fibrillation, blurred vision, and malnutrition. She was admitted on 02/16/08 and resided on the secured unit. She had recently been hospitalized 05/05/10 through 05/10/10 for surgery to place a colostomy and a gastric feeding tube. Review of the ADL (activity of daily living) worksheet, completed by the Nurse Aids, for the month of March and April revealed that she had an irregular bowel movement pattern. In March 2010 and April 2010 she had no bowel movement documented for four days from a medium size BM on 03/02/10 until a small size BM on 03/07/10. No bowel movement was documented again from 03/14/10 through 03/16/10, 03/20/10 through 03/22/10, 03/28/10 through 04/01/10, 04/03/10 through 04/06/10, 04/10/10 through 04/14/10, 04/16/10 through 04/10/10 04/22/10 through 04/25/10 and 04/27/10 through 04/30/10. Review of the physician orders revealed no bowel medications (laxatives) were ordered routinely. Review of the as needed medication orders revealed an order for milk of magnesia suspension 30 milliliters by mouth as needed. Review of the medication administration records revealed that she received no milk of magnesia during the months of March or April. | | | |
| | Review of the nurses notes for the months of March and April 2010 revealed no information | | | |

nio Department of Health
TATE FORM

0639        5OBT11        If continuation sheet 3 of 18

4193216979          Anspach Meeks Ellenberger, LL          08:38:42 a.m.     12-24-2014     31/102
                                                  HEARTLAND/URBANA          PAGE  04/41

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 165 | Continued From page 3 | N 165 | | |
| | related to constipation. The record was silent to any indication that Resident #46 had irregular bowel movements. There was no entry to indicate assessment of her abdomen or analysis of bowel movement pattern. | | | |
| | Interview of the attending physician of Resident #46 on 06/22/10 at 2:30 P.M. revealed that he had only been her attending physician for about one week. He stated that he was aware of her issues with constipation because he had reviewed the record as she had history of bowel impaction. He stated he expected nurses to monitor and assess bowel movements. | | | |
| | Interview of Registered Nurse Consultant #72 on 06/22/10 at 3:15 P.M. revealed that the facility had no written bowel protocol or policy. She stated bowel movements were recorded daily by nurse aids and tracked by the nurses. She stated that any abdominal or bowel assessment performed would be one documented in the nurses notes. | | | |
| | During further interview of Registered Nurse #72 on 06/23/10 at 10:30 A.M. she verified that no assessment of Resident #46's bowel function or pattern of constipation had been documented in the nurses notes in March or April 2010. | | | |
| N 184 | O.A.C. 3701-17-12 (A) Notification and reporting of Changes | N 184 | | |
| | O.A.C. 3701-17-12 (A)  Notification and reporting of changes in health status, illness, injury and death of a resident. The nursing home administrator or the administrator's designee shall: (A) Immediately inform the resident, consult with the resident's physician or the medical director, if | | | |

Ohio Department of Health
STATE FORM                                    6899          5OBT11                    If continuation sheet 4 of 18

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 1325N | | 08/24/2010 |

NAME OF PROVIDER OR SUPPLIER

**HEARTLAND OF URBANA**

STREET ADDRESS, CITY, STATE, ZIP CODE

**741 E WATER STREET
URBANA, OH 43078**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 184 | Continued From page 4 | N 184 | | |
| | the attending physician is not available, and notify the resident's sponsor or authorized representative, unless the resident objects, and other proper authority, in accordance with state and local laws and regulations when there is: | | | |
| | (1) An accident involving the resident which results in injury and has the potential for requiring physician intervention; | | | |
| | (2) A significant change in the resident's physical, mental, or psycho-social status such as a deterioration in health, mental, or psycho-social status in either life-threatening conditions or clinical complications; | | | |
| | (3) A need to alter treatment significantly such as a need to discontinue an existing form of treatment due to adverse consequences, or to commence a new form of treatment. The notification shall include a description of the circumstances and cause, if known, of the illness, injury or death. A notation of the change in health status and any intervention taken shall be documented in the medical record. If the resident is a patient of a hospice care program, the notifications required by this paragraph shall be the responsibility of the hospice care program unless otherwise indicated in the coordinated plan of care required under paragraph (G) of rule 3701-17-14 of the Administrative Code. | | | |
| | This Rule is not met as evidenced by: Based on review of the clinical record and physician interview, the facility failed to notify the physician when a resident had no bowel movement for three or more days on multiple occasions over a two month period. This affected one (Resident #46) of 11 sampled | | | |

4193216973     Ahspach Meeks Ellenberger, LL        08:39:18 a.m    12-24-2014        33 /102
                                                    HEARTLAND/ URBANA                           PAGE   06/41

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 1325N | A. BUILDING _____ | | |
| | | B. WING _____ | | |
| NAME OF PROVIDER OR SUPPLIER | | STREET ADDRESS, CITY, STATE, ZIP CODE | | 06/24/2010 |
| HEARTLAND OF URBANA | | 741 E WATER STREET | | |
| | | URBANA, OH 43078 | | |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 184 | Continued From page 5 | N 184 | | |
| | residents. | | | |
| | Findings include: | | | |
| | Review of the clinical record diagnosis report for Resident #46 revealed diagnoses of dementia, obstructive hydrocephalus, constipation, depression, anxiety, asthma, atrial fibrillation, blurred vision, and malnutrition. She was hospitalized 05/05/10 through 05/10/10 for surgery (colostomy and gastric feeding tube). Review of the ADL (activity of dally living) worksheet completed by Nurse Aids for the month of March and April 2010 revealed the resident had a medium bowel movement (BM) on 03/02/10 and no BM until a small BM on 03/07/10 (five days). No bowel movement was documented again from 03/28/10 through 04/01/10 (four days), 04/03/10 through 04/06/10 (three days), 04/10/10 through 04/14/10 (four days), 04/16/10 through 04/10/10 (four days), 04/22/10 through 04/26/10 (three days) and 04/27/10 through 04/30/10 (three days). Review of the physician orders revealed no routine medications for constipation and an order for milk of magnesia suspension 30 milliliters by mouth as needed for constipation. Review of the medication administration records revealed that the resident received no milk of magnesia during the months of March or April. | | | |
| | Review of nurses notes for the months of March and April 2010 revealed no information related to constipation. The record did not include physician notification regarding lack of bowel movements. | | | |
| | Interview of the attending physician of Resident #46 on 06/22/10 at 2:30 P.M. revealed he was her physician for for one week and was now | | | |

4193216979        Anspach Meeks Ellenberger, LL                    08:39:34 a.m.    12-24-2014      34 /102
                                                  HEARTLAND/URBANA                          PAGE   87/41

Ohio Dept Health                                                              PRINTED: 07/07/2010
                                                                             FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 1325N | A. BUILDING _____ B. WING _____ | | 06/24/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 184 | Continued From page 6 | N 184 | | |
| | aware of her constipation because of the history of bowel impaction. He stated he expected the nurses to monitor bowel movements and notify the physician if no bowel movements were noted for several days. | | | |
| N 209 | O.A.C. 3701-17-14 (E) Plan of Care; Treatment and Care; Discharge | N 209 | | |
| | O.A.C. 3701-17-14 (E) The nursing home shall assure that all residents receive adequate, kind, and considerate care and treatment at all times. | | | |
| | This Rule is not met as evidenced by: Based on review of the clinical record, staff interview and physician interview, the facility failed to ensure residents received timely bowel management, antibiotic therapy and emergency services. This affected three (Residents #46, #23 and #26) of 11 sampled residents. | | | |
| | Findings include: | | | |
| | 1. Review of the clinical record diagnosis report for Resident #46 revealed diagnoses of dementia, obstructive hydrocephalus, constipation, depression, anxiety, asthma, atrial fibrillation, blurred vision, and malnutrition. She was hospitalized 05/05/10 through 05/10/10 for surgery (colostomy and gastric feeding tube). Review of the ADL (activity of daily living) worksheet completed by Nurse Aids for the month of March and April 2010 revealed the resident had a medium bowel movement (BM) on 03/02/10 and no BM until a small BM on 03/07/10 (five days). No bowel movement was | | | |

hio Department of Health
TATE FORM                                    6406        5OBT11                 If continuation sheet 7 of 18

557-855-8817    HEARTLAND/URBANA    PAGE    08/41

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|
| NAME OF PROVIDER OR SUPPLIER HEARTLAND OF URBANA | | STREET ADDRESS, CITY, STATE, ZIP CODE 741 E WATER STREET URBANA, OH 43078 | |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 209 | Continued From page 7 | N 209 | | |
| | documented again from 03/28/10 through 04/01/10 (four days), 04/03/10 through 04/06/10 (three days), 04/10/10 through 04/14/10 (four days), 04/16/10 through 04/10/10 (four days), 04/22/10 through 04/25/10 (three days) and 04/27/10 through 04/30/10 (three days). Review of the physician orders revealed no routine medications for constipation and an order for milk of magnesia suspension 30 milliliters by mouth as needed for constipation. Review of the medication administration records revealed that the resident received no milk of magnesia during the months of March or April. | | | |
| | Review of nurses notes for the months of March and April 2010 revealed no information related to constipation, including assessment and analysis of bowel movement patterns. The record did not include physician notification regarding lack of bowel movements. | | | |
| | Interview of the attending physician of Resident #46 on 06/22/10 at 2:30 P.M. revealed the resident had a history of bowel impaction. He stated he expected nurses to monitor bowel movements and notify physicians if no bowel movements were noted for several days. | | | |
| | Interview of Registered Nurse Consultant #72 on 06/22/10 at 3:15 P.M. revealed the facility had no written bowel protocol or policy. She stated that there was no standing orders for treatment of constipation. She stated that the medical directors preference was to notify the attending physicians individually if a resident had no bowel movement for three days and the physician could address each instance individually. She stated that the bowel movements were recorded daily by the nurse aids and tracked by the nurses. She stated that any abdominal or bowel assessment | | | |

hio Department of Health
TATE FORM

8896    5OBT11    If continuation sheet 8 of 18

4193216979          Anspach Meeks Ellenberger, LL          08:40:05 a.m          12-24-2014     36 /102

HEARTLAND/ URBANA                                                    PAGE  09/41

Ohio Dept Health                                                    PRINTED: 07/07/2010
                                                                    FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | | A. BUILDING | | |
| | **1325N** | B. WING | | |
| NAME OF PROVIDER OR SUPPLIER | | STREET ADDRESS, CITY, STATE, ZIP CODE | | 06/24/2010 |
| **HEARTLAND OF URBANA** | | **741 E WATER STREET** **URBANA, OH 43078** | | |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 209 | Continued From page 8 | N 209 | | |
| | performed would be documented in the nurses notes. Further interview of Registered Nurse #72 on 06/23/10 at 10:30 A.M. revealed no assessment off Resident #46's bowel function or pattern of constipation was documented in the nurses notes in March or April 2010, no laxative was administered during that time and the nurses notes were silent to notification of the physician of the lack of bowel movements. | | | |
| | 2. Review of the June 2010 physician order sheet revealed Resident #26 had diagnoses which included diabetes, muscular dystrophy, osteomyelitis and chronic kidney disease. The minimum data set (MDS) assessment dated 05/13/10 revealed the resident had no short or long term memory impairment, had difficulty with decisions in new situations, required extensive to total care for activities of daily living, had a suprapubic urinary drainage catheter and pressure ulcers. Nursing notes dated 06/11/10 at 5:00 A.M. stated Resident #26 complained of abdominal pain. His abdomen was distended. Bowel sounds were present in all four quadrants. There was no documentation that vital signs were assessed. Pain medication was given at that time. There was no documentation that the resident was reassessed until nursing notes dated 06/11/10 at 11:30 P.M., which identified the resident complained of abdominal pain. The resident's abdomen was distended, hard, firm, red, and warm to touch. His abdomen appeared three time larger than normal. The resident stated he could not eat due to pain and cramping. Pain medications were given but were not effective. The physician was notified at 11:30 P.M. and ordered the resident sent to the emergency room. The ambulance was called, arrived at 12:05 A.M., and the resident admitted to the hospital. | | | |

hio Department of Health
TATE FORM                                    0699          5DBT11                    If continuation sheet 9 of 18

41932169747    Anspach Meeks Ellenberger, LL
06/28/2011  16:18  937-653-6817          HEARTLAND/URBANA      08:40:22 a.m.  12-24-2014    37/102
                                                                                    PAGE  18/41

| Ohio Dept Health | | | | PRINTED: 07/07/2010 FORM APPROVED |
|---|---|---|---|---|
| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: **1325N** | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | | (X3) DATE SURVEY COMPLETED **06/24/2010** |
| NAME OF PROVIDER OR SUPPLIER **HEARTLAND OF URBANA** | | STREET ADDRESS, CITY, STATE, ZIP CODE **741 E WATER STREET URBANA, OH 43078** | | |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 209 | Continued From page 9 | N 209 | | |
| | During an interview on 6/22/10 at 1:00 PM, LPN #55 verified the resident was not reassessed in a timely manner and emergency care was delayed. | | | |
| | 3.  Review of physician orders for May 2010 revealed Resident #23 had diagnoses including Alzheimer's dementia and chronic lymphocytic leukemia.  Review of nursing notes dated 05/02/10 at 7:45 PM revealed the physician ordered a culture of the resident's right eye due to increased drainage.  Laboratory results revealed the specimen was obtained on 05/08/10 at 10:30 A.M., results were returned to the facility on 05/11/10 and Resident #23 was not started on antibiotic eye medication until 05/20/10.  This was confirmed by LPN #55 on 06/22/10 at 1:00 PM. | | | |
| | During interview on 06/22/10 at 2:30 P.M., the Medical Director (MD) stated, unless specified otherwise, laboratory specimens should be obtained within one day of the physician order. The MD affirmed antibiotic therapy was delayed. | | | |
| | Based on clinical record review, staff interviews and review of facility policy, the facility failed to document adequate indication of use for an as needed narcotic anti-anxiety medication and failed to document non-pharmacological interventions prior to administering an as needed narcotic pain medication.  This affected two (Residents #1 and #10) of 11 sampled residents. | | | |
| | Findings include: | | | |
| | 1.  Review of the Admission Record for Resident #1 revealed an admission date of 01/18/06. Review of the Diagnosis Report revealed diagnosis which included chronic obstructive pulmonary disorder, anxiety, diabetes, dementia, | | | |

4193216979    Anspach Meeks Ellenberger, LL    08:40:38 a.m.    12-24-2014    38/102

HEARTLAND/ URBANA    PAGE  11/41

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE | 06/24/2010 |
|---|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 | |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 209 | Continued From page 10 | N 209 | | |
| | schizophrenia, psychosis, elevated blood pressure, congestive heart failure, depression and obesity. Review of the Minimum Data Set (MDS) assessment dated 04/22/10 revealed Resident #1 had difficulty remembering short and long term memories and was moderately cognitively impaired. | | | |
| | Review of the Plan of Care regarding pain for Resident #1 dated 03/25/10 stated non-pharmacological interventions for pain included: redirect with television; reposition; offer comfort foods prior to administering the pain medication. Review of Plan of Care regarding anti-anxiety medication state to monitor mood, assure basic needs are met, offer to decrease environmental stimulus by offering to close blinds, and offer soft music are to be tried prior to administering the anti-anxiety medication. | | | |
| | Review of the Medication Administration Record (MAR) for June, 2010 revealed an order for .25 milligrams (mg) of Alprazolam (Xanax - anti-anxiety medication) as needed (prn) every eight hours. Further review of the MAR revealed the medication had been administered 18 times in June. Continued review of the MAR revealed no documentation as to why the medication had been administered on these dates. Review of the nurse's notes during this period revealed no documentation as to why the medication had been administered or what behaviors the resident was exhibiting. | | | |
| | Continued review of the MAR for June, 2010 revealed an order dated 01/18/10 for hydrocodone/APAP 5-500 (Vicodin - narcotic analgesic) every six hours prn for moderate to severe pain. Review of the MAR revealed the medication was administered 11 times June with | | | |

Ohio Department of Health
TATE FORM    5899    5OBT11    If continuation sheet 11 of 18

4193216979          Anspach Meeks Ellenberger, LL          08:40:54 a.m.     12-24-2014      39/102
HEARTLAND/URBANA          PAGE   12/41

PRINTED: 07/07/2010
FORM APPROVED

Ohio Dept Health

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 1325N | A. BUILDING _____ B. WING _____ | 06/24/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 209 | Continued From page 11 | N 209 | | |
| | no documentation as to what non-pharmacological interventions had been tried prior to administering the medication. | | | |
| | 2. Review of the Admission Record for Resident #10 revealed an admission date of 01/03/09. Review of the Diagnosis Record revealed diagnosis which included dementia with delusions, hearing loss, brain cancer, epilepsy, and history of craniotomy. Review of the MDS dated 04/12/10 revealed Resident #10 had difficulty remembering short term memories and was moderately cognitively impaired. | | | |
| | Review of the Plan of Care regarding pain for Resident #10 dated 04/12/10 stated non-pharmacological interventions of activities, reposition, and comfort foods are to be tried prior to administering the pain medication. Review of the Plan of Care regarding anti-anxiety medications states monitor mood, assure basic needs are met, and encourage resident to go to activities prior to administering the anti-anxiety medication. | | | |
| | Review of the Medication Administration Record (MAR) dated June, 2010 revealed an order dated 01/05/10 for .5 milligrams (mg.) of Lorazepam (Ativan – anti-anxiety medication) prn every six hours. Further review of the MAR revealed the medication was administered nine times in June. Continued review of the MAR revealed no documentation as to why the medication had been administered on these dates. Review of the nurse's notes during this period revealed no documentation as to why the medication had been administered or what behaviors the resident was exhibiting. Review of the MAR revealed the Vicodin was administered 15 times in June with no documentation as to what | | | |

hio Department of Health
TATE FORM

5999          5OBT11          If continuation sheet 12 of 16

4193216979          Anspach Meeks Ellenberger, LL                                    08:41:10 a.m.     12-24-2014      40 /102
                                                                        HEARTLAND/URBANA                        PAGE  13/41

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 1325N | A. BUILDING _____ B. WING _____ | | 06/24/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 209 | Continued From page 12 | N 209 | | |
| | non-pharmacological interventions had been tried prior to administering the medication. | | | |
| | In an interview on 06/22/10 at 1:40 P.M., Registered Nurse (R.N.) #65 stated the nurses were to document every time why any prn medications were administered, including what behaviors the resident demonstrated and what non-pharmacological interventions were tried prior to administering the medication. RN #65 further verified there was no documentation of any behaviors or non-pharmacological interventions tried prior to administering the above medications for both of these residents. Review of the facility policy regarding medication administration dated 03/2010 revealed Suggested Documentation included unusual observations or complaints and subsequent interventions. | | | |
| N 404 | R.C. 3721.12(A)(1) DUTIES OF ADMINISTRATOR | N 404 | | |
| | R.C. 3721.12(A)(1) The administrator of a home shall: (1) With the advice of residents, their sponsors, or both, establish and review at least annually, written policies regarding the applicability and implementation of residents' rights under sections 3721.10 to 3721.17 of the Revised Code, the responsibilities of residents regarding the rights, and the home's grievance procedure established under division (A)(2) of this section. The administrator is responsible for the development of, and adherence to, procedures implementing the policies. | | | |

4193216979          Anspach Meeks Ellenberger, LL                                08:41:25 a.m       12-24-2014        41/102

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING ___ B. WING ___ | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| NAME OF PROVIDER OR SUPPLIER HEARTLAND OF URBANA | | STREET ADDRESS, CITY, STATE, ZIP CODE 741 E WATER STREET URBANA, OH 43078 | 06/24/2010 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X6) COMPLETE DATE |
|---|---|---|---|---|
| N 404 | Continued From page 13

This Rule is not met as evidenced by:
Based on review of the facility policy and procedures for Abuse, Neglect and Misappropriation of Patient Property Prevention, and interview, the facility failed to ensure that the facility policy for Abuse, Neglect and Misappropriation of Patient Property Prevention was implemented to ensure that incidents were thoroughly investigated and that allegations were reported to the State agency immediately, within 24 hours. This affected two (#13, #15) of five residents with self reported incidents (SRI) involving allegations of verbal abuse.

Findings include:

Review of the facility policy and procedure for Abuse, Neglect and Misappropriation of Patient Property Prevention, dated 04/21/06, revealed on page six, that each patient has the right to be free from and must not be subjected to abuse by anyone, including but not limited to facility staff, other patients, staff of other agencies serving the patient, family members, friends, or other individuals. Verbal abuse was defined as oral, written or gestured language that willfully included disparaging and derogatory terms to patients or the families, or within hearing distance, regardless of their age, ability to comprehend, or disability. Page 10 indicated the facility must have evidence that all allegations are thoroughly investigated and must prevent any further potential abuse while the investigation proceeds. The allegation must be immediately reported to the supervisor and abuse prevention coordinator and to other officials (including state survey and certification agency) in accordance with stated law, not to exceed 24 hours after discovery of the incident. | N 404 | | |

Ohio Department of Health
TATE FORM                                                                6899              5OBT11                    If continuation sheet 14 of 18

PRINTED: 07/07/2010
FORM APPROVED

Ohio Dept Health

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 1325N | (X2) MULTIPLE CONSTRUCTION A. BUILDING ___ B. WING ___ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 404 | Continued From page 14 | N 404 | | |
| | 1.  Review of the facility reported incident of 09/21/10 revealed that a staff member (unidentified) had reported overhearing State tested nurse aid (STNA) #75 cursing at Resident #13.  The final report dated 09/25/09 indicated that the employee was suspended and an investigation revealed that the resident was unaware of any situation.  The investigation was not located or provided for review. | | | |
| | Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the investigation could not be located.  She verified that the staff witness was not identified for interview and without the investigation could not be identified.  She verified the facility conclusion stated that the resident was unaware of any situation.  She verified the definition of verbal abuse according to the policy and procedure did not require the resident to be aware of comprehend and that the final report indicated incident had been witnessed and reported by another staff member.  She verified that the personnel file of STNA #75 did not indicate additional abuse education or disciplinary action related to the 09/21/09 allegation of verbal abuse of a resident. | | | |
| | 2.  Review of the facility reported incident of 11/06/09 which was reported to the state agency on 11/09/09 revealed that STNA #75 was overheard yelling at Resident #15.  The incident was witnessed by the charge nurse and an STNA.  The employee was suspended, the investigation was completed and the employee was terminated. | | | |
| | Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the facility investigation concluded the incident had occurred | | | |

4193216979       Anspach Meeks Ellenberger, LL                08:41:57 a.m.    12-24-2014    43 /102
HEARTLAND/URBANA                                           PAGE   16/41

PRINTED: 07/07/2010
FORM APPROVED

Ohio Dept Health

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **1325N** | A. BUILDING _____ B. WING _____ | | **06/24/2010** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **HEARTLAND OF URBANA** | **741 E WATER STREET** **URBANA, OH  43078** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 404 | Continued From page 15 | N 404 | | |
| | on 11/06/09 and was reported to the State Agency on 11/09/09.  The final report sent to the state agency on 11/13/09 indicated that STNA#75 had been terminated on 11/20/09.  She verified that STNA #75 had been named in an alleged incident of verbal abuse of a resident on 09/21/09 according to incidents reported to the State Agency by the facility.  She verified that the report indicated that another STNA (unidentified) had witnessed and reported the previous incident. She verified that the personnel file of STNA #75 did not reflect that the incident had occurred and that the investigation could not be located for review. | | | |
| N 411 | R.C. 3721.13(A)(2) RIGHTS OF RESIDENTS | N 411 | | |
| | R.C. 3721.13(A)(2)  The right to be  free from physical, verbal, mental,  and emotional abuse and to be treated  at all times with courtesy, respect,  and full recognition of dignity and individuality; | | | |
| | This Rule  is not met as evidenced by: Based on review of the facility policy and procedures for Abuse, Neglect and Misappropriation of Patient Property Prevention, personnel file review and interview, the facility failed to ensure residents were free from verbal abuse.  This affected two (Residents #13, #15) of five residents with self reported incidents (SRI) with allegations of verbal abuse. Findings include: | | | |

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 1325N | | A. BUILDING _____ B. WING _____ | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

**HEARTLAND OF URBANA**

STREET ADDRESS, CITY, STATE, ZIP CODE

**741 E WATER STREET**
**URBANA, OH 43078**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 411 | Continued From page 16 | N 411 | | |

1. Review of the SRI dated 09/21/10 revealed a staff member (unidentified) reported overhearing State Tested Nurse Aid (STNA) #75 cursing at Resident #13. The final report dated 09/25/09 indicated STNA #75 was suspended and an investigation revealed the resident was unaware of any situation. The investigation was not available for review.

Review of the personnel file for STNA #75 revealed a hire date of 08/04/09. The 90 day evaluation for the period of 08/04/09 through 11/04/09 documented she received a needs improvement evaluation for organization and completing tasks according to the job description. The evaluation indicated that she received coaching forms on 09/23/09 for failing to follow directions by a nurse to put a resident to bed before leaving the facility and 09/24/09 for failing to be sure that resident needs were met and last round care provided before rounds with the oncoming shift.

Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the investigation could not be located. She verified that the staff witness was not identified for interview and without the investigation could not be identified. She verified the facility conclusion stated that the resident was unaware of any situation. She verified the definition of verbal abuse according to the policy and procedure did not require the resident to be aware and that the final report indicated the incident was witnessed and reported by another staff member. She verified the personnel file of STNA #75 did not indicate additional abuse education or disciplinary action related to the 09/21/09 allegation of verbal abuse of a resident.

4193216979          Anspach Meeks Ellenberger, LL          08:42:28 a.m.     12-24-2014     45 /102

537-653-6817                          HEARTLAND/URBANA

PAGE 18/41

Ohio Dept Health

PRINTED: 07/07/2010
FORM APPROVED

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 1325N | A. BUILDING _____ B. WING _____ | |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

06/24/2010

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| N 411 | Continued From page 17 | N 411 | | |
| | 2. Review of the SRI dated 11/06/09 revealed STNA #75 was overheard yelling at Resident #15. The incident was witnessed by the charge nurse and an STNA. The employee was suspended, the investigation was completed and the employee was terminated. | | | |
| | Interview with Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed the facility investigation concluded the incident had occurred. She verified that STNA #75 had been involved in an alleged incident of verbal abuse of a resident on 09/21/09 according to incidents reported to the State Agency by the facility. She verified that the report indicated that another STNA (unidentified) had witnessed and reported the previous incident. She verified that the personnel file of STNA #75 did not reflect that the incident had occurred and that the investigation could not be located for review. | | | |
| | Review of the facility policy and procedure for Abuse, Neglect and Misappropriation of Patient Property Prevention dated 04/21/06 revealed: each patient has the right to be free from and must not be subjected to abuse by anyone, including but not limited to facility staff, other patients, staff of other agencies serving the patient, family members, friends, or other individuals. Verbal abuse was defined as oral, written or gestured language that willfully included disparaging and derogatory terms to patients or the families, or within hearing distance, regardless of their age, ability to comprehend, or disability. | | | |

Ohio Department of Health
STATE FORM

8899                    5OBT11

If continuation sheet 18 of 18

06/28/2011  16:18    937-653-6817              HEARTLAND/URBANA                            PAGE  19/41

EPARTMENT OF HEALTH AND HUMAN SERVICES                                        PRINTED: 07/07/2010
ENTERS FOR MEDICARE & MEDICAID SERVICES                                       FORM APPROVED
                                                                              OMB NO. 0938-0391

| .TEMENT OF DEFICIENCIES ) PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED  06/24/2010 |
|---|---|---|---|

ME OF PROVIDER OR SUPPLIER

EARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| K4) ID REFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 000 | INITIAL COMMENTS  ANNUAL SURVEY  ADMINISTRATOR: KATHERINE E. W. WILL #3057  CERTIFIED BED CAPACITY: 85  CENSUS: 47  MEDICARE: 05  MEDICAID: 30  OTHER: 12  The following deficiencies are based on the annual survey completed 06/24/10. | F 000 | Heartland of Urbana has and will continue to be in substantial compliance with 42 CFR Part 483 Subpart B. Heartland of Urbana has or will have substantially corrected the alleged deficiencies and achieved substantial compliance by the date specified herein.  This Plan of Correction constitutes Heartland of Urbana allegation of substantial compliance such that the alleged deficiencies cited have been or will be corrected by August 3, 2010. | |
| 157 S=D | 483.10(b)(11) NOTIFY OF CHANGES (INJURY/DECLINE/ROOM, ETC)  A facility must immediately inform the resident; consult with the resident's physician; and if known, notify the resident's legal representative or an interested family member when there is an accident involving the resident which results in injury and has the potential for requiring physician intervention; a significant change in the resident's physical, mental, or psychosocial status (i.e., a deterioration in health, mental, or psychosocial status in either life threatening conditions or clinical complications); a need to alter treatment significantly (i.e., a need to discontinue an existing form of treatment due to adverse consequences, or to commence a new form of treatment); or a decision to transfer or discharge the resident from the facility as specified in §483.12(a).  The facility must also promptly notify the resident and, if known, the resident's legal representative or interested family member when there is a change in room or roommate assignment as | F 157 | The statements made in this plan are not an admission to and do not constitute an agreement with the alleged deficiencies herein. To continue to remain in substantial compliance with State and Federal regulations, Heartland of Urbana has taken the actions set forth in this Plan of Correction.  F157 Notify of Changes The facility will continue to notify the Physician when a resident has no bowel movement for three days. | 8/3/10 |

ORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE

*signature*

TITLE

ADMINISTRATOR

(X8) DATE
7/16/18

iency statement ending with an asterisk (*) denotes a deficiency which the institution may be excused from correcting providing it is determined that
iguards provide sufficient protection to the patients. (See instructions.) Except for nursing homes, the findings stated above are disclosable 90 days
the date of survey whether or not a plan of correction is provided. For nursing homes, the above findings and plans of correction are disclosable 14
wing the date these documents are made available to the facility. If deficiencies are cited, an approved plan of correction is requisite to continued
participation.

4193216979          Anspach Meeks Ellenberger, LL          08:43:06 a.m.    12-24-2014    47/102
                                                            HEARTLAND/URBANA           PAGE  26/41

EPARTMENT OF HEALTH AND HUMAN SERVICES                                    PRINTED: 07/07/2010
ENTERS FOR MEDICARE & MEDICAID SERVICES                                   FORM APPROVED
                                                                          OMB NO. 0938-0391

| TEMENT OF DEFICIENCIES PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 365365 | A. BUILDING _____ B. WING _____ | 06/24/2010 |

VIE OF PROVIDER OR SUPPLIER

EARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| 157 | Continued From page 1 | F 157 | |

F 157  Continued From page 1

specified in §483.15(e)(2); or a change in resident rights under Federal or State law or regulations as specified in paragraph (b)(1) of this section.

The facility must record and periodically update the address and phone number of the resident's legal representative or interested family member.

This REQUIREMENT is not met as evidenced by:
Based on review of the clinical record and physician interview, the facility failed to notify the physician when a resident had no bowel movement for three or more days on multiple occasions over a two month period. This affected one (Resident #46) of 11 sampled residents.

Findings include:

Review of the clinical record diagnosis report for Resident #46 revealed diagnoses of dementia, obstructive hydrocephalus, constipation, depression, anxiety, asthma, atrial fibrillation, blurred vision, and malnutrition. She was hospitalized 05/05/10 through 05/10/10 for surgery (colostomy and gastric feeding tube). Review of the ADL (activity of daily living) worksheet completed by Nurse Aids for the month of March and April 2010 revealed the resident had a medium bowel movement (BM) on 03/02/10 and no BM until a small BM on 03/07/10 (five days). No bowel movement was documented again from 03/28/10 through 04/01/10 (four days), 04/03/10 through 04/06/10 (three days), 04/10/10 through 04/14/10 (four days), 04/16/10 through 04/10/10 (four days), 04/22/10 through 04/25/10 (three days) and

F 157

Resident #46 received a thorough abdominal assessment and clinical record has been updated to reflect the same. Resident #46 suffered no ill effects from a lack of bowel movements every three days. This said resident continues to receive medications to manage bowel function.

Like Residents received a thorough abdominal assessment and their clinical record has been updated to reflect the same by the ADNS/Deisignee. Physician was notified for bowel management measures if indicated by the ADNS/Designee..

Nursing Staff will be inserviced on abdominal assessment, proper documentation for recording of bowel movements, providing PRN laxatives, and proper notification to the Physician for a lack of bowel movements exceeding three days by the ADNS and or designee on or before 8/3/2010.

BM audit tool will be completed threes times a week for 4 weeks by the ADNS/Designee.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING | | 06/24/2010 |
| | | B. WING | | |

NAME OF PROVIDER OR SUPPLIER

EARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 157 | Continued From page 2 | F 157 | The quality assessment and assurance (QAA) committee will validate the actions taken are effectively resolving the cited issues and verify the dates of completion. | |
| | 04/27/10 through 04/30/10 (three days). Review of the physician orders revealed no routine medications for constipation and an order for milk of magnesia suspension 30 milliliters by mouth as needed for constipation. Review of the medication administration records revealed that the resident received no milk of magnesia during the months of March or April. | | | |
| | Review of nurses notes for the months of March and April 2010 revealed no information related to constipation. The record did not include physician notification regarding lack of bowel movements. | | | |
| | Interview of the attending physician of Resident #46 on 06/22/10 at 2:30 P.M. revealed he was her physician for for one week and was now aware of her constipation because of the history of bowel impaction. He stated he expected the nurses to monitor bowel movements and notify the physician if no bowel movements were noted for several days. | | | |
| 223 S=D | 483.13(b), 483.13(b)(1)(i) FREE FROM ABUSE/INVOLUNTARY SECLUSION | F 223 | F 223 Free From Abuse/Involuntary Seclusion | 8/3/10 |
| | The resident has the right to be free from verbal, sexual, physical, and mental abuse, corporal punishment, and involuntary seclusion. | | The facility will continue to ensure that Residents are free from verbal abuse. | |
| | The facility must not use verbal, mental, sexual, or physical abuse, corporal punishment, or involuntary seclusion. | | | |
| | This REQUIREMENT is not met as evidenced by: Based on review of the facility policy and procedures for Abuse, Neglect and | | Resident #13 received a thorough investigation to ensure the safety of said resident. Conclusions of the investigation do not support indications of verbal abuse. | |

MS-2567(02-99) Previous Versions Obsolete       Event ID: 5OBT11       Facility ID: OH00448       If continuation sheet Page 3 of 23

4193216979    Anspach Meeks Ellenberger, LL                                    08:43:45 a.m.    12-24-2014    49 /102
06/28/2011  16:18    937-653-6817              HEARTLAND/URBANA                              PAGE  22/41

| DEPARTMENT OF HEALTH AND HUMAN SERVICES | | | | PRINTED: 07/07/2010 |
| CENTERS FOR MEDICARE & MEDICAID SERVICES | | | | FORM APPROVED |
| | | | | OMB NO. 0938-0391 |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER. | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | | | 06/24/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 223 | Continued From page 3

Misappropriation of Patient Property Prevention, personnel file review and interview, the facility failed to ensure residents were free from verbal abuse. This affected two (Residents #13, #15) of five residents with self reported incidents (SRI) with allegations of verbal abuse.

Findings include:

1. Review of the SRI dated 09/21/10 revealed a staff member (unidentified) reported overhearing State Tested Nurse Aid (STNA) #75 cursing at Resident #13. The final report dated 09/25/09 indicated STNA #75 was suspended and an investigation revealed the resident was unaware of any situation. The investigation was not available for review.

Review of the personnel file for STNA #75 revealed a hire date of 08/04/09. The 90 day evaluation for the period of 08/04/09 through 11/04/09 documented she received a needs improvement evaluation for organization and completing tasks according to the job description. The evaluation indicated that she received coaching forms on 09/23/09 for failing to follow directions by a nurse to put a resident to bed before leaving the facility and 09/24/09 for failing to be sure that resident needs were met and last round care provided before rounds with the oncoming shift.

Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the investigation could not be located. She verified that the staff witness was not identified for interview and without the investigation could not be identified. She verified the facility conclusion stated that the resident was unaware of any | F 223 | Residents with allegations of abuse will have a thorough investigation completed with timely reporting to the appropriate agencies when indicated immediately by the Administrator/designee.

Administrator and ADNS educated on F 223 and completion of a thorough investigation by Clinical Consultant and or designee on or before 8/3/2010.

Staff will be inserviced on Residents Rights and Abuse, Neglect, and Misappropriation of Fund, and Nurses will be inserviced on proper documentation guidelines by the ADNS and or designee on or before 8/3/2010.

Abuse Audit Tool will be conducted 3 X week for four weeks by the Administrator/designee..

The quality assessment and assurance (QAA) committee will validate the actions taken are effectively resolving the cited issues and verify the dates of completion. | |

IS-2567(02-99) Previous Versions Obsolete                     Event ID: 8OBT11                     Facility ID: OH00448                     If continuation sheet Page 4 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| ATEMENT OF DEFICIENCIES D PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING _____ B. WING _____ | | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

EARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 223 | Continued From page 4 | F 223 | | |
| | situation. She verified the definition of verbal abuse according to the policy and procedure did not require the resident to be aware and that the final report indicated the incident was witnessed and reported by another staff member. She verified the personnel file of STNA #75 did not indicate additional abuse education or disciplinary action related to the 09/21/09 allegation of verbal abuse of a resident. | | | |
| | 2. Review of the SRI dated 11/06/09 revealed STNA #75 was overheard yelling at Resident #15. The incident was witnessed by the charge nurse and an STNA. The employee was suspended, the investigation was completed and the employee was terminated. | | | |
| | Interview with Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed the facility investigation concluded the incident had occurred. She verified that STNA #75 had been involved in an alleged incident of verbal abuse of a resident on 09/21/09 according to incidents reported to the State Agency by the facility. She verified that the report indicated that another STNA (unidentified) had witnessed and reported the previous incident. She verified that the .... personnel file of STNA #75 did not reflect that the incident had occurred and that the investigation could not be located for review. | | | |
| | Review of the facility policy and procedure for Abuse, Neglect and Misappropriation of Patient Property Prevention dated 04/21/06 revealed: each patient has the right to be free from and must not be subjected to abuse by anyone, including but not limited to facility staff, other patients, staff of other agencies serving the patient, family members, friends, or other | | | |

IS-2567(02-99) Previous Versions Obsolete          Event ID: 5OBT11          Facility ID: OH0044B          If continuation sheet Page 5 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED.
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 223 | Continued From page 6 <br><br> individuals. Verbal abuse was defined as oral, written or gestured language that willfully included disparaging and derogatory terms to patients or the families, or within hearing distance, regardless of their age, ability to comprehend, or disability. | F 223 | | |
| F 225 SS=D | 483.13(c)(1)(ii)-(iii), (c)(2) - (4) INVESTIGATE/REPORT ALLEGATIONS/INDIVIDUALS <br><br> The facility must not employ individuals who have been found guilty of abusing, neglecting, or mistreating residents by a court of law; or have had a finding entered into the State nurse aide registry concerning abuse, neglect, mistreatment of residents or misappropriation of their property; and report any knowledge it has of actions by a court of law against an employee, which would indicate unfitness for service as a nurse aide or other facility staff to the State nurse aide registry or licensing authorities. <br><br> The facility must ensure that all alleged violations involving mistreatment, neglect, or abuse, including injuries of unknown source and misappropriation of resident property are reported immediately to the administrator of the facility and to other officials in accordance with State law through established procedures (including to the State survey and certification agency). <br><br> The facility must have evidence that all alleged violations are thoroughly investigated, and must prevent further potential abuse while the investigation is in progress. <br><br> The results of all investigations must be reported to the administrator or his designated representative and to other officials in accordance | F 225 | F 225 Investigate/Report Allegations/Individuals <br> The facility will continue to ensure that allegations of verbal abuse are thoroughly investigated and reported to state survey and certification agencies within 5 days when indicated. <br><br> Resident #13 received a thorough investigation to ensure the safety of said resident. Conclusions of the investigation do not support indications of verbal abuse. <br><br> Residents with allegations of abuse will receive a thorough investigation and reported timely to the appropriate agencies immediately by the Administrator/designee. <br><br> Administrator and ADNS in serviced on F 225 by Clinical Consultant and or designee on or before 8/3/2010. | 8/3/10 |

CMS-2567(02-99) Previous Versions Obsolete          Event ID: 5O6T11          Facility ID: OH00448          If continuation sheet Page 6 of 23

4193216979     Anspach Meeks Ellenberger, LL                    08:44:42 a.m.    12-24-2014    52/102
       06/28/2011   16:18    937-653-6817              HEARTLAND/URBANA                PAGE  25/41

DEPARTMENT OF HEALTH AND HUMAN SERVICES                          PRINTED: 07/07/2010
CENTERS FOR MEDICARE & MEDICAID SERVICES                                FORM APPROVED
                                                                    OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 365365 | | 06/24/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 6<br><br>with State law (including to the State survey and certification agency) within 5 working days of the incident, and if the alleged violation is verified appropriate corrective action must be taken.<br><br>This REQUIREMENT is not met as evidenced by:<br>Based on review of the facility policy and procedures for Abuse, Neglect and Misappropriation of Patient Property Prevention, and interview, the facility failed to ensure that an allegation of verbal abuse was thoroughly investigated. This affected one (Resident #13) of five residents with Self Reported Incidents (SRI) involving allegations of verbal abuse.<br><br>Findings include:<br><br>Review of the SRI dated 09/21/10 revealed a staff member (unidentified) reported overhearing State Tested Nurse Aid (STNA) #75 cursing at Resident #13. The final report dated 09/25/09 indicated STNA #75 was suspended and an investigation revealed the resident was unaware of any situation. The investigation was not available for review.<br><br>Review of the personnel file for STNA #75 revealed a hire date of 08/04/09. The 90 day evaluation for the period of 08/04/09 through 11/04/09 documented she received a needs improvement evaluation for organization and completing tasks according to the job description. The evaluation indicated that she received coaching forms on 09/23/09 for failing to follow directions by a nurse to put a resident to bed before leaving the facility and 09/24/09 for failing | F 225 | Staff will be inserviced on Residents Rights and Abuse, Neglect, and Misappropriation of Fund, and Nurses will be inserviced on proper documentation guidelines and timely reporting by the ADNS and or designee on or before 8/3/2010.<br><br>Abuse Audit tool will be completed weekly x 4 weeks by the Administrator/Designee.<br><br>The quality assessment and assurance (QAA) committee will validate the actions taken are effectively resolving the cited issues and verify the dates of completion. | |

IS-2567(02-99) Previous Versions Obsolete          Event ID: 5OBT11          Facility ID: OH00448          If continuation sheet Page 7 of 23

4193216979    Anspach Meeks Ellenberger, LL    08:45:01 a.m.    12-24-2014    53 /102
06/28/2011  16:18    937-653-6817    HEARTLAND/URBANA    PAGE  26/41

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING _____ B. WING _____ | | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 7 | F 225 | | |

to be sure that resident needs were met and last round care provided before rounds with the oncoming shift.

Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the investigation could not be located. She verified that the staff witness was not identified for interview and without the investigation could not be identified. She verified the facility conclusion stated that the resident was unaware of any situation. She verified the definition of verbal abuse according to the policy and procedure did not require the resident to be aware and that the final report indicated the incident was witnessed and reported by another staff member. She verified the personnel file of STNA #75 did not indicate additional abuse education or disciplinary action related to the 09/21/09 allegation of verbal abuse of a resident.

Review of the facility policy and procedure for Abuse, Neglect and Misappropriation of Patient Property Prevention, dated 04/21/06, revealed on page six, that each patient has the right to be free from and must not be subjected to abuse by anyone, including but not limited to facility staff, other patients, staff of other agencies serving the patient, family members, friends, or other individuals. Verbal abuse was defined as oral, written or gestured language that willfully included disparaging and derogatory terms to patients or the families, or within hearing distance, regardless of their age, ability to comprehend, or disability. Page 10 indicated the facility must have evidence that all allegations are thoroughly investigated and must prevent any further potential abuse while the investigation proceeds. The allegation must be immediately reported to

FORM CMS-2567(02-99) Previous Versions Obsolete    Event ID: 5OBT11    Facility ID: OH00446    If continuation sheet Page 8 of 23

4193216979     Anspach Meeks Ellenberger, LL     08:45:18 a.m.    12-24-2014    54 /102
06/28/2011   16:18    937-653-6817        HEARTLAND/URBANA       PAGE 27/41

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 8 <br><br> the supervisor and abuse prevention coordinator and to other officials (including state survey and certification agency) in accordance with stated law, not to exceed 24 hours after discovery of the incident. | F 225 | | |
| F 226 SS=D | 483.13(c) DEVELOP/IMPLMENT ABUSE/NEGLECT, ETC POLICIES <br><br> The facility must develop and implement written policies and procedures that prohibit mistreatment, neglect, and abuse of residents and misappropriation of resident property. <br><br> This REQUIREMENT is not met as evidenced by: <br> Based on review of the facility policy and procedures for Abuse, Neglect and Misappropriation of Patient Property Prevention, and interview, the facility failed to ensure that the facility policy for Abuse, Neglect and Misappropriation of Patient Property Prevention was implemented to ensure that incidents were thoroughly investigated and that allegations were reported to the State agency immediately, within 24 hours. This affected two (#13, #15) of five residents with self reported incidents (SRI) involving allegations of verbal abuse. <br><br> Findings include: <br><br> Review of the facility policy and procedure for Abuse, Neglect and Misappropriation of Patient Property Prevention, dated 04/21/06, revealed on page six, that each patient has the right to be free from and must not be subjected to abuse by anyone, including but not limited to facility staff, other patients, staff of other agencies serving the patient, family members, friends, or other | F 226 | F 226 <br> Develop/Implement/abuse/Neglect, ETC Policies <br> The facility will continue to ensure that the facility policy for Residents Rights and Abuse, Neglect, and Misappropriation of patient funds are implement to ensure that incidents are thoroughly investigated and that allegations are reported to state agencies immediately, within 24 hours. <br><br> Resident #13 received a thorough investigation to ensure the safety of said resident. Conclusions of the investigation do not support indications of verbal abuse. <br><br> Resident #15 received a thorough investigation to ensure the safety of said resident. <br><br> Residents with allegations of abuse will receive a thorough investigation and reported timely to the appropriate agencies immediately by the Administrator/Designee.. | 8/3/10 |

MS-2567(02-99) Previous Versions Obsolete     Event ID: 5OBT11     Facility ID: OH00448     If continuation sheet Page 9 of 23

4193216 Abby...Ellenberger...
06/28/2011  16:18    937-653-6817    08:45:38 a.m.  12-24-2014   55/102

HEARTLAND/URBANA    PAGE  28/41

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING _____ B. WING _____ | | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH  43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 226 | Continued From page 9 | F 226 | | |

F 226 | individuals. Verbal abuse was defined as oral, written or gestured language that willfully included disparaging and derogatory terms to patients or the families, or within hearing distance, regardless of their age, ability to comprehend, or disability. Page 10 indicated the facility must have evidence that all allegations are thoroughly investigated and must prevent any further potential abuse while the investigation proceeds. The allegation must be immediately reported to the supervisor and abuse prevention coordinator and to other officials (including state survey and certification agency) in accordance with stated law, not to exceed 24 hours after discovery of the incident.

1. Review of the facility reported incident of 09/21/10 revealed that a staff member (unidentified) had reported overhearing State tested nurse aid (STNA) #75 cursing at Resident #13. The final report dated 09/25/09 indicated that the employee was suspended and an investigation revealed that the resident was unaware of any situation. The investigation was not located or provided for review.

Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the investigation could not be located. She verified that the staff witness was not identified for interview and without the investigation could not be identified. She verified the facility conclusion stated that the resident was unaware of any situation. She verified the definition of verbal abuse according to the policy and procedure did not require the resident to be aware of comprehend and that the final report indicated incident had been witnessed and reported by another staff member. She verified that the

F 226 | Administrator and ADNS will be educated on F Tag 226 by Clinical Consultant and or designee on or before 8/3/2010.

Staff will be inserviced on Residents Rights and Abuse, Neglect, and Misappropriation of Fund, and Nurses will be inserviced on proper documentation guidelines and timely reporting by the ADNS and or designee on or before 8/3/2010.

Abuse Audit tool will be completed weekly x 4 weeks by the Administrator/designee
The quality assessment and assurance (QAA) committee will validate the actions taken are effectively resolving the cited issues and verify the dates of completion.

FORM CMS-2567(02-99) Previous Versions Obsolete    Event ID:5O8T11    Facility ID: OH00448    If continuation sheet Page  10 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES                         PRINTED: 07/07/2010
CENTERS FOR MEDICARE & MEDICAID SERVICES                        FORM APPROVED
                                                                OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 365365 | A. BUILDING _____ B. WING _____ | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 226 | Continued From page 10 | F 226 | | |
| | personnel file of STNA #75 did not indicate additional abuse education or disciplinary action related to the 09/21/09 allegation of verbal abuse of a resident. | | | |
| | 2. Review of the facility reported incident of 11/06/09 which was reported to the state agency on 11/09/09 revealed that STNA #75 was overheard yelling at Resident #15. The incident was witnessed by the charge nurse and an STNA. The employee was suspended, the investigation was completed and the employee was terminated. | | | |
| | Interview of the Corporate Registered Nurse #72 on 06/24/10 at 1:45 P.M. revealed that the facility investigation concluded the incident had occurred on 11/06/09 and was reported to the State Agency on 11/09/09. The final report sent to the state agency on 11/13/09 indicated that STNA#75 had been terminated on 11/20/09. She verified that STNA #75 had been named in an alleged incident of verbal abuse of a resident on 09/21/09 according to incidents reported to the State Agency by the facility. She verified that the report indicated that another STNA (unidentified) had witnessed and reported the previous incident. She verified that the personnel file of STNA #75 did not reflect that the incident had occurred and that the investigation could not be located for review. | | | |
| F 272 I=D | 483.20, 483.20(b) COMPREHENSIVE ASSESSMENTS | F 272 | F 272 Comprehensive Assessments The facility will continue to ensure comprehensive assessment for change in condition and bowel function. | 8/3/10 |
| | The facility must conduct initially and periodically a comprehensive, accurate, standardized reproducible assessment of each resident's functional capacity. | | Residents # 46 and # 26 received a thorough abdominal assessment and | |

FORM CMS-2567(02-99) Previous Versions Obsolete        Event ID:5O8T11        Facility ID: OH00448        If continuation sheet Page  11 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING ___ B. WING ___ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

EARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 272 | Continued From page 11

A facility must make a comprehensive assessment of a resident's needs, using the RAI specified by the State. The assessment must include at least the following:
Identification and demographic information;
Customary routine;
Cognitive patterns;
Communication;
Vision;
Mood and behavior patterns;
Psychosocial well-being;
Physical functioning and structural problems;
Continence;
Disease diagnosis and health conditions;
Dental and nutritional status;
Skin conditions;
Activity pursuit;
Medications;
Special treatments and procedures;
Discharge potential;
Documentation of summary information regarding the additional assessment performed through the resident assessment protocols; and
Documentation of participation in assessment.

This REQUIREMENT is not met as evidenced by:
Based on record review and staff interview, the facility failed to ensure assesses residents were assessed for change in condition and bowel function. This affected two (Residents #26 and #46) of 11 sampled residents.

Finding included;

1. Review of the June 2010 physician order sheet revealed Resident #26 had diagnoses which included diabetes, muscular dystrophy, | F 272 | clinical record has been updated to reflect the same. Resident # 46 and # 26 suffered no ill effects from a lack of bowel movements every three days. These said residents continue to receive medications to manage bowel function.

Like Residents received a though abdominal assessment and their clinical record has been updated to reflect the same by the ADNS/Designee. Physician was notified for bowel management measures if indicated by the ADNS/Designee.

Nursing Staff will be inserviced on proper abdominal assessing, documentation guidelines for recording of bowel movements, and proper notification to the Physician for condition change by the ADNS and or designee on or before 8/3/2010.

BM Audit Tool will be completed three times a week for 4 weeks by the ADNS/Designee. | |

AS-2667(02-99) Previous Versions Obsolete                Event ID: 6OBT11                Facility ID: OH00448              If continuation sheet Page 12 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES                                    PRINTED: 07/07/2010
CENTERS FOR MEDICARE & MEDICAID SERVICES                                   FORM APPROVED
                                                                           OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 272 | Continued From page 12<br><br>osteomyelitis and chronic kidney disease. The minimum data set (MDS) assessment dated 05/13/10 revealed the resident had no short or long term memory impairment, had difficulty with decisions in new situations, required extensive to total care for activities of daily living, had a suprapubic urinary drainage catheter and pressure ulcers. Nursing notes dated 06/11/10 at 5:00 A.M. stated Resident #26 complained of abdominal pain. His abdomen was distended. Bowel sounds were present in all four quadrants. There was no documentation that vital signs were assessed. Pain medication was given at that time. There was no documentation that the resident was reassessed until nursing notes dated 06/11/10 at 11:30 P.M., which identified the resident complained of abdominal pain. The resident's abdomen was distended, hard, firm, red, and warm to touch. His abdomen appeared three time larger than normal. The resident stated he could not eat due to pain and cramping. Pain medications were given but were not effective. The physician was notified at 11:30 P.M. and ordered the resident sent to the emergency room. The ambulance was called, arrived at 12:05 A.M., and the resident admitted to the hospital.<br><br>During an interview on 6/22/10 at 1:00 PM, LPN #55 verified the resident was not reassessed in a timely manner.<br><br>2. Review of the clinical record diagnosis report for Resident #46 revealed diagnoses of dementia, obstructive hydrocephalus, constipation, depression, anxiety, asthma, atrial fibrillation, blurred vision, and malnutrition. She was admitted on 02/16/08 and resided on the secured | F 272 | The quality assessment and assurance (QAA) committee will validate the actions taken are effectively resolving the cited issues and verify the dates of completion. | |

MS-2567(02-99) Previous Versions Obsolete          Event ID: 5OBT11          Facility ID: OH00448          If continuation sheet Page 13 of 23

DEPARTMENT OF HEALTH AND HUMAN SERVICES                          PRINTED: 07/07/2010
CENTERS FOR MEDICARE & MEDICAID SERVICES                         FORM APPROVED
                                                                 OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING _____ B. WING _____ | | 06/24/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 272 | Continued From page 13

unit. She had recently been hospitalized 05/05/10 through 05/10/10 for surgery to place a colostomy and a gastric feeding tube. Review of the ADL (activity of daily living) worksheet, completed by the Nurse Aids, for the month of March and April revealed that she had an irregular bowel movement pattern. In March 2010 and April 2010 she had no bowel movement documented for four days from a medium size BM on 03/02/10 until a small size BM on 03/07/10. No bowel movement was documented again from 03/14/10 through 03/16/10, 03/20/10 through 03/22/10, 03/28/10 through 04/03/10 through 04/05/10, 04/10/10 through 04/14/10, 04/16/10 through 04/10/10 04/22/10 through 04/25/10 and 04/27/10 through 04/30/10. Review of the physician orders revealed no bowel medications (laxatives) were ordered routinely. Review of the as needed medication orders revealed an order for milk of magnesia suspension 30 milliliters by mouth as needed. Review of the medication administration records revealed that she received no milk of magnesia during the months of March or April.

Review of the nurses notes for the months of March and April 2010 revealed no information related to constipation. The record was silent to any indication that Resident #46 had irregular bowel movements. There was no entry to indicate assessment of her abdomen or analysis of bowel movement pattern.

Interview of the attending physician of Resident #46 on 06/22/10 at 2:30 P.M. revealed that he had only been her attending physician for about one week. He stated that he was aware of her issues with constipation because he had reviewed the record as she had history of bowel impaction. He stated he expected nurses to | F 272 | | |

CMS-2567(02-99) Previous Versions Obsolete          Event ID: 5OBT11          Facility ID: OH00448          If continuation sheet Page 14 of 23

4193216979          Anspach Meeks Ellenberger, LL          08:47:11 a.m.     12-24-2014      60 /102
06/28/2011   16:18      937-653-6817                    HEARTLAND/ URBANA                  PAGE   33/41

DEPARTMENT OF HEALTH AND HUMAN SERVICES                                          PRINTED: 07/07/2010
CENTERS FOR MEDICARE & MEDICAID SERVICES                                         FORM APPROVED
                                                                                 OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 272 | Continued From page 14 monitor and assess bowel movements. Interview of Registered Nurse Consultant #72 on 06/22/10 at 3:15 P.M. revealed that the facility had no written bowel protocol or policy. She stated bowel movements were recorded daily by nurse aids and tracked by the nurses. She stated that any abdominal or bowel assessment performed would be one documented in the nurses notes. During further interview of Registered Nurse #72 on 06/23/10 at 10:30 A.M. she verified that no assessment of Resident #46's bowel function or pattern of constipation had been documented in the nurses notes in March or April 2010. | F 272 | | |
| F 309 SS=E | 483.25 PROVIDE CARE/SERVICES FOR HIGHEST WELL BEING Each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care. This REQUIREMENT is not met as evidenced by: Based on review of the clinical record, staff interview and physician interview, the facility failed to ensure residents received timely bowel management, antibiotic therapy and emergency services. This affected three (Residents #46, #23 and #26) of 11 sampled residents. Findings include: | F 309 | F309 Provide Care/Services for Highest Well Being The facility will continue to ensure residents receive timely bowel movements, antibiotic therapy and emergency treatment. Residents # 46and # 26 received a though abdominal assessment and clinical record has been updated to reflect the same. Resident # 46 and # 26 suffered no ill effects from a lack of bowel movements every three days. These said residents continue to receive medications to manage bowel function. | 8/3/10 |

DEPARTMENT OF HEALTH AND HUMAN SERVICES                                    PRINTED: 07/07/2010
CENTERS FOR MEDICARE & MEDICAID SERVICES                                   FORM APPROVED
                                                                           OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING<br>B. WING | | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 309 | Continued From page 15<br><br>1. Review of the clinical record diagnosis report for Resident #46 revealed diagnoses of dementia, obstructive hydrocephalus, constipation, depression, anxiety, asthma, atrial fibrillation, blurred vision, and malnutrition. She was hospitalized 05/05/10 through 05/10/10 for surgery (colostomy and gastric feeding tube). Review of the ADL (activity of daily living) worksheet completed by Nurse Aids for the month of March and April 2010 revealed the resident had a medium bowel movement (BM) on 03/02/10 and no BM until a small BM on 03/07/10 (five days). No bowel movement was documented again from 03/28/10 through 04/01/10 (four days), 03/10/10 through 04/06/10 (three days), 04/10/10 through 04/14/10 (four days), 04/16/10 through 04/10/10 (four days), 04/22/10 through 04/25/10 (three days) and 04/27/10 through 04/30/10 (three days). Review of the physician orders revealed no routine medications for constipation and an order for milk of magnesia suspension 30 milliliters by mouth as needed for constipation. Review of the medication administration records revealed that the resident received no milk of magnesia during the months of March or April.<br><br>Review of nurses notes for the months of March and April 2010 revealed no information related to constipation, including assessment and analysis of bowel movement patterns. The record did not include physician notification regarding lack of bowel movements.<br><br>Interview of the attending physician of Resident #46 on 06/22/10 at 2:30 P.M. revealed the resident had a history of bowel impaction. He stated he expected nurses to monitor bowel movements and notify physicians if no bowel | F 309 | Resident # 23 suffered no ill effects from receiving ordered medications on dates received.<br><br>Facility audit of orders for laboratory services will be completed on or before 8/3/2010 by the ADNS/Designee.<br><br>Like Resident received a though abdominal assessment and their clinical record has been updated to reflect the same. Physician was notified for bowel management measures if indicated by the ADNS/Designee.<br><br>Nursing Staff will be inserviced on proper abdominal assessing, documentation guidelines for recording of bowel movements, proper notification to the Physician for condition change, and timely obtaining/treating of laboratory orders by the ADNS and or designee on or before 8/3/2010.<br><br>Abdominal Assessment/Notification Audit will he completed three times a week for 4 weeks by the ADNS/Designee. | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES ID PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365385 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|---|

AME OF PROVIDER OR SUPPLIER

IEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH  43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 309 | Continued From page 16<br><br>movements were noted for several days.<br><br>Interview of Registered Nurse Consultant #72 on 06/22/10 at 3:15 P.M. revealed the facility had no written bowel protocol or policy. She stated that there was no standing orders for treatment of constipation. She stated that the medical directors preference was to notify the attending physicians individually if a resident had no bowel movement for three days and the physician could address each instance individually. She stated that the bowel movements were recorded daily by the nurse aids and tracked by the nurses. She stated that any abdominal or bowel assessment performed would be documented in the nurses notes. Further interview of Registered Nurse #72 on 06/23/10 at 10:30 A.M. revealed no assessment off Resident #46's bowel function or pattern of constipation was documented in the nurses notes in March or April 2010, no laxative was administered during that time and the nurses notes were silent to notification of the physician of the lack of bowel movements.<br><br>2. Review of the June 2010 physician order sheet revealed Resident #26 had diagnoses which included diabetes, muscular dystrophy, osteomyelitis and chronic kidney disease. The minimum data set (MDS) assessment dated 05/13/10 revealed the resident had no short or long term memory impairment, had difficulty with decisions in new situations, required extensive to total care for activities of daily living, had a suprapubic urinary drainage catheter and pressure ulcers. Nursing notes dated 06/11/10 at 5:00 A.M. stated Resident #26 complained of abdominal pain. His abdomen was distended. Bowel sounds were present in all four quadrants. There was no documentation that vital signs were | F 309 | The quality assessment and assurance (QAA) committee will validate the actions taken are effectively resolving the cited issues and verify the dates of completion. | |

MS-2567(02-99) Previous Versions Obsolete          Event ID:5OBT11          Facility ID: OH00448          If continuation sheet Page 17 of 23

4193216979          Anspach Meeks Ellenberger, LL                    08:48:10 a.m.    12-24-2014      63 /102

DEPARTMENT OF HEALTH AND HUMAN SERVICES                                         PRINTED: 07/07/2010
CENTERS FOR MEDICARE & MEDICAID SERVICES                                         FORM APPROVED
                                                                                OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | | A. BUILDING | | |
| | 365385 | B. WING | | 06/24/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET |
| | URBANA, OH  43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 309 | Continued From page 17 | F 309 | | |
| | assessed. Pain medication was given at that time. There was no documentation that the resident was reassessed until nursing notes dated 06/11/10 at 11:30 P.M., which identified the resident complained of abdominal pain. The resident's abdomen was distended, hard, firm, red, and warm to touch. His abdomen appeared three time larger than normal. The resident stated he could not eat due to pain and cramping. Pain medications were given but were not effective. The physician was notified at 11:30 P.M. and ordered the resident sent to the emergency room. The ambulance was called, arrived at 12:05 A.M., and the resident admitted to the hospital. | | | |
| | During an interview on 6/22/10 at 1:00 PM, LPN #55 verified the resident was not reassessed in a timely manner and emergency care was delayed. | | | |
| | 3.   Review of physician orders for May 2010 revealed Resident #23 had diagnoses including Alzheimer's dementia and chronic lymphocytic leukemia. Review of nursing notes dated 05/02/10 at 7:45 PM revealed the physician ordered a culture of the resident's right eye due to increased drainage. Laboratory results revealed the specimen was obtained on 05/08/10 at 10:30 A.M., results were returned to the facility on 05/11/10 and Resident #23 was not started on antibiotic eye medication until 05/20/10. This was confirmed by LPN #55 on 06/22/10 at 1:00 PM. | | | |
| | During interview on 06/22/10 at 2:30 P.M., the Medical Director (MD) stated, unless specified otherwise, laboratory specimens should be obtained within one day of the physician order. The MD affirmed antibiotic therapy was delayed. | | | |
| 329 | 483.25(l) DRUG REGIMEN IS FREE FROM | F 329 | | |

CMS-2567(02-99) Previous Versions Obsolete          Event ID: 5OBT11          Facility ID: OH00446          If continuation sheet Page 18 of 23

4193216979        Anspach Meeks Ellenberger, LL                                      08:48:30 a.m.    12-24-2014        64 /102
06/28/2011   16:18      937-653-6817                     HEARTLAND/URBANA                                  PAGE  37/41

DEPARTMENT OF HEALTH AND HUMAN SERVICES                                          PRINTED: 07/07/2010
CENTERS FOR MEDICARE & MEDICAID SERVICES                                             FORM APPROVED
                                                                                  OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING _____<br>B. WING _____ | | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 329<br>SS=D | Continued From page 18<br>UNNECESSARY DRUGS<br><br>Each resident's drug regimen must be free from unnecessary drugs. An unnecessary drug is any drug when used in excessive dose (including duplicate therapy); or for excessive duration; or without adequate monitoring; or without adequate indications for its use; or in the presence of adverse consequences which indicate the dose should be reduced or discontinued; or any combinations of the reasons above.<br><br>Based on a comprehensive assessment of a resident, the facility must ensure that residents who have not used antipsychotic drugs are not given these drugs unless antipsychotic drug therapy is necessary to treat a specific condition as diagnosed and documented in the clinical record; and residents who use antipsychotic drugs receive gradual dose reductions, and behavioral interventions, unless clinically contraindicated, in an effort to discontinue these drugs.<br><br><br>This REQUIREMENT is not met as evidenced by:<br>Based on clinical record review, staff interviews and review of facility policy, the facility failed to document adequate indication of use for an as needed narcotic anti-anxiety medication and failed to document non-pharmacological interventions prior to administering an as needed narcotic pain medication. This affected two (Residents #1 and #10) of 11 sampled residents. | F 329 | F 329 Drug Regimen is free from Unnecessary Drugs<br>The facility will continue to document adequate indication for use of PRN ant anxiety medications and non-pharmacological interventions prior to the administration of PRN pain medication<br><br>Resident #1 and # 10 suffered no ill-effects from receiving physician ordered medications.<br>Residents receiving PRN medications have been reviewed for appropriate documentation of indication for use of PRN medications as well as non-pharmacological interventions to be provided prior to administration of PRN medications by the ADNS/designee.<br><br>Nurses will be inserviced on proper documentation of indications of use and non-pharmacological interventions prior to the administration of PRN medications by the ADNS or designee on or before 8/3/2010 | 8/3/10 |

CMS-2567(02-99) Previous Versions Obsolete          Event ID:5OBT11          Facility ID: OH00448          If continuation sheet Page 19 of 23

4193216979          Anspach Meeks Ellenberger, LL                                    08:48:49 a.m.    12-24-2014      65 /102
        06/28/2011   16:18   937-653-6817                        HEARTLAND/URBANA                              PAGE   38/41

DEPARTMENT OF HEALTH AND HUMAN SERVICES                                              PRINTED: 07/07/2010
CENTERS FOR MEDICARE & MEDICAID SERVICES                                             FORM APPROVED
                                                                                     OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | | A. BUILDING | | |
| | 365365 | B. WING | | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 329 | Continued From page 19<br><br>Findings include:<br><br>1. Review of the Admission Record for Resident #1 revealed an admission date of 01/18/08. Review of the Diagnosis Report revealed diagnosis which included chronic obstructive pulmonary disorder, anxiety, diabetes, dementia, schizophrenia, psychosis, elevated blood pressure, congestive heart failure, depression and obesity. Review of the Minimum Data Set (MDS) assessment dated 04/22/10 revealed Resident #1 had difficulty remembering short and long term memories and was moderately cognitively impaired.<br><br>Review of the Plan of Care regarding pain for Resident #1 dated 03/25/10 stated non-pharmacological interventions for pain included: redirect with television; reposition; offer comfort foods prior to administering the pain medication. Review of Plan of Care regarding anti-anxiety medication state to monitor mood, assure basic needs are met, offer to decrease environmental stimulus by offering to close blinds, and offer soft music are to be tried prior to administering the anti-anxiety medication.<br><br>Review of the Medication Administration Record (MAR) for June, 2010 revealed an order for .25 milligrams (mg) of Alprazolam (Xanax - anti-anxiety medication) as needed (prn) every eight hours. Further review of the MAR revealed the medication had been administered 18 times in June. Continued review of the MAR revealed no documentation as to why the medication had been administered on these dates. Review of the nurse's notes during this period revealed no documentation as to why the medication had been administered or what behaviors the resident | F 329 | Psychotropic Medication Audit will be completed 3 time's per week for 4 weeks by the ADNS/designee.,<br><br>The quality assessment and assurance (QAA) committee will validate the actions taken are effectively resolving the cited issues and verify the dates of completion | |

MS-2567(02-99) Previous Versions Obsolete          Event ID: 9OBT11          Facility ID: OH00448          If continuation sheet Page 20 of 23

4193216979          Anspach Meeks Ellenberger, LL          08:49:08 a.m.     12-24-2014        66 /102

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 365365 | A. BUILDING _____ B. WING _____ | | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

HEARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 329 | Continued From page 20 was exhibiting.<br><br>Continued review of the MAR for June, 2010 revealed an order dated 01/18/10 for hydrocodone/APAP 5-500 (Vicodin – narcotic analgesic) every six hours prn for moderate to severe pain. Review of the MAR revealed the medication was administered 11 times June with no documentation as to what non-pharmacological interventions had been tried prior to administering the medication.<br><br>2. Review of the Admission Record for Resident #10 revealed an admission date of 01/03/09. Review of the Diagnosis Record revealed diagnosis which included dementia with delusions, hearing loss, brain cancer, epilepsy, and history of craniotomy. Review of the MDS dated 04/12/10 revealed Resident #10 had difficulty remembering short term memories and was moderately cognitively impaired.<br><br>Review of the Plan of Care regarding pain for Resident #10 dated 04/12/10 stated non-pharmacological interventions of activities, reposition, and comfort foods are to be tried prior to administering the pain medication. Review of the Plan of Care regarding anti-anxiety medications states monitor mood, assure basic needs are met, and encourage resident to go to activities prior to administering the anti-anxiety medication.<br><br>Review of the Medication Administration Record (MAR) dated June, 2010 revealed an order dated 01/05/10 for .5 milligrams (mg.) of Lorazepam (Ativan - anti-anxiety medication) prn every six hours. Further review of the MAR revealed the medication was administered nine times in June. | F 329 | | |

MS-2567(02-99) Previous Versions Obsolete          Event ID: 6OBT11          Facility ID: OH00448          If continuation sheet Page 21 of 23

HEARTLAND/ URBANA                    PAGE    40/41

DEPARTMENT OF HEALTH AND HUMAN SERVICES                              PRINTED: 07/07/2010
CENTERS FOR MEDICARE & MEDICAID SERVICES                            FORM APPROVED
                                                                    OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 365365 | A. BUILDING _____ B. WING _____ | 06/24/2010 |

NAME OF PROVIDER OR SUPPLIER

EARTLAND OF URBANA

STREET ADDRESS, CITY, STATE, ZIP CODE
741 E WATER STREET
URBANA, OH 43078

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 329 | Continued From page 21 | F 329 | | |
| | Continued review of the MAR revealed no documentation as to why the medication had been administered on these dates. Review of the nurse's notes during this period revealed no documentation as to why the medication had been administered or what behaviors the resident was exhibiting. Review of the MAR revealed the Vicodin was administered 15 times in June with no documentation as to what non-pharmacological interventions had been tried prior to administering the medication. | | | |
| | In an interview on 06/22/10 at 1:40 P.M., Registered Nurse (R.N.) #85 stated the nurses were to document every time why any prn medications were administered, including what behaviors the resident demonstrated and what non-pharmacological interventions were tried prior to administering the medication. RN #65 further verified there was no documentation of any behaviors or non-pharmacological interventions tried prior to administering the above medications for both of these residents. Review of the facility policy regarding medication administration dated 03/2010 revealed Suggested Documentation included unusual observations or complaints and subsequent interventions. | | | |
| 502 S=D | 483.75(j)(1) PROVIDE/OBTAIN LABORATORY SVC-QUALITY/TIMELY | F 502 | F 502 Provide/Obtain Laboratory Services-Quality/Timely The facility will continue to obtain laboratory orders in a timely manner as per facility guidelines. | 8/3/10 |
| | The facility must provide or obtain laboratory services to meet the needs of its residents. The facility is responsible for the quality and timeliness of the services. | | | |
| | This REQUIREMENT is not met as evidenced by: Based on record review, staff interview and | | Resident # 23 laboratory culture was obtained and this said resident received Physician ordered treatment. | |

MS-2567(02-99) Previous Versions Obsolete          Event ID: 5OBT11          Facility ID: OH00448          If continuation sheet Page 22 of 23

4193216979          Anspach Meeks Ellenberger, LL          08:49:43 a.m.     12-24-2014        68 /102

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 07/07/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 365365 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | | (X3) DATE SURVEY COMPLETED 06/24/2010 |
|---|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HEARTLAND OF URBANA | 741 E WATER STREET URBANA, OH 43078 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 502 | Continued From page 22

physician interview, the facility failed to timely obtain laboratory services for Resident #23.

Findings included;

Review of physician orders for May 2010 revealed Resident #23 had diagnoses including Alzheimer's dementia and chronic lymphocytic leukemia. Review of nursing notes dated 05/02/10 at 7:45 PM revealed the physician ordered a culture of the resident's right eye due to increased drainage. Laboratory results revealed the specimen was obtained on 05/08/10 at 10:30 A.M., results were returned to the facility on 05/11/10 and Resident #23 was not started on antibiotic eye medication until 05/20/10. This was confirmed by LPN #55 on 06/22/10 at 1:00 PM.

During interview on 06/22/10 at 2:30 P.M., the Medical Director stated, unless specified otherwise, laboratory specimens should be obtained within one day of the physician order. | F 502 | The facility will conduct an audit of orders for laboratory services to ensure quality / timely laboratory services and treatment on or before 8/3/2010 by the ADNS/Designee

Nursing Staff will be inserviced on obtaining timely laboratory services, notification to the Physician and timely treatment by the ADNS and or designee on or before 8/3/2010.

Lab Audit Tool will be completed three times a week x 1 month by the ADNS/Designee.

The quality assessment and assurance (QAA) will validate the actions taken are effectively resolving the cited issues and verify the dates of completion. | |

CMS-2567(02-99) Previous Versions Obsolete          Event ID:5OBT11          Facility ID: OH00448          If continuation sheet Page 23 of 23

4193216979          Anspach Meeks Ellenberger, LL                    08:50:00 a.m.     12-24-2014          69 /102

(130th General Assembly)
(Substitute House Bill Number 290)

# AN ACT

To amend sections 2305.113, 2901.12, 3313.75, 3313.76, 3313.77, 3313.78, 3721.02, and 5165.67 and to enact sections 1901.028, 1907.04, 2301.04, 2501.20, and 3313.791 of the Revised Code regarding the use of school district premises by members of the public and immunity from civil liability for a school district and schools when permitting members of the public to use school premises, regarding the use of results of an inspection of a nursing home or the results of a Medicare or Medicaid survey of a nursing facility in an advertisement, regarding the continued orderly operation of the courts in case of a disaster, civil disorder, or other extraordinary circumstance, and regarding the limitation of claims arising out of skilled nursing care or personal care services provided in a home.

*Be it enacted by the General Assembly of the State of Ohio:*

SECTION 1. That sections 2305.113, 2901.12, 3313.75, 3313.76, 3313.77, 3313.78, 3721.02, and 5165.67 be amended and sections 1901.028, 1907.04, 2301.04, 2501.20, and 3313.791 of the Revised Code be enacted to read as follows:

Sec. 1901.028. (A) In the event of a natural or man-made disaster, civil disorder, or any extraordinary circumstance that interrupts or threatens to interrupt the orderly operation of a municipal court within the territorial jurisdiction of the court, the administrative judge of the court may issue an order authorizing the court to operate at a temporary location inside or outside the territorial jurisdiction of the court. The order shall identify the temporary location at which the court shall operate and the date on which operations shall commence at the temporary location. The court shall operate at the temporary location until the administrative judge withdraws,

Sub. H. B. No. 290

2

130th G.A.

cancels, or rescinds the order.

(B) The authority of an administrative judge of a municipal court to issue an order authorizing the court to operate at a temporary location pursuant to division (A) of this section is independent of and shall not be conditioned upon a declaration of a judicial emergency issued by the chief justice of the supreme court pursuant to Rule 14 of the Rules of Superintendence for the Courts of Ohio.

(C) For the period during which a municipal court operates in a temporary location pursuant to division (A) of this section, the court shall continue to have the territorial jurisdiction set forth in section 1901.02 of the Revised Code and the court shall have jurisdiction to hear actions and conduct proceedings the same as if the court were operating within that territorial jurisdiction.

(D) As soon as practicable following issuance of an order pursuant to division (A) of this section, both of the following shall occur:

(1) The administrative judge of the municipal court shall provide notice and a copy of the order by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the court operates and maintains a web site, the web site shall provide notification of the operation of the court at the temporary location, including the site of the temporary location and the date on which operations shall commence at the temporary location.

(E) As soon as practicable following the withdrawal, cancellation, or rescission of an order issued pursuant to division (A) of this section, each of the following shall occur:

(1) The administrative judge of the municipal court shall provide notice by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the court operates and maintains a web site, the web site shall provide notification of the operation of the court at the permanent location

Sub. H. B. No. 290

3

130th G.A.

of the court, including the site of the permanent location and the date on which operations shall commence at the permanent location.

Sec. 1907.04. (A) In the event of a natural or man-made disaster, civil disorder, or any extraordinary circumstance that interrupts or threatens to interrupt the orderly operation of a county court within the territorial jurisdiction of the court, the administrative judge of the court may issue an order authorizing the court to operate at a temporary location inside or outside the territorial jurisdiction of the court. The order shall identify the temporary location at which the court shall operate and the date on which operations shall commence at the temporary location. The court shall operate at the temporary location until the administrative judge withdraws, cancels, or rescinds the order.

(B) The authority of an administrative judge of a county court to issue an order authorizing the court to operate at a temporary location pursuant to division (A) of this section is independent of and shall not be conditioned upon a declaration of a judicial emergency issued by the chief justice of the supreme court pursuant to Rule 14 of the Rules of Superintendence for the Courts of Ohio.

(C) For the period during which a county court operates in a temporary location pursuant to division (A) of this section, the court shall continue to have the territorial jurisdiction set forth in section 1907.01 of the Revised Code and the court shall have jurisdiction to hear actions and conduct proceedings the same as if the court were operating within that territorial jurisdiction.

(D) As soon as practicable following issuance of an order pursuant to division (A) of this section, both of the following shall occur:

(1) The administrative judge of the county court shall provide notice and a copy of the order by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the court operates and maintains a web site, the web site shall provide notification of the operation of the court at the temporary location, including the site of the temporary location and the date on which operations shall commence at the temporary location.

(E) As soon as practicable following the withdrawal, cancellation, or rescission of an order issued pursuant to division (A) of this section, each of

Sub. H. B. No. 290

4

130th G.A.

the following shall occur:

(1) The administrative judge of the county court shall provide notice by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the court operates and maintains a web site, the web site shall provide notification of the operation of the court at the permanent location of the court, including the site of the permanent location and the date on which operations shall commence at the permanent location.

Sec. 2301.04. (A) In the event of a natural or man-made disaster, civil disorder, or any extraordinary circumstance that interrupts or threatens to interrupt the orderly operation of a division of a court of common pleas within the territorial jurisdiction of the division, the administrative judge of the division may issue an order authorizing the division to operate at a temporary location inside or outside the territorial jurisdiction of the division. The order shall identify the temporary location at which the division shall operate and the date on which operations shall commence at the temporary location. The division shall operate at the temporary location until the administrative judge withdraws, cancels, or rescinds the order.

(B) The authority of an administrative judge of a division of a court of common pleas to issue an order authorizing the division to operate at a temporary location pursuant to division (A) of this section is independent of and shall not be conditioned upon a declaration of a judicial emergency issued by the chief justice of the supreme court pursuant to Rule 14 of the Rules of Superintendence for the Courts of Ohio.

(C) For the period during which a division of a court of common pleas operates in a temporary location pursuant to division (A) of this section, the division shall continue to have the territorial jurisdiction set forth in section 2301.01 of the Revised Code and the court shall have jurisdiction to hear actions and conduct proceedings the same as if the division were operating within that territorial jurisdiction.

(D) As soon as practicable following issuance of an order pursuant to division (A) of this section, both of the following shall occur:

(1) The administrative judge of the division of the court of common pleas shall provide notice and a copy of the order by regular or electronic mail to all of the following:

Sub. H. B. No. 290                                        130th G.A.

5

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the division operates and maintains a web site, the web site shall provide notification of the operation of the division at the temporary location, including the site of the temporary location and the date on which operations shall commence at the temporary location.

(E) As soon as practicable following the withdrawal, cancellation, or rescission of an order issued pursuant to division (A) of this section, each of the following shall occur:

(1) The administrative judge of the division of the court of common pleas shall provide notice by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the division operates and maintains a web site, the web site shall provide notification of the operation of the division at the permanent location of the division, including the site of the permanent location and the date on which operations shall commence at the permanent location.

Sec. 2305.113. (A) Except as otherwise provided in this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued.

(B)(1) If prior to the expiration of the one-year period specified in division (A) of this section, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.

(2) An insurance company shall not consider the existence or nonexistence of a written notice described in division (B)(1) of this section in setting the liability insurance premium rates that the company may charge the company's insured person who is notified by that written notice.

Sub. H. B. No. 290                                       130th G.A.

6

(C) Except as to persons within the age of minority or of unsound mind as provided by section 2305.16 of the Revised Code, and except as provided in division (D) of this section, both of the following apply:

(1) No action upon a medical, dental, optometric, or chiropractic claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim.

(2) If an action upon a medical, dental, optometric, or chiropractic claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim, then, any action upon that claim is barred.

(D)(1) If a person making a medical claim, dental claim, optometric claim, or chiropractic claim, in the exercise of reasonable care and diligence, could not have discovered the injury resulting from the act or omission constituting the alleged basis of the claim within three years after the occurrence of the act or omission, but, in the exercise of reasonable care and diligence, discovers the injury resulting from that act or omission before the expiration of the four-year period specified in division (C)(1) of this section, the person may commence an action upon the claim not later than one year after the person discovers the injury resulting from that act or omission.

(2) If the alleged basis of a medical claim, dental claim, optometric claim, or chiropractic claim is the occurrence of an act or omission that involves a foreign object that is left in the body of the person making the claim, the person may commence an action upon the claim not later than one year after the person discovered the foreign object or not later than one year after the person, with reasonable care and diligence, should have discovered the foreign object.

(3) A person who commences an action upon a medical claim, dental claim, optometric claim, or chiropractic claim under the circumstances described in division (D)(1) or (2) of this section has the affirmative burden of proving, by clear and convincing evidence, that the person, with reasonable care and diligence, could not have discovered the injury resulting from the act or omission constituting the alleged basis of the claim within the three-year period described in division (D)(1) of this section or within the one-year period described in division (D)(2) of this section, whichever is applicable.

(E) As used in this section:

(1) "Hospital" includes any person, corporation, association, board, or authority that is responsible for the operation of any hospital licensed or registered in the state, including, but not limited to, those that are owned or

Sub. H. B. No. 290                                                    130th G.A.

7

operated by the state, political subdivisions, any person, any corporation, or any combination of the state, political subdivisions, persons, and corporations. "Hospital" also includes any person, corporation, association, board, entity, or authority that is responsible for the operation of any clinic that employs a full-time staff of physicians practicing in more than one recognized medical specialty and rendering advice, diagnosis, care, and treatment to individuals. "Hospital" does not include any hospital operated by the government of the United States or any of its branches.

(2) "Physician" means a person who is licensed to practice medicine and surgery or osteopathic medicine and surgery by the state medical board or a person who otherwise is authorized to practice medicine and surgery or osteopathic medicine and surgery in this state.

(3) "Medical claim" means any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:

(a) Derivative claims for relief that arise from the <u>plan of care,</u> medical diagnosis, ~~care,~~ or treatment of a person;

(b) Claims that arise out of the <u>plan of care,</u> medical diagnosis, ~~care,~~ or treatment of any person and to which either of the following applies:

(i) The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

(c) Claims that arise out of the <u>plan of care,</u> medical diagnosis, ~~care,~~ or treatment of any person and that are brought under section 3721.17 of the Revised Code;

<u>(d) Claims that arise out of skilled nursing care or personal care services provided in a home pursuant to the plan of care, medical diagnosis, or treatment.</u>

(4) "Podiatrist" means any person who is licensed to practice podiatric medicine and surgery by the state medical board.

(5) "Dentist" means any person who is licensed to practice dentistry by the state dental board.

(6) "Dental claim" means any claim that is asserted in any civil action against a dentist, or against any employee or agent of a dentist, and that

Sub. H. B. No. 290

130th G.A.

8

arises out of a dental operation or the dental diagnosis, care, or treatment of any person. "Dental claim" includes derivative claims for relief that arise from a dental operation or the dental diagnosis, care, or treatment of a person.

(7) "Derivative claims for relief" include, but are not limited to, claims of a parent, guardian, custodian, or spouse of an individual who was the subject of any medical diagnosis, care, or treatment, dental diagnosis, care, or treatment, dental operation, optometric diagnosis, care, or treatment, or chiropractic diagnosis, care, or treatment, that arise from that diagnosis, care, treatment, or operation, and that seek the recovery of damages for any of the following:

(a) Loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, or any other intangible loss that was sustained by the parent, guardian, custodian, or spouse;

(b) Expenditures of the parent, guardian, custodian, or spouse for medical, dental, optometric, or chiropractic care or treatment, for rehabilitation services, or for other care, treatment, services, products, or accommodations provided to the individual who was the subject of the medical diagnosis, care, or treatment, the dental diagnosis, care, or treatment, the dental operation, the optometric diagnosis, care, or treatment, or the chiropractic diagnosis, care, or treatment.

(8) "Registered nurse" means any person who is licensed to practice nursing as a registered nurse by the board of nursing.

(9) "Chiropractic claim" means any claim that is asserted in any civil action against a chiropractor, or against any employee or agent of a chiropractor, and that arises out of the chiropractic diagnosis, care, or treatment of any person. "Chiropractic claim" includes derivative claims for relief that arise from the chiropractic diagnosis, care, or treatment of a person.

(10) "Chiropractor" means any person who is licensed to practice chiropractic by the state chiropractic board.

(11) "Optometric claim" means any claim that is asserted in any civil action against an optometrist, or against any employee or agent of an optometrist, and that arises out of the optometric diagnosis, care, or treatment of any person. "Optometric claim" includes derivative claims for relief that arise from the optometric diagnosis, care, or treatment of a person.

(12) "Optometrist" means any person licensed to practice optometry by the state board of optometry.

(13) "Physical therapist" means any person who is licensed to practice

Sub. H. B. No. 290                                          130th G.A.

9

physical therapy under Chapter 4755. of the Revised Code.

(14) "Home" has the same meaning as in section 3721.10 of the Revised Code.

(15) "Residential facility" means a facility licensed under section 5123.19 of the Revised Code.

(16) "Advanced practice registered nurse" means any certified nurse practitioner, clinical nurse specialist, certified registered nurse anesthetist, or certified nurse-midwife who holds a certificate of authority issued by the board of nursing under Chapter 4723. of the Revised Code.

(17) "Licensed practical nurse" means any person who is licensed to practice nursing as a licensed practical nurse by the board of nursing pursuant to Chapter 4723. of the Revised Code.

(18) "Physician assistant" means any person who holds a valid certificate to practice issued pursuant to Chapter 4730. of the Revised Code.

(19) "Emergency medical technician-basic," "emergency medical technician-intermediate," and "emergency medical technician-paramedic" means any person who is certified under Chapter 4765. of the Revised Code as an emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, whichever is applicable.

(20) "Skilled nursing care" and "personal care services" have the same meanings as in section 3721.01 of the Revised Code.

Sec. 2501.20. (A) In the event of a natural or man-made disaster, civil disorder, or any extraordinary circumstance that interrupts or threatens to interrupt the orderly operation of a court of appeals within the territorial jurisdiction of the court, the administrative judge of the court may issue an order authorizing the court to operate at a temporary location inside or outside the territorial jurisdiction of the court. The order shall identify the temporary location at which the court shall operate and the date on which operations shall commence at the temporary location. The court shall operate at the temporary location until the administrative judge withdraws, cancels, or rescinds the order.

(B) The authority of an administrative judge of a court of appeals to issue an order authorizing the court to operate at a temporary location pursuant to division (A) of this section is independent of and shall not be conditioned upon a declaration of a judicial emergency issued by the chief justice of the supreme court pursuant to Rule 14 of the Rules of Superintendence for the Courts of Ohio.

(C) For the period during which a court of appeals operates in a temporary location pursuant to division (A) of this section, the court shall

Sub. H. B. No. 290

130th G.A.

10

continue to have the territorial jurisdiction set forth in section 2501.01 of the Revised Code and the court shall have jurisdiction to hear actions and conduct proceedings the same as if the court were operating within that territorial jurisdiction.

(D) As soon as practicable following issuance of an order pursuant to division (A) of this section, both of the following shall occur:

(1) The administrative judge of the court of appeals shall provide notice and a copy of the order by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the court operates and maintains a web site, the web site shall provide notification of the operation of the court at the temporary location, including the site of the temporary location and the date on which operations shall commence at the temporary location.

(E) As soon as practicable following the withdrawal, cancellation, or rescission of an order issued pursuant to division (A) of this section, each of the following shall occur:

(1) The administrative judge of the court of appeals shall provide notice by regular or electronic mail to all of the following:

(a) The chief justice and administrative director of the supreme court;

(b) The legislative authorities of the local funding authorities of the court;

(c) All appropriate law enforcement agencies, prosecuting authorities, public defender agencies, and local bar associations within the territorial jurisdiction of the court.

(2) If the court operates and maintains a web site, the web site shall provide notification of the operation of the court at the permanent location of the court, including the site of the permanent location and the date on which operations shall commence at the permanent location.

Sec. 2901.12. (A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and, except in cases of emergency under section 1901.028, 1907.04, 2301.04, or 2501.20 of the Revised Code, in the territory of which the offense or any element of the offense was committed.

(B) When the offense or any element of the offense was committed in an aircraft, motor vehicle, train, watercraft, or other vehicle, in transit, and it

Sub. H. B. No. 290                                                          130th G.A.

11

cannot reasonably be determined in which jurisdiction the offense was committed, the offender may be tried in any jurisdiction through which the aircraft, motor vehicle, train, watercraft, or other vehicle passed.

(C) When the offense involved the unlawful taking or receiving of property or the unlawful taking or enticing of another, the offender may be tried in any jurisdiction from which or into which the property or victim was taken, received, or enticed.

(D) When the offense is conspiracy, attempt, or complicity cognizable under division (A)(2) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the conspiracy, attempt, complicity, or any of its elements occurred. If an offense resulted outside this state from the conspiracy, attempt, or complicity, that resulting offense also may be tried in any jurisdiction in which the conspiracy, attempt, complicity, or any of the elements of the conspiracy, attempt, or complicity occurred.

(E) When the offense is conspiracy or attempt cognizable under division (A)(3) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the offense that was the object of the conspiracy or attempt, or any element of that offense, was intended to or could have taken place. When the offense is complicity cognizable under division (A)(3) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the principal offender may be tried.

(F) When an offense is considered to have been committed in this state while the offender was out of this state, and the jurisdiction in this state in which the offense or any material element of the offense was committed is not reasonably ascertainable, the offender may be tried in any jurisdiction in which the offense or element reasonably could have been committed.

(G) When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions.

(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

(1) The offenses involved the same victim, or victims of the same type or from the same group.

Sub. H. B. No. 290                                                130th G.A.

12

(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

(4) The offenses were committed in furtherance of the same conspiracy.

(5) The offenses involved the same or a similar modus operandi.

(6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

(I)(1) When the offense involves a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, the offender may be tried in any jurisdiction containing any location of the computer, computer system, or computer network of the victim of the offense, in any jurisdiction from which or into which, as part of the offense, any writing, data, or image is disseminated or transmitted by means of a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, or in any jurisdiction in which the alleged offender commits any activity that is an essential part of the offense.

(2) As used in this section, "computer," "computer system," "computer network," "information service," "telecommunication," "telecommunications device," "telecommunications service," "data," and "writing" have the same meanings as in section 2913.01 of the Revised Code.

(J) When the offense involves the death of a person, and it cannot reasonably be determined in which jurisdiction the offense was committed, the offender may be tried in the jurisdiction in which the dead person's body or any part of the dead person's body was found.

(K) Notwithstanding any other requirement for the place of trial, venue may be changed, upon motion of the prosecution, the defense, or the court, to any court having jurisdiction of the subject matter outside the county in which trial otherwise would be held, when it appears that a fair and impartial trial cannot be held in the jurisdiction in which trial otherwise would be held, or when it appears that trial should be held in another jurisdiction for the convenience of the parties and in the interests of justice.

Sec. 3313.75. (A) For purposes of this section, "school premises" has the same meaning as in section 3313.77 of the Revised Code.

(B) The board of education of a city, exempted village, or local school district may authorize the opening of schoolhouses school premises for any lawful purposes.

(B)(C) In accordance with this section and section 3313.77 of the

Sub. H. B. No. 290                                                   130th G.A.

13

Revised Code, a district board may rent or lease ~~facilities~~ school premises under its control to any public or nonpublic institution of higher education for the institution's use in providing evening and summer classes.

~~(C)~~(D) This section does not authorize a board to rent or lease ~~a schoolhouse~~ school premises when such rental or lease interferes with the public schools in such district, or for any purpose other than is authorized by law.

Sec. 3313.76. Upon application of any responsible organization, or of a group of at least seven citizens, ~~all~~ school ~~grounds and schoolhouses~~ premises, as that term is defined in section 3313.77 of the Revised Code, as well as all other buildings under the supervision and control of the state, or buildings maintained by taxation under the laws of this state, shall be available for use as social centers for the entertainment and education of the people, including the adult and youthful population, and for the discussion of all topics tending to the development of personal character and of civil welfare, and for religious exercises. Such occupation should not seriously infringe upon the original and necessary uses of such properties. The public officials in charge of such buildings shall prescribe such rules and regulations for their occupancy and use as will secure a fair, reasonable, and impartial use of the same.

Sec. 3313.77. (A) For purposes of this section:

(1) "General public" means members of the community, including both of the following:

(a) Students during nonschool hours;

(b) Employees of a school or school district when not working in the scope of their employment.

(2) "Nonschool hours" means both of the following:

(a) Any time prior to and after regular classroom instruction on a day that school is in session;

(b) Any day that school is not in session, including weekends, holidays, and vacation breaks.

(3) "Recreational meetings and entertainments" means all indoor or outdoor games or physical activities, either organized or unorganized, that are undertaken for exercise, relaxation, diversion, sport, or pleasure.

(4) "School premises" means all indoor and outdoor structures, facilities, and land owned, rented, or leased by a school or school district.

(B) The board of education of any city, exempted village, or local school district shall, upon request and the payment of a reasonable fee, subject to such regulation as is adopted by such board, permit the use of ~~any~~ school ~~house and rooms therein and the grounds and other property under its~~

Sub. H. B. No. 290                                     130th G.A.

14

~~control~~ premises, when not in actual use for school purposes, for any of the following purposes:

~~(A)~~(1) Giving instructions in any branch of education, learning, or the arts;

~~(B)~~(2) Holding educational, religious, civic, social, or recreational meetings and entertainments, and for such other purposes as promote the welfare of the community; provided such meetings and entertainments shall be nonexclusive and open to the general public;

~~(C)~~(3) Public library purposes, as a station for a public library, or as reading rooms;

~~(D)~~(4) Polling places, for holding elections and for the registration of voters, or for holding grange or similar meetings.

~~Within sixty days after the effective date of this section, the~~ The board of education of each school district shall adopt a policy for the use of school ~~facilities~~ premises by the general public, including a list of all fees to be paid for the use of such ~~facilities~~ premises and the costs used to determine such fees. Once adopted, the policy shall remain in effect until formally amended by the board. A copy of the policy shall be made available to any resident of the district upon request.

Sec. 3313.78. Upon application of a committee representing any candidate for public office or any regularly organized or recognized political party, the board of education having control of any school ~~grounds~~ premises mentioned in section 3313.76 of the Revised Code, shall permit the same to be used as a place wherein to hold meetings of electors for the discussion of public questions and issues. No such meeting shall be held during regular school hours. No charge shall be made for such use, but the candidate or committee so holding a meeting shall be responsible for any damage done or expense incurred by reason thereof.

Sec. 3313.791. (A) For purposes of this section:

(1) "School" means a school in a city, local, or exempted village school district.

(2) "School district" means a city, local, or exempted village school district.

(3) "School premises" has the same meaning as in section 3313.77 of the Revised Code.

(B) Except as otherwise provided in division (C) of this section, a school or school district, a member of a school district board of education, or a school district or school employee is not liable in damages in a civil action for injury, death, or loss to person or property allegedly arising from the use of school premises under section 3313.75, 3313.76, 3313.77, or

Sub. H. B. No. 290                                                          130th G.A.

15

3313.78 of the Revised Code, unless the injury, death, or loss to person or property results from willful or wanton misconduct by the school or school district, a member of the school district board of education, or an employee of the school district or of any school in the district.

This section does not eliminate, limit, or reduce any other immunity or defense that a school or school district, member of a school district board of education, or school district or school employee may be entitled to under Chapter 2744. or any other provision of the Revised Code or under the common law of this state.

(C) A school or school district, a member of a school district board of education, or a school district or school employee is not immune from liability in damages in a civil action as provided under division (B) of this section if the board of education of the city, exempted village, or local school district charges a fee for the use of school premises that significantly exceeds the costs incurred for the operation of the school premises.

Sec. 3721.02. (A) As used in this section, "residential facility" means a residential facility licensed under section 5119.34 of the Revised Code that provides accommodations, supervision, and personal care services for three to sixteen unrelated adults.

(B)(1) The director of health shall license homes and establish procedures to be followed in inspecting and licensing homes. The director may inspect a home at any time. Each home shall be inspected by the director at least once prior to the issuance of a license and at least once every fifteen months thereafter. The state fire marshal or a township, municipal, or other legally constituted fire department approved by the marshal shall also inspect a home prior to issuance of a license, at least once every fifteen months thereafter, and at any other time requested by the director. A home does not have to be inspected prior to issuance of a license by the director, state fire marshal, or a fire department if ownership of the home is assigned or transferred to a different person and the home was licensed under this chapter immediately prior to the assignment or transfer. The director may enter at any time, for the purposes of investigation, any institution, residence, facility, or other structure that has been reported to the director or that the director has reasonable cause to believe is operating as a nursing home, residential care facility, or home for the aging without a valid license required by section 3721.05 of the Revised Code or, in the case of a county home or district home, is operating despite the revocation of its residential care facility license. The director may delegate the director's authority and duties under this chapter to any division, bureau, agency, or official of the department of health.

4193216999    Anspach Meeks Ellenberger, LLC    08:54:16 a.m.    12-24-2014    857/162

Sub. H. B. No. 290

16

130th G.A.

(2)(a) If, prior to issuance of a license, a home submits a request for an expedited licensing inspection and the request is submitted in a manner and form approved by the director, the director shall commence an inspection of the home not later than ten business days after receiving the request.

(b) On request, submitted in a manner and form approved by the director, the director may review plans for a building that is to be used as a home for compliance with applicable state and local building and safety codes.

(c) The director may charge a fee for an expedited licensing inspection or a plan review that is adequate to cover the expense of expediting the inspection or reviewing the plans. The fee shall be deposited in the state treasury to the credit of the general operations fund created in section 3701.83 of the Revised Code and used solely for expediting inspections and reviewing plans.

(C) A single facility may be licensed both as a nursing home pursuant to this chapter and as a residential facility pursuant to section 5119.34 of the Revised Code if the director determines that the part or unit to be licensed as a nursing home can be maintained separate and discrete from the part or unit to be licensed as a residential facility.

(D) In determining the number of residents in a home for the purpose of licensing, the director shall consider all the individuals for whom the home provides accommodations as one group unless one of the following is the case:

(1) The home is a home for the aging, in which case all the individuals in the part or unit licensed as a nursing home shall be considered as one group, and all the individuals in the part or unit licensed as a rest home shall be considered as another group.

(2) The home is both a nursing home and a residential facility. In that case, all the individuals in the part or unit licensed as a nursing home shall be considered as one group, and all the individuals in the part or unit licensed as an adult care facility shall be considered as another group.

(3) The home maintains, in addition to a nursing home or residential care facility, a separate and discrete part or unit that provides accommodations to individuals who do not require or receive skilled nursing care and do not receive personal care services from the home, in which case the individuals in the separate and discrete part or unit shall not be considered in determining the number of residents in the home if the separate and discrete part or unit is in compliance with the Ohio basic building code established by the board of building standards under Chapters 3781. and 3791. of the Revised Code and the home permits the director, on

Sub. H. B. No. 290                                                      130th G.A.

17

request, to inspect the separate and discrete part or unit and speak with the individuals residing there, if they consent, to determine whether the separate and discrete part or unit meets the requirements of this division.

(E)(1) The director of health shall charge the following application fee and annual renewal licensing and inspection fee for each fifty persons or part thereof of a home's licensed capacity:

(a) For state fiscal year 2010, two hundred twenty dollars;

(b) For state fiscal year 2011, two hundred seventy dollars;

(c) For each state fiscal year thereafter, three hundred twenty dollars.

(2) All fees collected by the director for the issuance or renewal of licenses shall be deposited into the state treasury to the credit of the general operations fund created in section 3701.83 of the Revised Code for use only in administering and enforcing this chapter and rules adopted under it.

(F)(1) Except as otherwise provided in this section, the results of an inspection or investigation of a home that is conducted under this section, including any statement of deficiencies and all findings and deficiencies cited in the statement on the basis of the inspection or investigation, shall be used solely to determine the home's compliance with this chapter or another chapter of the Revised Code in any action or proceeding other than an action commenced under division (I) of section 3721.17 of the Revised Code. Those results of an inspection or investigation, that statement of deficiencies, and the findings and deficiencies cited in that statement shall not be used in ~~any~~ either of the following:

(a) Any court or in any action or proceeding that is pending in any court and are not admissible in evidence in any action or proceeding unless that action or proceeding is an appeal of an action by the department of health under this chapter or is an action by any department or agency of the state to enforce this chapter or another chapter of the Revised Code;

(b) An advertisement, unless the advertisement includes all of the following:

(i) The date the inspection or investigation was conducted;

(ii) A statement that the director of health inspects all homes at least once every fifteen months;

(iii) If a finding or deficiency cited in the statement of deficiencies has been substantially corrected, a statement that the finding or deficiency has been substantially corrected and the date that the finding or deficiency was substantially corrected;

(iv) The number of findings and deficiencies cited in the statement of deficiencies on the basis of the inspection or investigation;

(v) The average number of findings and deficiencies cited in a statement

Sub. H. B. No. 290                                                    130th G.A.

18

of deficiencies on the basis of an inspection or investigation conducted under this section during the same calendar year as the inspection or investigation used in the advertisement;

(vi) A statement that the advertisement is neither authorized nor endorsed by the department of health or any other government agency.

(2) Nothing in division (F)(1) of this section prohibits the results of an inspection or investigation conducted under this section from being used in a criminal investigation or prosecution.

Sec. 5165.67. The results of a survey of a nursing facility that is conducted under section 5165.64 of the Revised Code, including any statement of deficiencies and all findings and deficiencies cited in the statement on the basis of the survey, shall be used solely to determine the nursing facility's compliance with certification requirements or with this chapter or another chapter of the Revised Code. Those results of a survey, that statement of deficiencies, and the findings and deficiencies cited in that statement shall not be used in ~~any~~ either of the following:

(A) Any court or in any action or proceeding that is pending in any court and are not admissible in evidence in any action or proceeding unless that action or proceeding is an appeal of an administrative action by the department of medicaid or contracting agency under this chapter or is an action by any department or agency of the state to enforce this chapter or another chapter of the Revised Code;

(B) An advertisement, unless the advertisement includes all of the following:

(1) The date the survey was conducted;

(2) A statement that the department of health conducts a survey of all nursing facilities at least once every fifteen months;

(3) If a finding or deficiency cited in the statement of deficiencies has been substantially corrected, a statement that the finding or deficiency has been substantially corrected and the date that the finding or deficiency was substantially corrected;

(4) The number of findings and deficiencies cited in the statement of deficiencies on the basis of the survey;

(5) The average number of findings and deficiencies cited in a statement of deficiencies on the basis of a survey conducted under section 5165.64 of the Revised Code during the same calendar year as the survey used in the advertisement;

(6) A statement that the advertisement is neither authorized nor endorsed by the department or any other government agency.

Nothing in this section prohibits the results of a survey, a statement of

Sub. H. B. No. 290            19            130th G.A.

deficiencies, or the findings and deficiencies cited in that statement on the basis of the survey under this section from being used in a criminal investigation or prosecution.

SECTION 2. That existing sections 2305.113, 2901.12, 3313.75, 3313.76, 3313.77, 3313.78, 3721.02, and 5165.67 of the Revised Code are hereby repealed.

Sub. H. B. No. 290

130th G.A.

Speaker _____ of the House of Representatives.

President _____ of the Senate.

Passed _____, 20____

Approved _____, 20____

Governor.

4193216979    Anspach Meeks Ellenberger, LL    08:55:21 a.m.    12-24-2014    90/102

Sub. H. B. No. 290                                         130th G.A.


The section numbering of law of a general and permanent nature is complete and in conformity with the Revised Code.


_____

*Director, Legislative Service Commission.*


Filed in the office of the Secretary of State at Columbus, Ohio, on the ____ day of _____, A. D. 20____.


_____

*Secretary of State.*


File No. _____        Effective Date _____

IN THE COURT OF COMMON PLEAS FOR CHAMPAIGN COUNTY, OHIO

| | |
|---|---|
| Heartland of Urbana OH, LLC, | Case No. |
| Plaintiff, | Judge |
| v. | **MOTION FOR TEMPORARY RESTRAINING ORDER** |
| McHugh Fuller Law Group, PLLC, | |
| Defendant. | ANSPACH MEEKS ELLENBERGER LLP |

ANSPACH MEEKS ELLENBERGER LLP
Robert M. Anspach (0017263)
J Randall Engwert (0070746)
Charles D. Rittenhouse (0088012)
300 Madison Ave., Suite 1600
Toledo, Ohio  43604-2633
Telephone: (419) 246-5757
Facsimile:  (419) 321-6979
*Attorneys for Heartland of Urbana OH, LLC*

Now comes Plaintiff Heartland of Urbana OH, LLC, d/b/a Heartland of Urbana, and submits this *Motion for Temporary Restraining Order*, pursuant to Civ.R. 65(A), in order to safeguard itself against the immediate, irreparable, and ongoing injury to its reputation in the community, within the skilled nursing industry, and to its contractual and business relationships. These injuries began immediately upon the publication of an advertisement by Defendant, as described in the *Complaint for Injuncvit and Other Relief* and supported by the attached *Affidavit of Dan Arnold, LNHA*, contemporaneously filed herewith.

A Temporary Restraining Order ("TRO") is governed by Civ.R. 65(A), which allows a TRO to be granted without notice to the opposing party if two requirements are met.  First, that "it clearly appears from specific facts shown by affidavit . . . that immediate and irreparable injury . .

1

. will result to the applicant before the adverse party can be heard in opposition." *Id.* Presently, the immediate and irreparable harm required by the rule is clear stigmatic injury to Plaintiff's reputation and goodwill in the city of Urbana, Ohio, among the community of the skilled nursing industry, and to Plaintiff's contractual and business relationships. The harm is caused by Defendant's false, fraudulent, deceptive, and misleading advertisement, recently published in the community's local newspaper, the *Urbana Daily Citizen*, on December 13, 2014, and continuing from that date to the present through the internet website for the *Urbana Daily Citizen*.

The advertisement, as described in the *Complaint for Injunctive and Other Relief*, has the effect of accusing Plaintiff's facility of being out of compliance with government regulations and allowing the occurrence of bedsores, broken bones, unexplained injuries, and death to continue unchecked and unmitigated among its patients. More specifically, the advertisement falsely states that Plaintiff's facility has been "cited . . . for failing to provide necessary care and services to maintain the highest well-being of each resident." *See* Exhibits A and B attached to the *Complaint for Injunctive and Other Relief*. The stigmatic harm of such publications, particularly in a small community such as Urbana, is clear, and further explained and supported in the *Complaint for Injunctive Relief* and *Affidavit of Dan Arnold, LNHA*.

Simply put, Heartland of Urbana is a "Five Star" facility, as rated by the federal government, and has had no citations from government surveyors in the last two years, or in the last four years any citation comparable to the suggestive language of the advertisement. As to its irreparable and ongoing nature, the advertisement is published on the *Urbana Daily Citizen*'s website, and remains there as of the time of this filing, giving it the effect of ongoing and continual republication.

The second requirement for a TRO issued without notice to the opposing party is that the moving party's attorney "certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting his claim that notice should not be given." Such certification is attached and contemporaneously filed herewith. McHugh Fuller Law Group, PLLC is a Mississippi law firm with no offices or physical presence in Ohio that make it feasible for it to appear regarding this *Motion* for a TRO.

WHEREFORE, for the foregoing reasons, Plaintiff Heartland of Urbana OH, LLC respectfully moves this Court for a temporary restraining order to remove Defendant's advertisement from the newspaper's online publication and a restraint upon Defendant from publishing any further such advertisements until such time as this matter can be heard upon the merits for preliminary and permanent restraining orders.

Respectfully submitted,

ANSPACH MEEKS ELLENBERGER LLP

By: _____

Robert M. Anspach (0017263)
J Randall Engwert (0070746)
Charles D. Rittenhouse (0088012)
*Counsel for Plaintiff,*
*Heartland of Urbana OH, LLC*

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiff certifies that a copy of the foregoing *"Motion for Temporary Restraining Order"* was served via ordinary U.S. and electronic mail, and facsimile this 24th day of December, 2014, upon the following:

McHugh Fuller Law Group, PLLC
97 Elias Whiddon Road
Hattiesburg, MS 39402

Respectfully submitted,

ANSPACH MEEKS ELLENBERGER LLP

By: _____
J. Randall Engwert (0070746)



4

IN THE COURT OF COMMON PLEAS FOR CHAMPAIGN COUNTY, OHIO

| | |
|---|---|
| Heartland of Urbana OH, LLC, | Case No. |
| Plaintiff, | Judge |
| v. | ANSPACH MEEKS ELLENBERGER LLP |
| McHugh Fuller Law Group, PLLC, | Robert M. Anspach (0017263) |
| Defendant. | J Randall Engwert (0070746) |
| | Charles D. Rittenhouse (0088012) |
| | 300 Madison Ave., Suite 1600 |
| | Toledo, Ohio 43604-2633 |
| | Telephone: (419) 246-5757 |
| | Facsimile: (419) 321-6979 |
| | Attorneys for Heartland of Urbana OH, LLC |

## CERTIFICATION OF COUNSEL PURSUANT TO Civ.R. 65(A)

As set forth in the Civ.R. 65(A):

A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting his claim that notice should not be required.

*Id.*

In the instant matter, and as fully supported by the accompanying *Complaint for Injunctive Relief* and *Affidavit of Dan Arnold, LNHA*, Defendant's publishing of false, fraudulent, deceptive, and misleading advertising has caused Plaintiff immediate and irreparable injury. In addition to being published in the newspaper, these advertisements appear online and are, therefore, continually republished.

Due to the emergency nature of the *Motion for Temporary Restraining Order*, Defendant is unlikely able to appear to contest the matter, inasmuch as McHugh Fuller Law Group, PLLC, is

located in Hattiesburg, Mississippi and has no office, or physical presence in Ohio.  Plaintiff's counsel furnished copies of all pleadings to be filed with the Court via electronic mail and facsimile this date of December 24, 2014, and indicated their intention to proceed with filing the pleadings with the Court and seek the relief requested in the *Motion for Temporary Restraining Order*.

WHEREFORE, in light of the ongoing, immediate, and irreparable harm to Plaintiff's goodwill and contractual and business relationships, and due to the potential for Defendant to continue to unlawfully publish further false advertisements, Plaintiff respectfully requests that notice to Defendant not be required, as allowed under Civ.R. 65(A), before the Court rules on Plaintiff's *Motion for Temporary Restraining Order*.

This 24th day of December, 2014.

Respectfully submitted,

ANSPACH MEEKS ELLENBERGER LLP

By: _____

Robert M. Anspach (0017263)
J. Randall Engwert (0070746)
Charles D. Rittenhouse (0088012)
*Counsel for Plaintiff, Heartland of Urbana*



4193216979          Anspach Meeks Ellenberger, LL                                                    08:55:27 a.m.     12-24-2014     91 /102

# IN THE COURT OF COMMON PLEAS FOR CHAMPAIGN COUNTY, OHIO

| | |
|---|---|
| Heartland of Urbana OH, LLC, | Case No. |
| Plaintiff, | Judge |
| v. | **MOTION FOR TEMPORARY RESTRAINING ORDER** |
| McHugh Fuller Law Group, PLLC, | ANSPACH MEEKS ELLENBERGER LLP |
| Defendant. | Robert M. Anspach (0017263) |
| | J Randall Engwert (0070746) |
| | Charles D. Rittenhouse (0088012) |
| | 300 Madison Ave., Suite 1600 |
| | Toledo, Ohio 43604-2633 |
| | Telephone: (419) 246-5757 |
| | Facsimile: (419) 321-6979 |
| | *Attorneys for Heartland of Urbana OH, LLC* |

Now comes Plaintiff Heartland of Urbana OH, LLC, d/b/a Heartland of Urbana, and submits this *Motion for Temporary Restraining Order*, pursuant to Civ.R. 65(A), in order to safeguard itself against the immediate, irreparable, and ongoing injury to its reputation in the community, within the skilled nursing industry, and to its contractual and business relationships. These injuries began immediately upon the publication of an advertisement by Defendant, as described in the *Complaint for Injunctive and Other Relief* and supported by the attached *Affidavit of Dan Arnold, LNHA*, contemporaneously filed herewith.

A Temporary Restraining Order ("TRO") is governed by Civ.R. 65(A), which allows a TRO to be granted without notice to the opposing party if two requirements are met. First, that "it clearly appears from specific facts shown by affidavit . . . that immediate and irreparable injury . .

1

. will result to the applicant before the adverse party can be heard in opposition." *Id.* Presently, the immediate and irreparable harm required by the rule is clear stigmatic injury to Plaintiff's reputation and goodwill in the city of Urbana, Ohio, among the community of the skilled nursing industry, and to Plaintiff's contractual and business relationships. The harm is caused by Defendant's false, fraudulent, deceptive, and misleading advertisement, recently published in the community's local newspaper, the *Urbana Daily Citizen*, on December 13, 2014, and continuing from that date to the present through the internet website for the *Urbana Daily Citizen*.

The advertisement, as described in the *Complaint for Injunctive and Other Relief*, has the effect of accusing Plaintiff's facility of being out of compliance with government regulations and allowing the occurrence of bedsores, broken bones, unexplained injuries, and death to continue unchecked and unmitigated among its patients. More specifically, the advertisement falsely states that Plaintiff's facility has been "cited . . . for failing to provide necessary care and services to maintain the highest well-being of each resident." *See* Exhibits A and B attached to the *Complaint for Injunctive and Other Relief*. The stigmatic harm of such publications, particularly in a small community such as Urbana, is clear, and further explained and supported in the *Complaint for Injunctive Relief* and *Affidavit of Dan Arnold, LNHA*.

Simply put, Heartland of Urbana is a "Five Star" facility, as rated by the federal government, and has had no citations from government surveyors in the last two years, or in the last four years any citation comparable to the suggestive language of the advertisement. As to its irreparable and ongoing nature, the advertisement is published on the *Urbana Daily Citizen*'s website, and remains there as of the time of this filing, giving it the effect of ongoing and continual republication.

,4193216979    Anspach Meeks Ellenberger, LL    08:55:51 a.m.    12-24-2014    93 / 102

The second requirement for a TRO issued without notice to the opposing party is that the moving party's attorney "certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting his claim that notice should not be given." Such certification is attached and contemporaneously filed herewith. McHugh Fuller Law Group, PLLC is a Mississippi law firm with no offices or physical presence in Ohio that make it feasible for it to appear regarding this *Motion* for a TRO.

WHEREFORE, for the foregoing reasons, Plaintiff Heartland of Urbana OH, LLC respectfully moves this Court for a temporary restraining order to remove Defendant's advertisement from the newspaper's online publication and a restraint upon Defendant from publishing any further such advertisements until such time as this matter can be heard upon the merits for preliminary and permanent restraining orders.

Respectfully submitted,

ANSPACH MEEKS ELLENBERGER LLP

By: _____

Robert M. Anspach (0017263)
J Randall Engwert (0070746)
Charles D. Rittenhouse (0088012)
*Counsel for Plaintiff,*
*Heartland of Urbana OH, LLC*

3

4193216978... Anspach Meeks Ellenberger, LL          08:56:01 a.m.     12-24-2014          94 /102

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiff certifies that a copy of the foregoing *"Motion for Temporary Restraining Order"* was served via ordinary U.S. and electronic mail, and facsimile this 24th day of December, 2014, upon the following:

> McHugh Fuller Law Group, PLLC
> 97 Elias Whiddon Road
> Hattiesburg, MS  39402

Respectfully submitted,

ANSPACH MEEKS ELLENBERGER LLP

By: 

Randall Engwert (0070746)

4

## IN THE COURT OF COMMON PLEAS FOR CHAMPAIGN COUNTY, OHIO

| | |
|---|---|
| Heartland of Urbana OH, LLC, | Case No. |
| Plaintiff, | |
| | Judge |
| v. | |
| McHugh Fuller Law Group, PLLC, | **ANSPACH MEEKS ELLENBERGER LLP**<br>Robert M. Anspach (0017263)<br>J Randall Engwert (0070746)<br>Charles D. Rittenhouse (0088012)<br>300 Madison Ave., Suite 1600<br>Toledo, Ohio 43604-2633<br>Telephone: (419) 246-5757<br>Facsimile: (419) 321-6979 |
| Defendant. | |
| | Attorneys for Heartland of Urbana OH, LLC |

## CERTIFICATION OF COUNSEL PURSUANT TO Civ.R. 65(A)

As set forth in the Civ.R. 65(A):

A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting his claim that notice should not be required.

*Id.*

In the instant matter, and as fully supported by the accompanying *Complaint for Injunctive Relief* and *Affidavit of Dan Arnold, LNHA*, Defendant's publishing of false, fraudulent, deceptive, and misleading advertising has caused Plaintiff immediate and irreparable injury. In addition to being published in the newspaper, these advertisements appear online and are, therefore, continually republished.

Due to the emergency nature of the *Motion for Temporary Restraining Order*, Defendant is unlikely able to appear to contest the matter, inasmuch as McHugh Fuller Law Group, PLLC, is

located in Hattiesburg, Mississippi and has no office, or physical presence in Ohio. Plaintiff's counsel furnished copies of all pleadings to be filed with the Court via electronic mail and facsimile this date of December 24, 2014, and indicated their intention to proceed with filing the pleadings with the Court and seek the relief requested in the *Motion for Temporary Restraining Order*.

WHEREFORE, in light of the ongoing, immediate, and irreparable harm to Plaintiff's goodwill and contractual and business relationships, and due to the potential for Defendant to continue to unlawfully publish further false advertisements, Plaintiff respectfully requests that notice to Defendant not be required, as allowed under Civ.R. 65(A), before the Court rules on Plaintiff's *Motion for Temporary Restraining Order*.

This 24th day of December, 2014.

Respectfully submitted,

ANSPACH MEEKS ELLENBERGER LLP

By:

Robert M. Anspach (0017263)
J Randall Engwert (0070746)
Charles D. Rittenhouse (0088012)
*Counsel for Plaintiff, Heartland of Urbana*



IN THE COURT OF COMMON PLEAS FOR CHAMPAIGN COUNTY, OHIO

| | |
|---|---|
| HEARTLAND OF URBANA OH, LLC, <br> CT Corporation System <br> 1300 East Ninth Street <br> Cleveland, Ohio 44114 <br><br>      Plaintiff, <br><br> v. <br><br> MCHUGH FULLER LAW GROUP, PLLC, <br> 97 Elias Whiddon Road <br> Hattiesburg, Mississippi 39402 <br><br>      Defendant. | Case No. <br><br> Judge |

### AFFIDAVIT OF DAN ARNOLD, LNHA

STATE OF OHIO           }
                            } SS:
COUNTY OF CHAMPAIGN   }

1.    My name is Dan Arnold and I making this affidavit at my own free will. I am over 18 years of age and am in all ways competent to testify.

2.    I am the Licensed Nursing Home Administrator at the skilled nursing facility known as Heartland of Urbana located at 741 E. Water Street, Urbana, Champaign County, Ohio.

3.    I have held the position of Administrator of Heartland of Urbana since April 30, 2012.

4.    Heartland of Urbana is an 85 bed skilled nursing facility providing short-term rehabilitation and long-term skilled nursing and rehabilitation services.

5.    Heartland of Urbana is overall ranked by the federal government as a "Five Star" nursing facility, which is the highest ranking available to a nursing home. Heartland of Urbana received a "Five Star" rating for the government health inspection category.

6.     Heartland of Urbana is subject to inspection by the Ohio Department of Health under the federal OBRA standards for skilled nursing facilities on a regular (roughly annual) basis and also when complaints are made to the Ohio Department of Health.

7.     The federal OBRA standards number in the hundreds and apply to all aspects of the operation of skilled nursing facilities in the United States to specifically include nursing services provided to patients.

8.     Heartland of Urbana was most recently subject to regular annual surveys on February 20, 2014, and November 23, 2012.  The Ohio Department of Health found no deficiencies in and therefore issued no "citations" for the operation of Heartland of Urbana during the last annual surveys of February 20, 2014, and November 23, 2012, respectively.

9.     I am aware of and familiar with the advertisement run by the law firm McHugh Fuller Law Group, PLLC in the *Urbana Daily Citizen* on December 13, 2014.  I am also aware that a digital copy of the advertisement is available for viewing online through the *Urbana Daily Citizen* website.

10.     The advertisement claims the government "has cited" Heartland of Urbana "for failing to provide necessary care and services to maintain the highest well-being of each resident." I believe the "has cited" language leads the reader to believe that the alleged citation was recent.

11.     None of the recent surveys of Heartland of Urbana include any citation let alone a citation "for failing to provide necessary care and services to maintain the highest well-being of each resident." Based upon my review of the survey history of Heartland of Urbana, the facility last had a citation remotely similar to the advertisement's language more than four years ago on June 24, 2010.

2

12.     According to the June 24, 2010, survey resulting in a citation remotely similar to the language in the advertisement, the alleged deficiency did not cause any harm to any nursing home patient. Furthermore, the alleged deficiency set forth in the June 24, 2010, survey was corrected by the facility shortly after the June 2010 survey.

13.     In light of Heartland of Urbana's survey history the advertisement is false and misleading because it does not accurately reflect the facility's most recent citation free surveys and where it does quote what is believed to be the survey from June 24, 2010, it does not set forth the alleged "failures" as described in the more than four year old survey report.

14.     The advertisement has the likelihood of confusing readers in to believing that "the government" does not approve of the medical care and services provided to patients of Heartland of Urbana when in fact annual government inspections over the last two years found no deficiencies in the operation of the facility to specifically include care provided to patients.

15.     The advertisement represents that the services provided to patients of Heartland of Urbana are other than the highest quality resulting in the highest possible "Five Star" rating from the federal government.

16.     The advertisement's false claims disparage the "Five Star" quality of care provided at Heartland of Urbana.

17.     After publication of the advertisement on December 13, 2014, and to the present, I have had to answer questions and respond to concerns raised by employees of the facility, the head of a local guardianship program with wards who are patients of Heartland of Urbana, and an applicant for the position of Admissions Director in the facility, all of whom read the advertisement and have concerns regarding the quality of care provided at Heartland of Urbana and the survey history of the facility.

18.     The false statements regarding a government citation and misleading statements regarding abuse and neglect of patients in the advertisement damages the reputation of Heartland of Urbana such that the facility will be challenged to retain current patients and attract new patients to the facility.

19.     Further affiant sayeth naught.

_____

DAN ARNOLD, LNHA



        Taken, subscribed, and sworn to, before me this _____ day of December, 2014.


My commission expires:  _____        _____

                                                                NOTARY PUBLIC



4

4193216979          Anspach Meeks Ellenberger, LL          08:56:31 a.m.     12-24-2014        97/102

IN THE COURT OF COMMON PLEAS FOR CHAMPAIGN COUNTY, OHIO

| | |
|---|---|
| HEARTLAND OF URBANA OH, LLC,<br>CT Corporation System<br>1300 East Ninth Street<br>Cleveland, Ohio 44114<br><br>          Plaintiff,<br><br>v.<br><br>MCHUGH FULLER LAW GROUP, PLLC,<br>97 Elias Whiddon Road<br>Hattiesburg, Mississippi 39402<br><br>          Defendant. | Case No.<br><br>Judge |

## AFFIDAVIT OF DAN ARNOLD, LNHA

STATE OF OHIO                              }
                                          } SS:
COUNTY OF CHAMPAIGN              }

1.      My name is Dan Arnold and I making this affidavit at my own free will.  I am over 18 years of age and am in all ways competent to testify.

2.      I am the Licensed Nursing Home Administrator at the skilled nursing facility known as Heartland of Urbana located at 741 E. Water Street, Urbana, Champaign County, Ohio.

3.      I have held the position of Administrator of Heartland of Urbana since April 30, 2012.

4.      Heartland of Urbana is an 85 bed skilled nursing facility providing short-term rehabilitation and long-term skilled nursing and rehabilitation services.

5.      Heartland of Urbana is overall ranked by the federal government as a "Five Star" nursing facility, which is the highest ranking available to a nursing home.  Heartland of Urbana received a "Five Star" rating for the government health inspection category.

6.     Heartland of Urbana is subject to inspection by the Ohio Department of Health under the federal OBRA standards for skilled nursing facilities on a regular (roughly annual) basis and also when complaints are made to the Ohio Department of Health.

7.     The federal OBRA standards number in the hundreds and apply to all aspects of the operation of skilled nursing facilities in the United States to specifically include nursing services provided to patients.

8.     Heartland of Urbana was most recently subject to regular annual surveys on February 20, 2014, and November 23, 2012. The Ohio Department of Health found no deficiencies in and therefore issued no "citations" for the operation of Heartland of Urbana during the last annual surveys of February 20, 2014, and November 23, 2012, respectively.

9.     I am aware of and familiar with the advertisement run by the law firm McHugh Fuller Law Group, PLLC in the *Urbana Daily Citizen* on December 13, 2014. I am also aware that a digital copy of the advertisement is available for viewing online through the *Urbana Daily Citizen* website.

10.    The advertisement claims the government "has cited" Heartland of Urbana "for failing to provide necessary care and services to maintain the highest well-being of each resident." I believe the "has cited" language leads the reader to believe that the alleged citation was recent.

11.    None of the recent surveys of Heartland of Urbana include any citation let alone a citation "for failing to provide necessary care and services to maintain the highest well-being of each resident." Based upon my review of the survey history of Heartland of Urbana, the facility last had a citation remotely similar to the advertisement's language more than four years ago on June 24, 2010.

2

4193216979          Anspach Meeks Ellenberger, LL          08:56:53 a.m.          12-24-2014          99/102

12.     According to the June 24, 2010, survey resulting in a citation remotely similar to the language in the advertisement, the alleged deficiency did not cause any harm to any nursing home patient. Furthermore, the alleged deficiency set forth in the June 24, 2010, survey was corrected by the facility shortly after the June 2010 survey.

13.     In light of Heartland of Urbana's survey history the advertisement is false and misleading because it does not accurately reflect the facility's most recent citation free surveys and where it does quote what is believed to be the survey from June 24, 2010, it does not set forth the alleged "failures" as described in the more than four year old survey report.

14.     The advertisement has the likelihood of confusing readers in to believing that "the government" does not approve of the medical care and services provided to patients of Heartland of Urbana when in fact annual government inspections over the last two years found no deficiencies in the operation of the facility to specifically include care provided to patients.

15.     The advertisement represents that the services provided to patients of Heartland of Urbana are other than the highest quality resulting in the highest possible "Five Star" rating from the federal government.

16.     The advertisement's false claims disparage the "Five Star" quality of care provided at Heartland of Urbana.

17.     After publication of the advertisement on December 13, 2014, and to the present, I have had to answer questions and respond to concerns raised by employees of the facility, the head of a local guardianship program with wards who are patients of Heartland of Urbana, and an applicant for the position of Admissions Director in the facility, all of whom read the advertisement and have concerns regarding the quality of care provided at Heartland of Urbana and the survey history of the facility.

3

18.     The false statements regarding a government citation and misleading statements regarding abuse and neglect of patients in the advertisement damages the reputation of Heartland of Urbana such that the facility will be challenged to retain current patients and attract new patients to the facility.

19.     Further affiant sayeth naught.

_____

DAN ARNOLD, LNHA

Taken, subscribed, and sworn to, before me this _____ day of December, 2014.

My commission expires: _____     _____
                                                                              NOTARY PUBLIC



4

IN THE COURT OF COMMON PLEAS FOR CHAMPAIGN COUNTY, OHIO

| | |
|---|---|
| HEARTLAND OF URBANA OH, LLC,<br>CT Corporation System<br>1300 East Ninth Street<br>Cleveland, Ohio 44114<br><br>      Plaintiff,<br><br>v.<br><br>MCHUGH FULLER LAW GROUP, PLLC,<br>97 Elias Whiddon Road<br>Hattiesburg, Mississippi 39402,<br><br>      Defendant. | Case No. 2014 CV 210<br><br>Judge Nick A. Selvaggio<br><br>Magistrate Scott D. Schockling<br><br>**TEMPORARY RESTRAINING ORDER**<br><br>Magistrate's Order |

Plaintiff Heartland of Urbana OH, LLC, d/b/a Heartland of Urbana, initiated this case seeking injunctive and other relief on December 23, 2014, alleging violations of the Ohio Deceptive Trade Practices Act, R.C. Chapter 4165, and Ohio's common law, stemming from Defendant McHugh Fuller Law Group, PLLC having published an advertisement in print and through the internet with the *Urbana Daily Citizen* about Plaintiff's nursing home Heartland of Urbana located at 741 E. Water Street, Urbana, Champaign County, Ohio.

With its *Complaint*, Plaintiff filed a *Motion for Temporary Restraining Order* supported by the *Affidavit of Dan Arnold, LNHA*, who is the Administrator of Heartland of Urbana. In addition to the pleadings, the Court reviewed Exhibits to the *Complaint* to include copies of the print and internet versions of the advertisement at issue in this matter.

Upon due consideration of the *Complaint* and exhibits thereto, *Motion for Temporary Restraining Order*, and *Affidavit of Dan Arnold, LNHA*, the Court finds that immediate and

irreparable injury, loss, or damage will result to Plaintiff due to the advertisement at issue, which justifies the issuance of a *Temporary Restraining Order* pursuant to Civ.R. 65(A).

IT IS THEREFORE ORDERED that Defendant McHugh Fuller Law Group, PLLC, and all persons in active concert, or participation with it be and same hereby are temporarily restrained and prohibited from using the advertisement attached as Exhibits A and B to the Complaint for Injunctive Relief for any purpose and in any form, or media specifically including, but not limited to print, or internet.

IT IS FURTHER ORDERED that any version, form, or medium used to convey the advertisement attached as Exhibits A and B to the Complaint for Injunctive Relief be removed from the public domain specifically including, but not limited to, the internet version/website of the *Urbana Daily Citizen* and Defendant McHugh Fuller Law Group, PLLC's website.

IT IS FURTHER ORDERED that Defendant McHugh Fuller Law Group, PLLC may be served with a copy of this *Temporary Restraining Order* by any person, or by facsimile, certified, or electronic mail.

IT IS FURTHER ORDERED that the Plaintiff shall post a security bond in the total sum of $_0.00_____.

IT IS FURTHER ORDERED that this *Temporary Restraining Order* is effective as of today's date and shall remain in full force and effect for fourteen (14) days or until _January 7_____, 2015___, unless otherwise ordered by the Court and that this cause is set for hearing on Plaintiff's application for a preliminary injunction on _January 7_____, 2015___, at __11:00___ A.m.

Date:__12-24-2014___

Magistrate Scott D. Schockling
Champaign Co. Common Pleas Court

2

Heartland v. McHugh Fuller     2014 CV 210          **Page 3**

COPIES BY CLERK:
- Robert M. Anspach, J. Randall Engwert & Charles D. Rittenhouse, Counsel for Plaintiff, Anspach Meeks Ellenberger, LLP, 300 Madison Ave., Ste. 1600, Toledo OH 43604-2633
- McHugh Fuller Law Group, PLLC, 97 Elias Whiddon Rd., Hattiesburg Mississippi 39402 via certified mail



IN THE COURT OF COMMON PLEAS FOR CHAMPAIGN COUNTY, OHIO

| | |
|---|---|
| HEARTLAND OF URBANA OH, LLC,<br>CT Corporation System<br>1300 East Ninth Street<br>Cleveland, Ohio 44114 | Case No. '14 CV 210<br><br>Judge |
|       Plaintiff, | |
| v. | |
| MCHUGH FULLER LAW GROUP, PLLC,<br>97 Elias Whiddon Road<br>Hattiesburg, Mississippi 39402 | |
|       Defendant. | |

2014 DEC 24 AM 9:08 FILED

### AFFIDAVIT OF DAN ARNOLD, LNHA

| | |
|---|---|
| STATE OF OHIO | } |
| | } SS: |
| COUNTY OF CHAMPAIGN | } |

1.    My name is Dan Arnold and I making this affidavit at my own free will.  I am over 18 years of age and am in all ways competent to testify.

2.    I am the Licensed Nursing Home Administrator at the skilled nursing facility known as Heartland of Urbana located at 741 E. Water Street, Urbana, Champaign County, Ohio.

3.    I have held the position of Administrator of Heartland of Urbana since April 30, 2012.

4.    Heartland of Urbana is an 85 bed skilled nursing facility providing short-term rehabilitation and long-term skilled nursing and rehabilitation services.

5.    Heartland of Urbana is overall ranked by the federal government as a "Five Star" nursing facility, which is the highest ranking available to a nursing home.  Heartland of Urbana received a "Five Star" rating for the government health inspection category.

6.     Heartland of Urbana is subject to inspection by the Ohio Department of Health under the federal OBRA standards for skilled nursing facilities on a regular (roughly annual) basis and also when complaints are made to the Ohio Department of Health.

7.     The federal OBRA standards number in the hundreds and apply to all aspects of the operation of skilled nursing facilities in the United States to specifically include nursing services provided to patients.

8.     Heartland of Urbana was most recently subject to regular annual surveys on February 20, 2014, and November 23, 2012. The Ohio Department of Health found no deficiencies in and therefore issued no "citations" for the operation of Heartland of Urbana during the last annual surveys of February 20, 2014, and November 23, 2012, respectively.

9.     I am aware of and familiar with the advertisement run by the law firm McHugh Fuller Law Group, PLLC in the *Urbana Daily Citizen* on December 13, 2014. I am also aware that a digital copy of the advertisement is available for viewing online through the *Urbana Daily Citizen* website.

10.    The advertisement claims the government "has cited" Heartland of Urbana "for failing to provide necessary care and services to maintain the highest well-being of each resident." I believe the "has cited" language leads the reader to believe that the alleged citation was recent.

11.    None of the recent surveys of Heartland of Urbana include any citation let alone a citation "for failing to provide necessary care and services to maintain the highest well-being of each resident." Based upon my review of the survey history of Heartland of Urbana, the facility last had a citation remotely similar to the advertisement's language more than four years ago on June 24, 2010.

2

12.     According to the June 24, 2010, survey resulting in a citation remotely similar to the language in the advertisement, the alleged deficiency did not cause any harm to any nursing home patient.  Furthermore, the alleged deficiency set forth in the June 24, 2010, survey was corrected by the facility shortly after the June 2010 survey.

13.     In light of Heartland of Urbana's survey history the advertisement is false and misleading because it does not accurately reflect the facility's most recent citation free surveys and where it does quote what is believed to be the survey from June 24, 2010, it does not set forth the alleged "failures" as described in the more than four year old survey report.

14.     The advertisement has the likelihood of confusing readers in to believing that "the government" does not approve of the medical care and services provided to patients of Heartland of Urbana when in fact annual government inspections over the last two years found no deficiencies in the operation of the facility to specifically include care provided to patients.

15.     The advertisement represents that the services provided to patients of Heartland of Urbana are other than the highest quality resulting in the highest possible "Five Star" rating from the federal government.

16.     The advertisement's false claims disparage the "Five Star" quality of care provided at Heartland of Urbana.

17.     After publication of the advertisement on December 13, 2014, and to the present, I have had to answer questions and respond to concerns raised by employees of the facility, the head of a local guardianship program with wards who are patients of Heartland of Urbana, and an applicant for the position of Admissions Director in the facility, all of whom read the advertisement and have concerns regarding the quality of care provided at Heartland of Urbana and the survey history of the facility.

3

18.   The false statements regarding a government citation and misleading statements regarding abuse and neglect of patients in the advertisement damages the reputation of Heartland of Urbana such that the facility will be challenged to retain current patients and attract new patients to the facility.

19.   Further affiant sayeth naught.


_Daniel Arnold, LNHA_
DAN ARNOLD, LNHA



Taken, subscribed, and sworn to, before me this __2 2__ day of December, 2014.


My commission expires: _____

Joyce Cooper
Notary Public
My Commission expires
August 27, 2015

NOTARY PUBLIC

4